Booker T. Wade Jr., In Pro Per
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250
bookertwade@hotmail.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 013-50376 SLJ |
| Booker T. Wade Jr., | Chapter 11 |
| Debtor. | STATUS CONFERENCE STATEMENT |
| | Date: April 4, 2013 |
| | Time: 10:00 a. m. |
| | Courtroom: 3099, 3rd Floor |
| | Hon. Stephen L. Johnson |

TO: THE HONORABLE Stephen L. Johnson UNITED STATES BANKRUPTCY JUDGE:

Booker T. Wade Jr., Debtor and Debtor-in-Possession (Debtor) hereby respectfully submits this Chapter 11 Status Conference Statement.

**I. Factors Leading to Bankruptcy**

1.  In 2007 the United States economy slid into a severe recession. The Great Recession detrimentally impacted the general economy including the real property market, small businesses and non-profit organizations, entitles in which Debtor had or has economic interests. Contemporaneously with the Great Recession and its economic impacts, Debtor's domestic/personal and business relationship ended. The cumulative impacts of both events severely constrained the financial abilities of Debtor, eliminating assets and reducing income. The Debtor filed a voluntary chapter 11 bankruptcy petition on January22, 2013, subsequent to (a) creditor Hoge Fenton Jones & Appel Inc. securing a default judgment against Debtor and commencing execution thereupon (b) creditor United States Department of Education causing the

U. S. Department of the Treasury to provide notice to Debtor that the latter was commencing an offset of Debtor's Social Security pension benefits payments and (c) creditor Mlnarik Law Group Inc. providing notice that it would commence litigation against Debtor.

2. On February 19, 2013, Debtor filed his List of Schedules and Statements pursuant to an extension of time granted by the Court.

## II. Meeting of Creditors-Initial Debtor Interview

3. On February 27, 2013, the Section 341(a) Meeting of Creditors was held. Debtor attended and was examined. On the same date, Debtor appeared at the Initial Debtor Interview as directed and was examined. Following the Initial Debtor Interview, on March 21, 2103, Debtor filed Amended Schedules C and J. Also, as directed, on March 15, 2013, Debtor provided the Office of the U.S. Trustee with proof of automobile liability insurance. The Debtor has not yet provided the Office of the U.S. Trustee with proof that Debtor has closed his pre-petition checking account with Avid Bank of Palo Alto. Debtor proposes to comply with the directive upon receiving confirmation that the Social Security Administration which makes direct deposits of Debtor's pension benefits into the account has made the changes necessary to assure that the direct deposit funds are made into the new checking account at an approved depository. In all other respects, Debtor has complied with directives of the Office of the U.S. Trustee. Debtor's first Monthly Operating Report was filed timely on March 21, 2013.

## III. Trust Funds

4. In his original Schedule C of Property Claimed Exempt, Debtor lists, *inter alia*, two separate trust accounts containing monies to which Debtor claims an exemption pursuant to California Financial Code Section 17410. In an Amended Schedule C filed on March 21, 2013, following consultation with the Office of the U. S. Trustee, Debtor, deleted his claim of exemption as to the trust funds. The funds are held in trust accounts in the possession of, and controlled by, counsel and co-counsel for creditor Arlene Stevens.

5. The funds in the first trust account controlled by David Hamerslough are the net proceeds of the sale of residential real property in Woodside previously owned as joint tenants by Debtor and creditor Arlene Stevens. On February 28, 2013, Debtor sought and thereafter

received from Mr. Hamerslough written certification that he remains in control and possession of the funds in his separate trust account. He advises that the account currently contains $652,989.15. Debtor and creditor Arlene Stevens both claim these funds as their assets.

6. In January 2009, the Santa Clara Superior Court directed Stephen Fry, co-counsel for Arlene Stevens, to maintain control and possession of funds in a second trust account. These funds were the net proceeds of the sale of a license for a new FCC cellular telephone license company at College Station, Texas, an asset to which Debtor and Arlene Stevens claim economic interests. On February 28, 2013, Debtor via Certified Mail sent Mr. Fry a letter and requested that he provide Debtor within seven days thereafter written certification that he remained control and possession of the funds and the amount and location of the funds in his trust account. To date, no response has been received from Mr. Fry. Debtor believes that the account, if it continues to exist, should contain at about $160,000. The Court may have to direct Mr. Fry to certify as to the status of the trust account.

