1  civil standby so that we don't have to do this twice is they

2  go there once, they do the inspection, and at the same time

3  she does go too -- I mean, we can do this one or two ways or

4  both ways.

5          But maybe you can collect what you know is hers,

6  and she should be allowed to open up closet doors and

7  drawers where she kept her stuff to confirm what's there and

8  what's not there.  Obviously, she can't destroy things and

9  empty things, but she should be able to look through.

10          MR. HAMERSLOUGH:  I will represent to the Court

11  that I will personally be present.  And to the extent that

12  -- we will do some form of an inventory; we will not remove

13  anything.  We'll itemize it, you know, and I will then talk

14  to Mr. Towery or to Natasha.

15          THE COURT:  I think you should itemize -- I think

16  what Mr. Wade agrees to is you should take and itemize.  And

17  if there's a disagreement, itemize it, take a camera with

18  you.

19          MR. HAMERSLOUGH:  Exactly.

20          THE COURT:  But don't take --

21          MR. HAMERSLOUGH:  Fair enough?

22          MR. TOWERY:  Yes, that's fine.

23          MR. HAMERSLOUGH:  I mean, you can be present if

24  you want.

25          MR. TOWERY:  Things like clothes, there's no

26  reason to do an inventory.  She should take --

27          THE COURT:  But if she says the television is mine

28  and Mr. Wade says the television is mine, there's a photo

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 taken.  There's an inventory taken.  There's a promise

2 pursuant to the stipulation that it will not be disposed of,

3 and those issues will be determined by Judge Silver, too.

4     MR. HAMERSLOUGH:  Yes.

5     MS. STEVENS:  And clothes should not be out of it.

6 Clothes should be included.

7     THE COURT:  Yeah, it is.

8     MS. STEVENS:  Oh, I thought Mr. Towery said

9 clothes should not be --

10     THE COURT:  You can take them with you.  Your

11 clothes you can take with you.

12     MS. STEVENS:  Well, that would take more time than

13 I would have in that particular instance.

14     THE COURT:  I'm asking you so that we only have to

15 do this once.  You don't want to have to go back.  The day

16 that you pick -- and you have control over that.

17     You get a truck.  You get a U-Haul.  You get

18 whatever you want, and you have people there helping you.

19 And they will help remove the stuff and get it onto the

20 truck for you.

21     MR. TOWERY:  It just strikes me though that the

22 real problem is the opposite of what we're talking about

23 here.

24     THE COURT:  It's too little stuff?

25     MR. TOWERY:  No, she's getting Woodside.

26     MR. WADE:  For me to get my stuff out.

27     MR. TOWERY:  He's removing his stuff, and the

28 dispute will be whether he's removing anything that she

COPYING PROHIBITED PURSUANT TO GOV. CODE

1  believes is hers.

2          MR. HAMERSLOUGH:  Well, no.  I believe --

3          MR. TOWERY:  I mean, why would she move large
4  stuff out of the house that she's going to be moving into?

5          THE COURT:  Actually, at first blush that seems
6  right.  But if her stuff is the least amount there, let her
7  remove it, which then means everything else is his and he
8  can remove it.  Except if it's not appliances, it's the
9  standard stuff, not fixtures, not appliances.

10         MR. WADE:  Judge, with all due respect, that women
11 have more stuff than men do, and in my case 20 times --
12 she's got 20 times more stuff.

13         MS. STEVENS:  That's absolutely true.  That's
14 true.  He has very few items.

15         THE COURT:  Okay, so let me rephrase.  Then let me
16 rephrase.  Then is it your suggestion that you will gather
17 your stuff; you won't remove anything.  You'll leave it in
18 the living room.  She'll confirm it's yours, and then you'll
19 be able to just take out -- and everything else is hers?

20         MR. WADE:  We have a real timing problem because
21 as you said --

22         THE COURT:  How much time will it take you?  Well,
23 you have --

24         MR. WADE:  I've got to find another place.

25         THE COURT:  Well, you'll find a storage.  No,
26 you've got to get it out.

27         MS. STEVENS:  He has three storage spaces already.

28         MR. HAMERSLOUGH:  Arlene, wait.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  No.  Mr. Wade, when can you gather all
2  your stuff?  Will it take a week?

3          MR. WADE:  No.  I mean --

4          MR. TOWERY:  Your Honor, can we make it part of
5  the discussion of the effective date?  Because it ties right
6  into that.

7          THE COURT:  All right, all right.  But, anyway,
8  everyone agrees Ms. Stevens gets her stuff?

9          MS. STEVENS:  Well, then question:  What do we do
10  if items are missing?

11         THE COURT:  You go to Judge Silver.  Judge Silver
12  has full authority to award compensation if he believes it.

13         Okay.  Then the next one is that there is a
14  deposition of --

15         MR. TOWERY:  Bonnie Asano.

16         THE COURT:  Say it again.

17         MR. TOWERY:  Bonnie Asano, A-s-a-n-o.

18         THE COURT:  That deposition transcript shall be
19  sealed by the parties, meaning Ms. Stevens is not allowed to
20  give that transcript to anyone except if she is under a
21  subpoena from a court or from a governmental entity or
22  agency.  And in response to a subpoena, she shall give it
23  up.  Otherwise, she's not allowed to give that deposition
24  transcript to anyone.