## IV. Need for Professionals

7. Debtor plans to apply to the Court for approval to hire experienced bankruptcy counsel as the multiple issues presented are reasonably complex. However, given Debtor's lack of currently available funds for such expenses, Debtor proposes to liquidate and settle his bodily injury and property damage claims against Trail East Auto Transport Inc. arising out of an automobile accident in 2010 wherein the negligent driver, driving a semi-trailer vehicle carrier, crossed the center line and collided with Debtor's vehicle, rendering Debtor's vehicle a total loss. Upon a settlement, Debtor would use these monies to compensate retained counsel.

## V. Unique Issues

*Rejection of an Executory Contract*

8. Unique issues are presented concerning a property "Settlement Agreement." Prior to February 2007, Debtor and creditor Arlene Stevens maintained a 20-year non–marital business and personal relationship. Upon the breakdown of the relationship, disputes arose as to ownership interests in multiple assets acquired by Debtor and Arlene Stevens during their relationship, including residences in Palo Alto, Woodside and Tucson, Arizona; a commercial office building in Palo Alto; licensees issued by the Federal Communications Commission [FCC] for a new FM radio broadcast station at Clarksdale, Mississippi, a new broadcast television

station at Topeka, Kansas, cellular telephone licenses for College Station, Texas and Portland, Oregon; and intellectual property rights to certain television programs known as "Wedding Television."

9. The various claims and counterclaims resulted in state court litigation in a case entitled Arlene Stevens v. Booker T. Wade, Jr., et al, Santa Clara County Superior Court Case No.: 1-07-CV-090284). These claims ostensibly were resolved following two days of on-the-record negotiations before former Presiding Judge Jaime Jacobs-May on January 23, 2009, as a "Settlement Agreement." The terms were scattered among discussions, often inconsistent, throughout a 117-page transcript between seven people. Under the terms of the negotiations, the "Settlement Agreement" was required to be reduced to writing by counsel for Arlene Stevens. However, no writing was produced, resulting in years of arbitration and litigation in multiple forums as to its validity, scope, performance and breach. The "Settlement Agreement" to date remains substantially unperformed.

10. Unique issues involving conflicts of interest are presented with the "Settlement Agreement." First, as the "Settlement Agreement" was unique in the state court proceeding, former Judge Jacobs-May expressly retained *personal jurisdiction* over the "Settlement Agreement." She appointed a JAMS arbitrator, the Hon. Richard Silver (Ret.) to arbitrate twenty-three specified potential disputes but reserved to herself jurisdiction over both all disputes not delegated to Judge Silver and also reviewing authority over all decisions made by Judge Silver. Second, fourteen months later, on March 29, 2010, Judge Jacobs-May disqualified herself from further participation in the case, disclosing that contemporaneously with her assigning the JAMS arbitrator and reviewing his decisions, she concurrently was negotiating employment opportunities with JAMS as a neutral in violation of California judicial conflict of interest law. In January 2011, Judge Jacobs-May retired from the Superior Court and joined JAMS as an arbitrator. Third, although the applicable California statutory upon her disqualification also automatically disqualified her appointed arbitrator given the code violation, Judge Silver declined to recuse himself. However, on or about December 10, 20110, Judge Silver withdrew and

terminated the proceeding, leaving unresolved issues and disputes. Fourth, in October 2011, James Towery, Debtor's former counsel with creditor Hoge Fenton Jones & Appel Inc., became a member of the firm Rossi, Hamerslough, Reischl & Chuck, counsel for creditor Arlene Stevens. Fifth, on November 21, 2012, James Towery was appointed to a seat on the Santa Clara County Superior Court.

11. Various portions of the "Settlement Agreement" have been litigated not just in the Santa Clara Superior Court but also the Sonoma County Superior Court, the San Mateo Superior Court, this Court,[1] before the Bankruptcy Appellate Panel and the Ninth Circuit Court of Appeals. The state court litigation as to the "Settlement Agreement" has been idle for three years.[2]

## VI. Litigation

A. Hoge Fenton Jones & Appel Inc.

14. James Towery, a partner with creditor Hoge Fenton Jones & Appel Inc. (Hoge Fenton) represented Debtor in the Stevens-Wade state action detailed above. On September 29, 2011, Hoge Fenton filed a breach of contract action in Santa Clara County Superior Court against Debtor seeking to recover incurred legal fees and costs. On November 14, 2011, Debtor filed a motion to quash service of the issued summons and strike the complaint based on lack of