25         MR. HAMERSLOUGH:  Now, if I am under a subpoena,
26  am I also authorized to provide a copy of a transcript?

27         THE COURT:  Right, but a subpoena not from an
28  individual.  It has to be from -- in other words, an

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 attorney can issue a subpoena. That doesn't count. It has

2 to be from a Court or from a governmental entity, an agency.

3     MR. HAMERSLOUGH: Right, but she is free to pursue

4 any administrative, regulatory or any other claims or

5 complaints that she feels are appropriate.

6     THE COURT: Exactly, and she's free to talk about

7 what she --

8     MR. HAMERSLOUGH: What she understood or what she

9 understood was testified to or not testified to.

10     THE COURT: Exactly right. So, she has First

11 Amendment rights, but she can't give up the transcript

12 without a subpoena as described.

13     MR. TOWERY: Your Honor?

14     THE COURT: Yes.

15     MR. TOWERY: We agree with all of that. There

16 should be one further clause though; that if anybody

17 receives a subpoena for that deposition, they give notice to

18 us so that we have the opportunity to make any appropriate

19 motion that may exist.

20     THE COURT: That's fair.

21     MR. TOWERY: To quash the subpoena.

22     THE COURT: That's fair.

23     MS. STEVENS: See, and that's the purpose.

24     THE COURT: No. Ms. Stevens, we're going by law,

25 and they have a right to have notice of it. And they have a

26 right to quash it; so, if they can, fine. If not, not, but

27 that's a fair request.

28     MS. STEVENS: And for the other depositions?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1      THE COURT:  There's nothing with respect to the

2  other depositions.

3      MS. STEVENS:  And if I wanted another deposition

4  sealed?

5      THE COURT:  What deposition do you want sealed?

6      MS. STEVENS:  I'm saying if.

7      THE COURT:  We're done.  Ms. Stevens, I have 15

8  more minutes, and then I need to leave again.  So, we've

9  never talked about this.  We never talked about another

10  deposition.  We still have stuff to get through.

11      MS. STEVENS:  Okay.

12      THE COURT:  All right.  Moving right along then.

13  We talked about one issue of KMTP's ratification.  But aside

14  from that, we're all agreeing that KMTP -- that this

15  agreement is binding, that no further KMTP ratification is

16  necessary.  And their compliance is not -- this was your

17  issue about KMTP; do you remember?

18      In other words, the parties are entering into a

19  binding agreement, and no one can come back and say, well, I

20  didn't talk to KMTP about this except for what we've already

21  talked about.

22      MR. FRY:  Well, Your Honor, I think what we were

23  talking about is that the parties are representing or

24  Mr. Wade is representing that he has the authority here

25  today to settle any of the claims that have been brought

26  against KMTP that we're in fact settling today.  And I think

27  the same should hold true with respect to the other

28  defendants, which would be Cooper-Fowler and Robertson

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 Talley because the Topeka license is a claim that was

2 brought against them, and that is also an element --

3          MR. TOWERY:  Okay.

4          MR. FRY:  -- you know, of the settlement today.

5 So, I think --

6          MR. TOWERY:  Here's a way that I would phrase it.

7          MR. FRY:  All right.

8          MR. TOWERY:  What's going to come out of this case

9 is a dismissal of the complaint, second amended complaint

10 with prejudice as to all parties that were ever named, a

11 dismissal of the first amended cross-complaint against

12 Ms. Stevens with prejudice and a mutual release that will be

13 signed by all of those parties.

14          Everybody that you just mentioned is a defendant

15 in your case, and they have affirmative claims.  They should

16 sign a mutual release so that everybody understands there's

17 going to be no malicious prosecution claims, abuse of

18 process claims.

19          But the important point is that you folks who were

20 making claims against all of those are also signing a mutual

21 release that you're dismissing all claims.  So, yes, in that

22 respect we are representing as part of this negotiation that

23 we will obtain the signatures of everybody who you ever

24 named, including Minority Television Project, KMTP,

25 Cooper-Fowler, Talley, et cetera, on a mutual release.

26          THE COURT:  And also that it -- there's a little

27 bit more.

28          MR. HAMERSLOUGH:  Yes.

COPYING PROHIBITED PURSUANT TO GOV'T CODE 69954(d)

1          THE COURT:  And also with respect to the Topeka

2   license, that you have control over that; that you --

3   whether it's you, yourselves or whether it's as the agent

4   for the niece and nephew, if there's a claim that they own

5   the Topeka license, that the Topeka license is being sold

6   and that all those people agree that 70 percent of the

7   proceeds will go to Stevens and 30 percent will go to

8   Wade --

9          MR. TOWERY:  That is correct.

10         MR. WADE:  There is one point that this brings up

11  is the people with the Topeka license do have some cost

12  involved.  It gets --

13         MR. HAMERSLOUGH:  No.

14         MR. WADE:  No.

15         THE COURT:  It comes out of your --

16         MR. WADE:  No, no, no.  I mean...

17         THE COURT:  You guys need to talk.

18         MR. WADE:  Listen.

19         THE COURT:  You need to talk to your client

20  outside.