---

[1] The "Settlement Agreement" provided that Debtor would own 100% interests in TV 32 Digital Ventures Inc. [TV 32] which was the sole owner of 1010 Corporation Way, Palo Alto. Facing foreclosure by the first mortgage holder, Sonoma National Bank, TV 32, filed a Chapter 11 petition on September 23, 2009 [Case No. 09-58098]. Arlene Stevens filed motions contesting Debtor's authority to file the petition on behalf of the entity. Judge Weissbrodt referred the case back to Judge Silver who issued a decision confirming that Debtor was TV 32's sole shareholder and officer. Thereafter, Arlene Stevens continued to contest Debtor's authority to file the petition and, as the class-dominant unsecured creditor, declined to support *any* reorganization plan. The Small Business Administration inexplicably also declined to support the TV 32's plan. As a result of the positions of Arlene Stevens and the SBA, Judge Weissbrodt granted the bank's motion to lift the automatic stay, allowing the foreclosure. The case was thereafter dismissed. The Ninth Circuit Court of Appeals permitted the foreclosure to proceed but suggested that Debtor may have available remedies against the SBA for its plan voting participation as the Code vests exclusive plan voting authority as to debt owed to the federal government with the Treasury Department.

[2] On January 25, 2013, three days after Debtor filed his petition, counsel for Arlene Stevens [despite notice of the filing of the petition] filed with the Santa Clara County Superior Court a "Motion to Enforce "Settlement Agreement," requesting the state Court to order performances required under the "Settlement Agreement" and award Arlene Stevens the monies in the trust accounts. The enforcement motion appears to have been rushed as the pleading was dated November 10, 2012. It included blank spaces for a date for a hearing and gave notice of the hearing in the San Mateo County Superior Court, although the caption identified the Santa Clara County Court. Six days later, and nine days post-petition, Debtor received an email message from the office of counsel for Arlene Stevens correcting and supplementing the enforcement motion. Debtor believes these actions were in violation of the automatic stay.

jurisdiction, maintaining that the legal fee agreement between the parties required Hoge Fenton to pursue mediation and arbitration prior to filing any action. Following the Superior Court's denial of the motion, Debtor sought interlocutory appellate review which was denied. While appellate review was pending, the Clerk of the Superior Court entered a default against Debtor and the Court thereafter entered a default judgment based upon the Clerk's entry of default. In upholding the default judgment, the Superior Court concluded that it was proper for the Clerk of the Court to make a legal conclusion that the motion to quash the summons and strike the complaint was legally insufficient to invoke statutory provisions which precludes an entry of default pending appellate review of a denial of a motion contesting jurisdiction. On December 27, 2012, Debtor filed a notice of appeal with the Sixth District Court of Appeal. The question presented in the appeal is whether the Clerk of the Court's actions constitutes non-permitted adjudication. The appeal is pending but has been stayed.

B.  Trail East Auto Transport Inc.

15. In 2010, Debtor was involved in a vehicular accident with a vehicle owned and operated by an employee of Trail East Auto Transport Inc. of Florida. The driver of the semi-trailer truck, carrying ten automobiles and making a right turn perpendicular to Debtor's vehicle, crossed the double yellow center line, striking Debtor's vehicle, causing personal injury and rendering Debtor's vehicle a total loss. Thereafter, Debtor filed a complaint against the auto carrier company in San Mateo County Superior Court. No response has been yet filed to the complaint. Negotiations leading to a settlement have been attempted.

## VII. Outline of Proposed Plan

16. Debtor's core financial difficulties involve the default judgment secured by Hoge Fenton and Debtor's claims and counterclaims by and against Arlene Stevens. Generally, the Plan will seek to resolve these difficulties by (a) Debtor prosecuting his appeal of the default judgment for a favorable result, or, alternatively by discharging any liability (b) rejecting the "Settlement Agreement" or, alternatively prosecuting Debtor's claims to favorable results and/or discharging the claims (c) utilizing funds secured from one or both of the two trust accounts to pay unsecured creditors and (d) temporarily adjusting payment obligations to secured creditor Rushmore Loan Management Services Inc., thereafter honoring the loan modification agreement made on October 25, 2012. Additionally, Debtor, age 71, preparing for retirement, will defer such retirement and seek to continue and increase his income in an effort to accommodate the needs of the Plan.