21              (Pause in proceedings.)

22         MR. TOWERY:  Okay.  Number one, before everybody

23  gets upset that we are violating process, it's the first

24  time we've ever heard this portion of the clause.  Here's

25  what the issues are as a practical matter very briefly.

26  There are maybe 10 to $12,000 of fees that were paid to

27  third parties, such as legal fees and engineering fees that

28  were paid by Cooper-Fowler.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1        Number two, there are unpaid regulatory fees of

2   maybe another 10,000.  My proposal to deal with this is

3   since we obviously do not have an agreement on this and

4   since we do not want this small dollar issue to scuttle a

5   settlement is that we carve this issue about the cost

6   advanced by Cooper-Fowler out of this settlement agreement

7   and leave it to a meet and confer process among counsel.

8   And barring that, a decision by Judge Silver as to whether

9   there is to be any reimbursement, and if so by whom.

10        The analogy is here these are costs of sale, and

11  it would be unfair for us to assume that all of the costs of

12  sale are going to be borne either by Cooper-Fowler or by

13  Booker.  So, there are strong equitable issues on both

14  sides.  It's a brand new issue.  I mean, it's -- with

15  respect, it's totally unfair to ask Booker to agree to the

16  brand new issue that he hears for the first time

17  substantively when the settlement agreement is being

18  recited.  So, that's an appropriate resolution of it.

19        MR. HAMERSLOUGH:  Here's my response.  As far as

20  the attorney's fees, I don't agree that that's a brand new

21  issue.  That's something that comes out of his share if he

22  wants to deal with it.

23        As far as $10,000 of ongoing, you know, expense,

24  you know, to maintain this, then, yeah, leave it up to Judge

25  Silver or we agree to split it and 70/30.  I mean, we're

26  splitting other costs, you know, 70 -- I mean, on a

27  percentage basis.

28        MS. STEVENS:  I've had to pay all the carrying

Case: 13-50376   Doc# 92-1   Filed: 06/07/12   Entered: 06/07/12 13:20:45   Page 9 of 30

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 costs, all the costs associated with all of the properties,

2 all of the sales, mostly everything, including Topeka

3 because it's my money that went into the building of that,

4 of Topeka. So, if they want to talk about being reimbursed

5 for costs, then I should be reimbursed for all of these

6 costs.

7        THE COURT: This is what I think we should do. I

8 think we should take costs to date for which a claim for

9 reimbursement is being made on behalf of the Cooper-Fowler

10 to the niece and the nephew and say -- and I've said this to

11 Ms. Stevens a lot of times. If the money's been spent,

12 we're not doing an accounting. If the money's been spent by

13 any of those entities, there's no right of reimbursement.

14        If there is money that has to be paid -- in other

15 words, these have not yet been paid and you need to pay

16 them, they'd be paid, and they'd be paid off the top of the

17 sale. And -- or if they have to be advanced, they have to

18 be advanced 70/30. But -- because the property's going to

19 come in 70/30.

20        MR. FRY: But --

21        THE COURT: But cost -- and off the top is the

22 same thing because otherwise it would be distributed 70/30.

23 It works out the same way. But cost to date, there's no

24 reimbursement, not either way.

25        MR. HAMERSLOUGH: And, Your Honor --

26        MR. FRY: And, Your Honor, with respect to future

27 costs, obviously before any cost is incurred it has to be

28 approved by the other party.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       THE COURT:  That's correct.

2       MR. HAMERSLOUGH:  Right, and the other thing --

3       THE COURT:  Or decided by --

4       MR. FRY:  Or decided by Judge Silver.

5       MR. HAMERSLOUGH:  And the other thing we talked
6  about is Cooper-Fowler, Talley and Robertson have to sign
7  off that they have no further right, interest, control in
8  this; that they are subject to decisions by Judge Silver,
9  and that they agree to cooperate and sign what is necessary.
10  That obligation certainly exists between the parties on all
11  of these types of assets.

12       MR. TOWERY:  I don't see that being a problem.

13       MR. HAMERSLOUGH:  All right.

14       THE COURT:  Okay, so --

15       MS. STEVENS:  So, any costs I have will be borne
16  by him also proportionately if --

17       THE COURT:  So --

18       MS. STEVENS:  If I --

19       THE COURT:  The reason why we're doing Topeka this
20  way is because you own Topeka 70/30.  So, if there's -- with
21  respect to Woodside, Woodside you own a hundred percent.
22  Your costs are a hundred percent.  1010 Corporation Way he's
23  going to own a hundred percent.  He's responsible a hundred
24  percent.  The costs going forward who pays is determined by
25  the ownership interest.

26       MS. STEVENS:  So, then who determines what costs
27  should be incurred?

28       THE COURT:  If there's a dispute, Silver.

COPYING PROHIBITED PURSUANT TO GOV CODE 69954(d)

1        MR. HAMERSLOUGH:  Silver.

2        MS. STEVENS:  So, then before any costs are

3   incurred, then I should know about it and approve it?