A. Plan Treatment of Secured Creditor Claims

*1. Claims of Rushmore Loan Management Services Inc.*

17. Rushmore is the serving agent for Wells Fargo National Bank, as Trustee for market securities holders. Rushmore holds a first priority security interests in Debtor's residential condominium secured for a loan in the amount of approximately $674,945. Debtor is current on the loan agreement. Under the Plan, Debtor would for an interim period of approximately six months, adjust the interest payments downwards and thereafter, return to the unadjusted rate plus an amount to recapture the prior downward adjustments, ultimately providing for a full satisfaction of Rushmore's secured claim pursuant to the recent loan modification agreement.

*2. Hoge Fenton Jones & Appel Inc.*

18. On November 5, 2012, Hoge Fenton filed an abstract of judgment lien against Debtor residence. As the lien was made within 90 days of the filing of the Petition, the Plan would seek to avoid the lien as a preference and as impairing Debtor's exempt equity interests. Concurrently, Debtor would prosecute his pending appeal of the default judgment, given that California law strongly disfavors a default. Ultimately, if required, the Plan would seek to discharge any liability.

*3. Claims of Forest Villa Homeowners Association*

19. On March 23, 2012, Debtor's homeowners association filed an action in state court against Debtor for delinquent dues and special assessments. A few weeks prior to the filing of the petition, Debtor reached a payment plan agreement with his homeowners association to settle its litigation against Debtor. As Forest Villa may have statutory lien rights, the Plan would implement the agreement as a putative secured claim although Debtor currently lists the claim as unsecured.

B. Plan Treatment of Claims of Unsecured Creditors

*1. Arlene Stevens*

20. All claims by Arlene Stevens arise out of the "Settlement Agreement" detailed above. The Plan would provide for the rejection of the "Settlement Agreement" (a) as substantially unperformed and (b) as fraudulent induced and thereby voidable as Arlene Stevens failed to disclose and concealed from the settlement negotiations $400,000 in contested cash assets she then controlled in an account at First Republic Bank in Palo Alto and (c) being in breach of the

"Settlement Agreement,"[3] Arlene Stevens is not entitled to any cure for Debtor's rejection of the "Settlement Agreement" if the "Settlement Agreement" is valid.

2. *U.S. Department of Education*

21. This claim is as to a student loan guaranteed by the Department in 1973. Debtor's position is that the loan was fully paid in 1981 as a part of a condition of a security clearance when Debtor was employed by the federal government. In 2002, Debtor made an all-cash offer to settle the dispute but the Department never replied. The Plan would discharge any obligation. While government guaranteed student loans normally are not dischargeable, an applicable statue provides that student loan debt may be discharged if more than seven years have elapsed between the first delinquent date and the filing of the petition. Herein more than forty years have elapsed.

3. *Bank of America*

22. Three weeks before the filing of the petition, the agent for Bank of America, Cavalry Portfolio Services LLC, proposed to compromise this claim. Debtor proposes to complete those negotiations and incorporate a likely agreement into the Plan.

4. *All Other Unsecured Creditors*

23. Debtor proposes to undertake negotiations with Mlnarik Law Group, Miller Starr Regalia, JAMS Inc. and Discover Card Services to provide for negotiated amounts and terms to be included in the Plan. Debtor believes there is a reasonable probability that agreements can be reached with each of these creditors. Alternatively, the Plan would provide for a pro-rata distribution of non-exempt secured funds and/or a discharge of liabilities.

## VIII. Interests

24. Debtor's Schedules list interests and claims against Arlene Stevens, Hoge Fenton, the U.S. Small Business Administration, Trail East Auto Transport Inc. and others.

25. Debtor's claims against Arlene Stevens arises out of the "Settlement Agreement," if it remains in effect, or, alternatively, if it is successfully rejected, then for compensation due Debtor for unpaid professional services Debtor utilized to secure the "Settlement Agreement" assets on

---

[3] Under the "Settlement Agreement" Arlene Stevens was required (a) to pay 70% of the carrying costs of the Palo Alto condo but she made no payments while Debtor has made all payments and (b) to sell the FCC cellular and radio licenses and share with Debtor the proceeds but she instead forfeited both licenses. Debtor was required to protect her as guarantor on the mortgage loan on the commercial office building assigned to Debtor by Debtor either securing her release from liability or Debtor refinancing the loan. However, Arlene Stevens directed the bank not to cooperate with Debtor in his efforts to secure her release from personal liability and thereafter voted against the TV 32 reorganization plan which would have protected her against personal liability to the SBA.