4        THE COURT:  If they're going to be in your lap,

5   yes.

6        MR. HAMERSLOUGH:  Yes.

7        THE COURT:  Okay.  That takes care of that one.

8        MS. STEVENS:  And by the same token, if I incur

9   any costs associated with Topeka, then they would have to

10  pay proportionately?

11       THE COURT:  That's correct.

12       MR. HAMERSLOUGH:  We have to get their authority.

13       THE COURT:  Everything works --

14       MR. HAMERSLOUGH:  Judge, North Hampton, the

15  Arizona property is ours.

16       THE COURT:  Belongs to Ms. Stevens.

17       MR. HAMERSLOUGH:  We have two cars.  We've agreed

18  each party is going to take a car.  We have to sign one over

19  to Mr. Wade.  We need to make sure that any automobile

20  insurance, you know, gets signed over.  I'm -- any credit

21  cards or any, you know, costs that have been incurred by an

22  individual are their responsibility.

23       MR. TOWERY:  Okay.

24       MR. HAMERSLOUGH:  Yeah.

25       MS. STEVENS:  Any costs that are now owing.

26       MR. HAMERSLOUGH:  Yes.

27       THE COURT:  Is their responsibility, person's

28  responsibility.  If there's any disputes about those, you'll

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  go to Judge Silver.  Start date, I would like the start date

2  to be tomorrow.

3           MR. WADE:  No.  I --

4           THE COURT:  That's when -- this is binding as of

5  today.

6           MR. WADE:  I can't do it, Judge.  I can't make

7  a --

8           THE COURT:  I need -- you know what, folks, you

9  talk about it.  I have to make a phone call.  Just talk

10 among yourselves about a start date.

11          MR. HAMERSLOUGH:  We'll pay for Palo Alto, the

12 condo.  Jim's idea was that the effective date, you know,

13 should be with possession.  He's got possession of 1010.

14 He's got possession of Woodside.  He wants to get out in ten

15 days, out of Woodside.  He pays up and brings it current

16 through that date.

17          MR. TOWERY:  I mean, first of all, the problem

18 with the effective date is Booker's not going to be kicked

19 out on the street tomorrow.  I mean, that's just totally

20 unreasonable.

21          THE COURT:  No, effective date in terms of paying

22 for the cost.  So --

23          MR. WADE:  Cost of what?

24          THE COURT:  So, maybe -- in other words, as of --

25 did you pay Woodside's mortgage?

26          MR. WADE:  She pays it.

27          THE COURT:  That's right.  I forgot about --

28          MS. STEVENS:  Oh, he admitted that.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       THE COURT: I forgot about that.

2       MR. WADE: And it's unpaid --

3       THE COURT: Stop, stop. Let me try to finish this

4 up. Woodside is paid for. In terms of cost as of January

5 22nd, 1010 Corporation Way, there's an allocation of who's

6 responsible beginning tomorrow, from tomorrow forward the

7 mortgage and the utilities. And what builds up is going to

8 be your responsibility backwards. There's not going to be

9 an accounting, though I need to tell you she didn't pay

10 January. It's due on the 16th, and she didn't pay. So,

11 essentially -- in effect, I mean, it's a few days off, but

12 you're responsible for Corporation Way. In terms of living,

13 we'll figure out a grace period, so --

14       MR. WADE: The first thing is making an effective

15 date in the middle of the mortgage period or accrual period

16 makes no sense at all.

17       THE COURT: Well --

18       MR. WADE: Judge, please. It just makes no

19 business sense. And the fact she's saying it's unpaid means

20 the effective date is really retroactive to the 1st in terms

21 of my responsibility.

22       MR. HAMERSLOUGH: Who's had possession of it?

23       THE COURT: Stop, stop.

24       MR. WADE: Would you be quiet for a moment.

25       THE COURT: Go ahead, Mr. Wade.

26       MR. WADE: So, this becomes a de facto effective

27 date. And since there's no accountings at the moment and

28 since she has some money and I have none, that's me behind

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 the 8 ball. This whole thing is just going to fall apart

2 with this effective date. I cannot deal with this, will

3 not, cannot.

4 THE COURT: We need to take a break. I can't

5 resolve it. I needed to be across the street two minutes

6 ago. So, I want everybody to come back. This is the last

7 issue I think, and we'll figure out the effective date.

8 MR. TOWERY: When?

9 THE COURT: At 9:15, 9:15.

10 MR. TOWERY: Very good.

11 THE COURT: Okay, 9:15. see you back tomorrow.

12 MR. TOWERY: Thanks, Your Honor.

13 MS. STEVENS: Thank you.

14 THE COURT: Be thinking about it, and think of a

15 date.

16 (Whereupon, the proceedings were concluded.)