behalf of Arlene Stevens. Additionally, Debtor claims interests against Arlene Stevens for her forfeiture in 2008 and 2009 of two licensees issued by the FCC for the FM radio broadcast station at Clarksdale, Mississippi and a cellular telephone license at Portland, Oregon and as a co-user on Debtor's two credit cards accounts. The claim for pension benefits from the Arizona State Retirement Fund arises out of the non-consented removal by Arlene Stevens of Debtor's vested rights in benefits from the Arizona state pension fund, rights vested pursuant to a written agreement made between the state pension fund, Arlene Stevens and Debtor.

26. The claims against Hoge Fenton arise out of breach of contract of the legal fee agreement between Debtor and Hoge Fenton, conflict of interests and malpractice by Hoge Fenton. The claims against the Small Business Administration arises out of the agency's wrongful interference in the affairs of Debtor's interests in TV 32 Digital Ventures Inc., specifically, the agency representations to this Court that it would vote against any chapter 11 plan in the proceeding as detailed in Note 1, above.

27. Debtor anticipates further investigation of the need to file adversary actions as to the above interests, other than against Trail East Auto Transport Inc. As to the latter, Debtor is Plaintiff and there are no counterclaims against Debtor, Debtor would continue that litigation to its conclusion, a likely settlement.

### IX. Mediation and Settlement

28. Given that most creditors, including Hoge Fenton, have expressed interest in an agreed upon resolution of their claims, Debtor is reasonably hopeful and believes that mediation seeking a full settlement can be had. The principal barrier to a settlement likely will be Arlene Stevens whose motivation does not appear to be economic. Debtor is informed that for extended periods of months at a time Arlene Stevens may not even be in communications with her counsel. Debtor is informed that she has not responded to lawsuits and has acceded to default judgments against her by Sonoma National Bank, the Small Business Administration, her former bankruptcy counsel (in the TV 32 Digital Ventures Inc. proceeding) and a foreclosure sale as to her residence in Tucson, Arizona which was scheduled for March 19, 2013.

## X. Proposed Deadlines

A. Rejection of "Settlement Agreement"

29. The Debtor proposes that the Court adopt the statutory deadline for rejection of the "Settlement Agreement" of two years following the petition date, i.e., January 22, 2015, to allow the conclusion of any adversary proceedings.

B. Avoidance Action – Property Lien

30. Debtor proposes that the Court adopt the statutory deadline for filing avoidance actions of two years following the petition date (i.e., January 22, 2015) as to the lien against Debtor's residential property filed by Hoge Fenton. This will permit Debtor to prosecute his appeal of the default judgment, and, if successful, to secure a determinations on the merits of the complaint and any counter-complaint, thereby avoiding the need for avoidance and removing a major hurdle to exiting Chapter 11.

C. Disclosure Statement and Reorganization Plan

31. Debtor proposes that the Court extend for thirty days the statutory deadlines for filing an exclusive plan of reorganization from 120 days following the bankruptcy petition date to June 23, 2013, particularly to allow for mediation.

Dated: March 25, 2013

Booker T. Wade Jr.
Debtor and Debtor-in-Possession

# CERTIFICATE OF SERVICE

. I am over the age of 18 and not a party to the within action. My business address is 830 Stewart Drive, Suite 239, Sunnyvale, CA 94085

On March 25, 2013, I served the documents described as:

**STATUS CONFERENCE STATEMENT**

on the following parties in this action by placing true copies thereof enclosed in sealed envelopes addressed with first class postage fully prepaid, in the United States mail at San Mateo, California, and addressed as follows:

Mlnarik Law Group
2930 Bower Avenue
Santa Clara, CA 95051

Jennifer Protas Esq.
Hoge Fenton Jones & Appel Inc.
Sixty South Market Street Suite 1400
San Jose, CA 95113

David Hamerslough
Rossi Hamerslough Reischl Chuck
1960 The Alameda Suite 200
San Jose, CA 95126

Heinz Binder
Wendy Smith
Binder & Malter LLP
2775 Park Avenue
Santa Clara, CA 95050

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on March 25, 2013, at San Mateo, California.

Fan Wen