17

18

19

20

21

22

23

24

25

26

27

28

COPYING PROHIBITED PURSUANT TO GOV CODE 69954(d)

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2        IN AND FOR THE COUNTY OF SANTA CLARA

3      BEFORE THE HONORABLE JAMIE JACOBS-MAY, JUDGE

4              DEPARTMENT NO. 4

5                 ---oOo---

6   ARLENE STEVENS, SUNGILT          )
     CORPORATION and TV-32 DIGITAL   )
7   VENTURES, INC.,                   )
                                      )
8         Plaintiffs,                 )
                                      )
9         vs.                         )      Case No. 1-07-CV-090284
                                      )
10  COOPER-FOWLER MEDIA COMPANY,     )      SETTLEMENT
     MINORITY TELEVISION PROJECT,    )
11  INC., GREG TALLEY, SHEILA        )
     ROBERTSON TALLEY and BOOKER T.  )
12  WADE, JR.,                        )
                                      )
13        Defendants.                 )
    _____)
14                                    )
     AND RELATED CROSS-ACTION.        )
15  _____)

16

17                ---oOo---

18      REPORTER'S TRANSCRIPT OF PROCEEDINGS

19        Thursday, January 22, 2009

20      VOLUME II of II - Pages 68 - 117

21                ---oOo---

22

    A-P-P-E-A-R-A-N-C-E-S:
23
     FOR THE PLAINTIFFS:          DAVID M. HAMERSLOUGH and
24                                STEPHEN S. FRY,
                                  Attorneys at Law
25
     FOR THE DEFENDANTS:          JAMES E. TOWERY and
26                                NATASHA M. PARRETT,
                                  Attorneys at Law
27

28  OFFICIAL COURT REPORTER:      PATRICK CROWLEY, CSR 11271
                                  RPR, CRR 846186

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 San Jose, California

2                         PROCEEDINGS

3          THE COURT:  The record will reflect of that all

4 parties and attorneys are present.  When we left off

5 yesterday we were focused on the start date.  I just want to

6 talk about it for a second and talk about the equipment, and

7 I don't think we said this.  This is a little bit of

8 clean-up in case we didn't say it.

9          There's a 300,000 -- a $300,000 value attached to

10 the equipment, and we talked about how there's this pot of

11 money from the sale of the licenses of Topeka to secure the

12 payment of the $300,000.  We went into that in a great deal

13 of detail.

14          If for some reason there's not enough money in

15 that pot to cover it, the equipment is also security for the

16 $300,000 debt.  So -- and that's a fairly standard practice.

17 In other words, if you don't pay the money and the money --

18 and there's not enough money to pay it, then the equipment

19 serves as security for the debt as well.  So, that's --

20          MR. TOWERY:  One thing that did not surface in our

21 discussions about the equipment yesterday is that the

22 equipment presently acts as part of the security for the

23 Sonoma Bank loan.  In other words, the bank has a secured

24 interest in the equipment.

25          THE COURT:  Okay.  The Sonoma Bank loan is the

26 one --

27          MR. TOWERY:  On 1010.

28          THE COURT:  On 1010.

COPYING PROHIBITED PURSUANT TO GOV CODE 69954(d)

1          MR. TOWERY:  That's correct.

2          THE COURT:  All right.

3          MR. TOWERY:  So --

4          THE COURT:  I'm glad that you said that, so that's

5    in there, too.

6          MR. TOWERY:  So, the security interest of

7    Ms. Stevens in the equipment, the ultimate equipment would

8    be junior to any existing security interest in it.

9          THE COURT:  Understood.

10          MR. TOWERY:  Okay.

11          THE COURT:  And thank you for pointing that out.

12          MR. TOWERY:  And this raises the issue -- I

13    appreciate the fact that we have not dealt with how title to

14    1010 is going to be transferred because as we discussed

15    yesterday, we're willing to look at the tax consequences and

16    do it in the most friendly tax manner.  But title to the

17    equipment is presently in TV-32, and it's security for the

18    loan.  So, however title to 1010 gets changed after we go

19    through the process of determining the tax consequences,

20    title to the equipment needs to follow title to the building

21    because it is security for the loan, for the Sonoma loan on

22    the building.

23          THE COURT:  All right, and now I'm going to give

24    you folks a chance to just take a one-minute discussion to

25    -- right now we have the ownership of the equipment, as I

26    understand it, being given to Mr. Wade.  And with the

27    understanding that to the extent that KMTP has an interest

28    in it, the settlement agreement will have to include them

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  giving up an interest to it; and that Mr. Wade will

2  indemnify and hold harmless Ms. Stevens for any claims of

3  KMTP to the equipment or for that matter anything else.  So,

4  we'll just -- which is the reason why you need to have KMTP

5  signing off in language that you feel protects yourself.

6       MR. TOWERY:  We agree that -- first of all, that

7  Mr. Wade is going to become the owner of the equipment.  We

8  agree with the principle of indemnification.  I had assumed

9  -- and maybe this is a good time to clarify that.  It's not

10  going to be indemnification limited to this issue, but it is

11  going to be a broad mutual indemnification clause in the

12  agreement; that if the conduct of either party causes a

13  financial loss to the other, there are rights of

14  indemnification.

15       THE COURT:  And specifically because there are

16  outstanding parties that Mr. Wade has control -- strike

17  that.  I don't want to say control over -- that's a loaded

18  word -- but is affiliated with KMTP, his niece and his

19  nephew.  You're going to be drafting language that you think

20  protects yourself, but Ms. Stevens is going to get indemnity

21  from Mr. Wade for those kinds of things, meaning the people

22  and entities affiliated with them.

23       MR. TOWERY:  What I had assumed was going to be

24  included is an indemnification clause that says among other

25  things if there are claims of a third party that cause a --

26       THE REPORTER:  Cause a what?

27       MR. TOWERY:  A loss to any party, then the other

28  party indemnifies that person.

COPYING PROHIBITED PURSUANT TO GOV/CODE 1922.45

1          THE COURT:  And it's not just of loss but if they

2  have to defend against.  So, it's a right of indemnification

3  for any defense and any loss.

4          MR. TOWERY:  That's correct.

5          MR. HAMERSLOUGH:  I'd just like to see the scope

6  of the language that he's talking about.  I mean, I

7  understand the concept, but it's...

8          THE COURT:  All right.  Is that agreeable,

9  Ms. Stevens?

10          MS. STEVENS:  Did you say we had a minute to talk

11  about it?

12          THE COURT:  Yes.  I mean literally a minute.

13          (Whereupon, a discussion was had off the

14          record.)

15          THE COURT:  We are going to skip over the issue of

16  ownership of the equipment and get back to it in a minute.

17          I want to go to the start date.  I shared my

18  thoughts I think with both of you, which is -- and I think I

19  did it yesterday on the record, which is, well, let's pick a

20  start date.  My thinking is -- yesterday my thinking was

21  today.  Today my thinking is tomorrow.

22          And before we do that, I want to confirm because I

23  don't want there to be any surprises.  In terms of payments,

24  I want to know what has been paid and what has not been

25  paid.  So, let's just take Palo Alto first.  Is there any

26  delinquencies on Palo Alto?

27          MR. WADE:  Current on the mortgage and

28  approximately $3,000 in homeowner's fees.

1          THE COURT:  Have not been paid?

2          MR. WADE:  Have not been paid.

3          THE COURT:  Okay, so the current mortgage has not

4 been paid.  How much is it?

5          MR. WADE:  4100.

6          THE COURT:  And homeowner's fees have been

7 accruing, and you owe 3,000 bucks?

8          MR. WADE:  Approximately, yes.

9          THE COURT:  Okay.  In terms of 1010 --

10         MR. HAMERSLOUGH:  How about property tax?

11         THE COURT:  What about property tax?

12         MR. WADE:  They're unpaid as well.

13         THE COURT:  For when?  For how long and what

14 amount?

15         MR. WADE:  4500 approximately.

16         THE COURT:  What else?  What about insurance?

17         MR. WADE:  The insurance is included by the

18 homeowner's association and includes for physical damages.

19         THE COURT:  Any other questions on Palo Alto?

20         MR. HAMERSLOUGH:  Steve, you have any questions on

21 Palo Alto?

22         MR. FRY:  No.

23         THE COURT:  Okay.  Let's move to 1010.  What are

24 the delinquencies on 1010?

25         MR. FRY:  It's my understanding that the Sonoma

26 National Bank loan, which was due on the 16th, has not been

27 paid.

28         THE COURT:  It's due on the 16th or it's due on

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1   the 1st; it has to be paid by the 16th?

2           MS. STEVENS:  Yes.

3           MR. FRY:  Due on the 1st, late on the 16th.

4           THE COURT:  So -- and what's the amount of that?

5           MS. STEVENS:  It's about 12.

6           MR. FRY:  It's about $12,400.

7           THE COURT:  Okay.  Have taxes been paid, property

8   taxes?

9           MR. FRY:  Taxes are current.

10          THE COURT:  And insurance --

11          MR. FRY:  There's a second also through Colson

12  Financial Services, and that has been an automatic debit out

13  of the account, and that has been made.

14          THE COURT:  Okay.  Anything else that has not been

15  paid that you know of?

16          MR. FRY:  The only thing that's due is the

17  insurance, current insurance payment is due.  That's about

18  $2200.

19          MR. TOWERY:  When were utilities last paid?

20          THE COURT:  Utilities, when were they last paid?

21          MR. FRY:  I sent you the bills for the last

22  payment for utilities about three weeks ago.

23          MR. TOWERY:  The question is when were the

24  utilities last paid.

25          MR. FRY:  Prior to -- whatever date prior to

26  the --

27          MR. TOWERY:  Were they paid in December, not paid

28  in January?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1    MR. FRY:  I can't -- I don't have a copy of the
2 bill that I sent you, but that's probably about right.

3    THE COURT:  Okay.  Woodside?

4    MR. FRY:  Woodside mortgage again I believe is due
5 on the 1st, late on the 16th, has not been paid.

6    THE COURT:  In the amount of?

7    MR. FRY:  It's about $9,968.

8    THE COURT:  So, we'll call it 10,000.  All right,
9 so that's the background.  My suggestion is just like we've
10 done with all other accountings back and forth.  Money is
11 not going to switch hands, and people are going to take the
12 property subject to these debts owing.  And they are not
13 going to be the responsibility of the other side.

14    So, on Palo Alto, for example, you own it 60/40.
15 So, that money's going to get paid out of the proceeds.
16 Then obviously you share in that 60/40.

17    To the extent that Ms. Stevens is taking Woodside,
18 she's taking -- she'll be responsible for the deficiencies.
19 To the extent that Mr. Wade is taking 1010, he'll be
20 responsible for the deficiencies.  You're taking it subject
21 to these deficiencies.

22    My suggestion is that we start this obligation
23 tomorrow because you're taking subject to the deficiencies,
24 and the start date doesn't matter because you're taking it
25 subject to the deficiencies anyway.

26    In terms of moving out, which is more critical, my
27 suggestion is that we talk about practically what the best
28 time to move out is.  How much time do you need?  How much

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1   time do you want? When do you want to start? So,

2   Ms. Stevens is going to be moving out of Palo Alto, moving

3   into Woodside. When did you want to do that? Here's my

4   suggestion.

5         MR. HAMERSLOUGH: Answer her question. Tell her.

6         THE COURT: Ms. Stevens, my suggestion is 30 days.

7   My suggestion is that -- and just to make it a time that

8   gives you -- why don't we say the 23rd of February because

9   that gives you some weekends in there and some holidays in

10   there.

11         MR. TOWERY: Which day of the week is the 23rd?

12         THE COURT: It's a Monday.

13         MR. TOWERY: Okay, thank you.

14         THE COURT: The last Monday of the month, having

15   taken advantage of some holidays. So, that would mean that

16   you need to vacate -- I mean, it's up to you, but you would

17   need to vacate all your stuff out of Palo Alto. Mr. Wade

18   would have to move all his stuff out of Woodside, and then

19   you would move into Woodside.

20         Now, you had a -- you had asked me a question. I

21   shared it with the other side. Why don't you say it out

22   loud.

23         MR. TOWERY: Mr. Wade is obviously going to need a

24   place to live. I presume the Palo Alto condo is going to be

25   listed for sale as rapidly as can be arranged following the

26   execution of this settlement agreement. Assuming that that

27   is sitting vacant pending sale, it makes good sense to me to

28   allow Mr. Wade to live there until the sale occurs.

COPYING PROHIBITED PURSUANT TO GOV. CODE 6005(d)

1        THE COURT:  Any objection?

2        MR. HAMERSLOUGH:  Just tell us what your response

3 is.

4        MS. STEVENS:  No objection to that.

5        THE COURT:  Okay.

6        MS. STEVENS:  And then on Woodside, would I be

7 able to live there until the sale?

8        THE COURT:  It's yours.  You can live there as

9 long as you want or as short as you want.  It's yours.

10       MS. STEVENS:  Okay.

11       THE COURT:  All right, so there's no objection.

12 That's what we will do.

13       MR. HAMERSLOUGH:  My only -- my only comment is

14 we're going to have to agree on a broker, you know, to list

15 that property.  And I just want the cooperation with that

16 broker in terms of --

17       THE COURT:  As part of this agreement --

18       MR. HAMERSLOUGH:  Showing and, you know.

19       MR. TOWERY:  Of course.

20       MR. HAMERSLOUGH:  I'm not suggesting staging, but

21 you know what I'm saying.

22       MR. TOWERY:  Of course.

23       THE COURT:  And as part of this agreement there

24 has to be good faith cooperation.  And if there are any

25 issues about that, you'll go to Judge Silver.

26       But implicit in that -- and my sense is that

27 actually a property shows better when someone is living

28 there, but that you have to keep it clean; you have to

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  cooperate; you have to take the locks off, whatever it takes

2  to sell.

3          Okay.  Then the last piece of this --

4          MR. HAMERSLOUGH:  I'm sorry, may I ask one

5  clarification?

6          THE COURT:  Yeah.

7          MR. HAMERSLOUGH:  You described who will be

8  responsible for what has not been paid --

9          THE COURT:  Right.

10         MR. HAMERSLOUGH:  -- starting tomorrow.  Though

11  going forward the obligations are going to be incurred --

12         THE COURT:  They go with the person.

13         MR. HAMERSLOUGH:  They go with the person.

14         THE COURT:  So, in other words, 1010 goes with --

15  that's why it doesn't matter when we start it.  1010 goes

16  with Mr. Wade.  Woodside goes with Ms. Stevens, and Palo

17  Alto is shared 60/40; 60 Stevens, 40 Wade.

18         MR. HAMERSLOUGH:  Right.

19         THE COURT:  Because that's how you own it.  Okay.

20  Moving right along, the last -- the very last piece of this

21  is the ownership of KMTP.

22         MR. HAMERSLOUGH:  Ownership of --

23         THE COURT:  The ownership of the equipment.  Let

24  me just say a couple more things just to make sure I covered

25  them.  Ms. Stevens has a house in Arizona.  That is

26  obviously hers.  The -- I think we've already said

27  Ms. Stevens has a brother.  His deposition was taken.  He's

28  made noises about suing.  I'm just saying this out loud

COPYING PROHIBITED PURSUANT TO GOV. CODE 6992540145

1 because I don't want anything to be unsaid.

2       MR. TOWERY: Let me just add to that. With

3 respect to any potential claim of John Stevens, there is

4 nothing in this settlement agreement that addresses that in

5 any way, shape or form. Nobody's assuming responsibility

6 for that.

7       MR. HAMERSLOUGH: Nor is anybody giving up any --

8       MR. TOWERY: Correct.

9       MR. HAMERSLOUGH: -- cross-complaints that --

10 should something be filed.

11       MR. TOWERY: Correct.

12       THE COURT: Okay. Then we talked about cars. I

13 think you covered that already; that you'll arrange for the

14 transfer of title of Mr. Wade's car to Mr. Wade. He's

15 responsible for his own insurance.

16       Credit cards. You each are responsible for the

17 debts you incurred on any credit cards. To the extent you

18 have some joint credit card, my suggestion is that you

19 destroy it; that any joint credit cards be destroyed. If

20 either of you have a credit card in the other person's name,

21 it shall be destroyed, and you're responsible for any

22 charges that you made onto those credit cards if there are

23 any.

24       MR. FRY: And, Your Honor, just to add one point

25 on that. As you know, we've discussed the other issues with

26 respect to indemnification or hold harmless in the event

27 that there's any liability.

28       THE COURT: Listen to this, Mr. Towery. Listen to

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  this.

2      MR. FRY:  With respect to the vehicle and the fact

3  that Ms. Stevens, you know, has held title to that vehicle,

4  to the extent that there's any liability or claims that are

5  brought against Ms. Stevens, you know, while Mr. Wade has

6  had the use of the vehicle, then the indemnification, hold

7  harmless would apply to that as well.

8      THE COURT:  That would be correct.

9      MR. TOWERY:  That's fine.  We do not need separate

10 indemnifications clauses for each little issue.  These are

11 all covered under the umbrella indemnification clause.  I

12 agree with the principle that you're saying.

13     THE COURT:  Okay, and then the last thing that I

14 wanted to say is to the extent that you folks are fighting

15 about personal property or anything -- so, it's a broad

16 thing.  If you're fighting about anything other than what

17 does that agreement mean, which I'll handle, but the -- for

18 example, my grandmother's broach is missing in terms of

19 personal property or anything like that, those kinds of

20 issues all go to Judge Silver.

21     If for some reason Judge Silver is either

22 unwilling or unable to hear the case, this agreement says

23 you shall pick a new neutral person.  If you can't agree on

24 a new neutral person, you'll come to me, each of you, giving

25 me two names and a CV, and I'll pick the neutral person for

26 you.  But you're going to have a neutral -- a neutral,

27 private neutral who will through a mediation, slash,

28 arbitration process quickly resolve all of these issues for

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  you.

2      Finally, the equipment ownership of KM -- strike
3  that, the equipment ownership.

4      MS. STEVENS:  May I have a moment, please?

5      THE COURT:  Literally a moment.

6          (Pause in proceedings.)

7      MR. HAMERSLOUGH:  The question that she's raised
8  has to do with the Private Bank of the Peninsula account
9  where money has been deposited.

10     THE COURT:  You mean -- what about it?  Who has
11 that account?

12     MS. STEVENS:  TV-32 Digital Ventures.

13     THE COURT:  Do you know what Ms. Stevens is
14 talking about?

15     MR. WADE:  There are two TV-32 Digital Ventures
16 accounts.  She has one; I have one.

17     THE COURT:  And so there are two accounts, and in
18 whose names -- are they with the same bank?

19     MR. WADE:  No.  They're different banks, and --

20     THE COURT:  One is with?

21     MS. STEVENS:  Comerica.

22     THE COURT:  Is that yours, Ms. Stevens?

23     MS. STEVENS:  Yes.

24     THE COURT:  Are you the signatory?

25     MS. STEVENS:  Yes.

26     THE COURT:  And one is with?

27     MR. WADE:  Private Bank of the Peninsula, and I'm
28 the sole signature on that.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954045

1          THE COURT:  And the answer is whoever's name is on
2   the account has that account and has what's in the account,
3   and that's the way this would go under the agreement.
4          My understanding is on Private Bank, per Mr. Fry,
5   it's been money in, money out.  In other words, there's no
6   money sitting in that account.  Is that correct, Mr. Fry?
7          MR. FRY:  I don't know currently.  I haven't seen
8   the records through about October of 2008.
9          THE COURT:  Can you tell us today how much money
10  is in that account?
11         MR. WADE:  Which account, mine?
12         THE COURT:  Private, yes.
13         MR. WADE:  Four or 5,000.
14         THE COURT:  Four or 5,000.  And that's consistent
15  with your history?
16         MR. FRY:  Yes.
17         THE COURT:  Okay, so --
18         MR. HAMERSLOUGH:  Why don't we just get a
19  statement under penalty of perjury that is accurate?
20         MR. WADE:  What difference does it make?  I
21  mean --
22         THE COURT:  It's okay.
23         MR. WADE:  Am I entitled to see what's in her
24  accounts and...
25         THE COURT:  You're making representations.  What
26  we want are those representations to reach this.
27         MR. WADE:  What are their representations?
28         THE COURT:  Their representation as to Comerica.

COPYING PROHIBITED PURSUANT TO GOV'T CODE 69954(d)