1     MR. WADE:  Yes.

2     THE COURT:  What's your representation as to

3  Comerica?

4     MS. STEVENS:  Excuse me?

5     THE COURT:  How much money is in the Comerica

6  account?

7     MS. STEVENS:  I think there may be about 3,000.

8     THE COURT:  So, we'll make it mutual.  Each of you

9  will give the last -- in fact, instead of a declaration

10  under penalty of perjury, give the December and January

11  account, your bank accounts, the thing you get from the

12  bank, your December and January.  You'll give them your

13  Comerica one.  They'll give you the Private.

14     MS. STEVENS:  The statements?

15     THE COURT:  The statements.

16     MS. STEVENS:  And then what happens?

17     THE COURT:  That's it.  You each will confirm

18  there's very little money in those accounts, and there's

19  certainly not enough money to fight about.

20     MR. FRY:  Well, one thing that might be useful

21  also, if the parties simply agree to close those accounts.

22  I mean, there's no reason for them to continue.

23     THE COURT:  That's not the point that Ms. Stevens

24  is concerned about.

25     MR. HAMERSLOUGH:  I think I agree with the judge.

26     MS. STEVENS:  But my point is that there's

27  actually -- I'm sorry, actually Comerica -- TV-32 Digital

28  Ventures actually does not have any money because the money

Case: 13-50376    COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)    Filed 06/06/13    Entered: 06/07/13 13:20:45    Page 1 of 30

1  that is in there is loaned to it from me, so that is my

2  money. The money that's in the Private Bank of the

3  Peninsula is legitimate income owed to TV-32 Digital

4  Ventures.

5      THE COURT: Ms. Stevens, we've gone through all of

6  this. We've talked about it. We've talked about how money

7  is not going to be exchanged back and forth. We've talked

8  about that as an underlying premise. So, you're bringing up

9  old information.

10     And if what you need is confirmation because we're

11 relying on information given to us and the information is

12 from Mr. Fry confirmed by Mr. Wade, there is very little

13 money that sits in the account. Four or $5,000 comes in and

14 four or $5,000 goes out.

15     To confirm that information, I'm requiring as part

16 of this settlement each of you exchange information so you

17 can have confirmation. We have talked about it. We have

18 decided these issues. It's a yes or no. You don't like it,

19 go upstairs. And we've been at this for two and a half

20 days. This is old news. So, the issue that -- we've

21 decided that issue. You don't like it, go upstairs and have

22 your trial.

23     The last issue that we haven't decided under this

24 is the ownership of the equipment. That's what I was

25 waiting for an answer about. I've been waiting all morning,

26 an issue you brought up today. So, let us hear what the

27 answer is.

28     MR. HAMERSLOUGH: What's the answer? Which way do

1  you want to go?

2  　　　　　MS. STEVENS:  For what?  For the money per the

3  bank account for the equipment?

4  　　　　　MR. HAMERSLOUGH:  The equipment.

5  　　　　　THE COURT:  So, on the bank account you're going

6  to get confirmation that there's very little money, four or

7  $5,000.  If you don't -- let me just ask you now.  If you're

8  sort of saying, well, I want that money and I want the

9  history of that money and I want the money from Mr. Wade,

10  then we should stop talking because we've been there.  We've

11  talked about that stuff, and it's not going to happen.  So,

12  if that's your issue, go upstairs.

13  　　　　　And I said the same thing to Mr. Wade.  He started

14  out asking for $150,000 from you, and I said no, no money,

15  not going to happen.

16  　　　　　MR. HAMERSLOUGH:  He asked yesterday for money on

17  Cooper-Fowler.  The answer was --

18  　　　　　THE COURT:  No.

19  　　　　　MR. HAMERSLOUGH:  -- no.

20  　　　　　THE COURT:  Not going to happen.  So, if either of

21  you feel I'm not going to settle unless I get money from the

22  other side, both of you go upstairs.  It's not going to

23  happen under this agreement.  Each of you think the other

24  person has money.  Each of you think you're entitled to

25  money.  So, the way -- it will not settle with either of you

26  paying the other person money.  He will not settle -- strike

27  that.  I think he will settle finally with you not giving

28  any money.  And if you're saying I'm not going to, go

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1    upstairs and stop wasting our time.

2          MS. STEVENS:  However, TV-32 Digital Ventures is

3    not him.

4          THE COURT:  It's okay.  Is your point that unless

5    I get money coming from him from some account, even if it's

6    TV-32, I'm not going to settle?  Is that your point after

7    two and a half days of talking settlement where this is --

8    where we made clear that's not going to happen?

9          MS. STEVENS:  I'd like to know -- not only have a

10   statement of what's in the account but a history of where

11   the money went.

12         THE COURT:  You're -- not going to happen as part

13   of a settlement.  So, you've had a year's worth of

14   discovery, and that's what you get in discovery.  If you

15   want a confirmation of what's in the account last month or

16   this month, I'll give it to you to move this thing along,

17   but this is way beyond discovery now.

18         MR. TOWERY:  Your Honor, may I say just for the

19   record for clarification, yesterday there was a response to

20   a subpoena that was served by counsel on Private Bank.  I

21   saw 40 pages worth of bank statements and cancelled checks

22   for the TV-32 Digital account at Private Bank.  Counsel has

23   that response to the subpoena as well.  The history has been

24   provided.

25         MR. HAMERSLOUGH:  Well, I don't know --

26         MR. FRY:  I haven't had an opportunity to review

27   the records.

28         THE COURT:  But you have them.  So, what are we

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  doing, folks?  So, it has been way too much time.  I mean,

2  just let me know what you want to do.  If you want to go to

3  a trial, go upstairs and go to a trial.  It's been two and a

4  half days of this, and we're down to the last question.

5         Who do you want the ownership of the equipment to

6  be in?  You're backtracking.  If you don't want to settle,

7  just tell me.  Stop wasting my time.  It's okay to go to

8  trial.  Go.  And if you want to settle, then let's do it.

9         MS. STEVENS:  Well, let's talk about the other

10  outstanding issues.

11         THE COURT:  There's one more.  Just tell me.

12         MS. STEVENS:  There's also WTV.

13         THE COURT:  There is no outstanding WTV.

14         MR. HAMERSLOUGH:  We've already put it on the

15  record, Arlene.

16         MS. STEVENS:  We did not determine if I'm getting

17  the equipment or not.

18         MR. FRY:  We've reserved with Judge Silver that

19  issue.

20         THE COURT:  So, let me get the answer to this last

21  question, and then let me see if you want to agree to the

22  settlement.  The answer to the last question is the

23  equipment -- the name of the -- who should own the

24  equipment.  Do you want it to be Mr. Wade with the

25  concomitant obligation to secure the payment or do you want

26  it to be KMTP?

27         MS. STEVENS:  Can we talk?

28         MR. HAMERSLOUGH:  No.  You need to answer the

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  question.

2          THE COURT:  We've talked for three hours now.
3  Just give me the answer.

4          MS. STEVENS:  Those are the only two options?

5          THE COURT:  That's correct.

6          MS. STEVENS:  Well, I have a third option.

7          THE COURT:  And your third option is?

8          MS. STEVENS:  Is that it be owned by KMTP but
9  secured by something.

10          THE COURT:  So --

11          MS. STEVENS:  No, I'm sorry; that it continue to
12  be owned by Digital Ventures until all of the payments,
13  installment payments are completed.

14          MR. TOWERY:  No.

15          THE COURT:  Okay.  So, now your two choices are
16  KMTP or Mr. Wade.

17          MS. STEVENS:  I still stand by my third choice.

18          THE COURT:  Okay.  Then you don't have an
19  agreement over the title in the equipment.  If it was owned
20  by W -- by TV-32 or WTV or whatever it's called, how does
21  that help anything?

22          MS. STEVENS:  Well, if the payments are not paid,
23  then at least I -- and it would -- it would be in my name,
24  not Digital Ventures.  Then at least I would have the
25  equipment, that I would be able to sell it to get the money
26  to satisfy the loan.

27          THE COURT:  Can you think of any faster way to get
28  this issue off the table so that that's not -- so that this

COPYING PROHIBITED PURSUANT TO GOV'T CODE 69954(d)

1  $300,000 goes away; it becomes a nonissue?

2      MR. TOWERY:  I wish I had an answer.  I'm sorry, I

3  don't.

4      THE COURT:  If -- here's my thinking.  We're

5  selling Palo Alto.  There's a 40 percent interest in Palo

6  Alto.  We think that there at least -- but there won't be

7  enough money for Palo Alto; how much money will there be in

8  Palo Alto?

9      MR. TOWERY:  Well, we think the top-side equity is

10  probably 150, 160,000; 40 percent of that would be 60,000,

11  something like that.

12      THE COURT:  You guys wait outside for a second.

13          (Whereupon, a discussion was had off the

14          record.)

15  THE COURT:  Okay.

16  MR. TOWERY:  Here's -- while we would like to

17  accommodate Ms. Stevens, here's the practical problem that

18  exists.

19      THE COURT:  Yes.

20      MR. TOWERY:  Sonoma Bank made a loan to TV-32

21  Digital Venture.

22      THE COURT:  Right.

23      MR. TOWERY:  Sonoma Bank took a security interest

24  in everything owned by TV-32 Digital Ventures.

25      THE COURT:  Right.

26      MR. TOWERY:  The building and the equipment.

27      THE COURT:  Okay.

28      MR. TOWERY:  However, we resolved title to TV-32

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  as we discussed yesterday in a tax friendly method; that we

2  haven't yet resolved whether it's going to be to Booker as

3  an individual, whether to TV-32 Digital Ventures -- because

4  he's getting the building and the obligations that go with

5  the building.  He also has to get the assets that are

6  pledged as security.  They have to go together.

7         So, TV-32 Digital's assets go with the transfer of

8  1010.  You can't separate them because they've all been

9  pledged to Sonoma National Bank as security for the loan.

10  So, Booker can't give up title to any of those assets

11  without potentially violating the covenants with the bank.

12         MR. HAMERSLOUGH:  I don't agree with that.

13         THE COURT:  I don't either.  I think that -- I

14  think that so long as the bank is in first position, and I

15  agree with that, it doesn't matter if TV-32 sold the asset.

16  They sold the asset subject to the bank's interest in it.

17         MR. TOWERY:  I strongly and respectfully disagree

18  with you folks.  The bank has a security interest --

19         MR. HAMERSLOUGH:  No.

20         MR. TOWERY:  -- beyond the building.

21         THE COURT:  It continues to have it.

22         MR. TOWERY:  And it's not going to give that up.

23         THE COURT:  And it continues to have it.

24         MR. HAMERSLOUGH:  Yeah.

25         THE COURT:  It's subject to that security

26  interest.  So, that anything that he sells or --

27  hypothetically, if these parties decided to sell the

28  equipment, it would be subject to the bank's interest in the

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 equipment, unless there's something in there saying you

2 can't sell -- even though I have a security interest in the

3 equipment, you can't sell the equipment; then, you know, you

4 can't sell the equipment, but that would also mean --

5      MR. TOWERY: No --

6      THE COURT: That would also mean -- I've got news

7 for you. KMTP can't have it. The only one that can have it

8 is W-32.

9      MR. HAMERSLOUGH: TV-32.

10      THE COURT: TV-32. So, it can't be both ways.

11 Either the bank is saying the only one that can have it is

12 TV-32 -- you cannot sell, transfer give away, loan, lease

13 because we have a security interest, and we want you, TV-32,

14 to own it, or you can, so long as it's subject to the

15 security interest.

16      MR. TOWERY: Well, the problem is we don't have

17 the bank sitting here at the table, and we don't want to do

18 something to cause the bank loan to be called.

19      THE COURT: Okay, so my suggestion is we reach

20 this agreement subject to the bank agreeing. So, that the

21 agreement would be TV-32 retains title in the equipment,

22 that the bank be made aware that the equipment is being used

23 by KMTP, that these folks have had a dispute, that we're

24 doing all different things including the transfer of 1010.

25 The bank has to be made aware of that, too.

26      That Mr. Wade has agreed to pay $300,000 for it;

27 that we understand that the equipment -- first priority goes

28 to the bank. If the bank's interest -- if the bank's loan

Case: 13-50376   Doc# 52-3   Filed: 06/08/15   Entered: 06/08/15 10:39:45   Page 9 of 30

1   is paid off, which is our intent, and to remove her as a

2   guarantor, that they no longer have a security interest in

3   the equipment. The equipment would then service the

4   security interest for the $300,000 loan.

5           MR. TOWERY: But when you say TV-32 will continue

6   to own the equipment --

7           THE COURT: Right.

8           MR. TOWERY: -- that statement presupposes how the

9   issue of title to the building is going to be handled.

10          THE COURT: It doesn't.

11          MR. TOWERY: When the issue hasn't been decided.

12          THE COURT: It doesn't, and I'll say it out loud.

13  The parties disagree about ownership of TV-32. The issue

14  has not been decided.

15          MR. TOWERY: No, no, no, no, not the litigation

16  issue. The how was title going to be held pursuant to the

17  settlement agreement issue.

18          THE COURT: No. We're leaving that open, too. I

19  don't need to know -- the parties have two different

20  opinions of it. I think that we will never need to know

21  because TV-32 has two assets: 1010 and this equipment. And

22  we know what's happening to 1010. We know what's happening

23  to the equipment, and we just need a vehicle to make this

24  stuff happen, and we have mutual issues going on here. So,

25  fine, let it stay in title of TV-32, knowing that the

26  parties disagree about ownership.

27          MR. TOWERY: Your Honor, I'm sorry, I'm not

28  communicating this very well. It's not the parties disagree

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  about who owns TV-32. I'll call that the litigation issue.

2  That is an issue in litigation. We're putting that aside

3  because we're settling the litigation.

4      THE COURT: Right.

5      MR. TOWERY: Because yesterday when I said how are

6  we going to effectuate the change of title so that Booker

7  gets 1010, the answer was unknown, in a tax friendly

8  fashion, no reassessment. That is to be determined.

9      THE COURT: Right.

10      MR. TOWERY: And encompassed within that is title

11  could be in Booker's name as an individual person. It could

12  be in TV-32's name because TV-32 would then become an asset

13  of Booker.

14      And one of the issues here is we also need to talk

15  to the bank and make sure that this change of title to

16  implement the settlement agreement doesn't call the bank

17  loan to be called.

18      And, I mean, we want -- you articulated the

19  policies behind how that's going to be resolved very well.

20  We completely agree with that.

21      To deal with this peripheral issue on the

22  equipment now to say the equipment stays in TV-32

23  contradicts what we were talking about yesterday because it

24  indicates that TV-32 is going to stay with Ms. Stevens.

25      What you're really talking about to accomplish

26  Miss Stevens' desire here is to put her as an individual on

27  the equipment. I mean, that's the effect of what you are

28  trying to accomplish with your comments. That's really a

COPYING PROHIBITED PURSUANT TO GOVT CODE 69954(d)

1 change in ownership from what it's been.

2          THE COURT:  Well --

3          MR. TOWERY:  I'm not trying to be obstructionist,
4 but...

5          THE COURT:  You're not, and I appreciate -- I
6 appreciate you trying to highlight the issue.  I guess what
7 I'm saying is let's not even -- let's back away from how
8 we're dealing and let's see what we're trying to accomplish.

9          What we're trying -- this is what we're trying to
10 accomplish, that the equipment is being used by KMTP, and
11 that Mr. Wade is going to be responsible for paying for it
12 and will give a note for $300,000; that that note has terms
13 to it which we discussed yesterday; that there will probably
14 be a default on that note immediately; that the equipment
15 which secures the note, albeit a second below the bank,
16 can't be used to pay off the note until the licenses and
17 Topeka stuff is sold and there's deficiencies.

18          We're really looking to that pot of money to pay
19 off the note with the accumulated late fees and interest.
20 If that amount of money is insufficient to pay off the note,
21 then the bank goes first.  Once the bank is satisfied, the
22 equipment can be repossessed to pay off any deficiencies.
23 That's what we're trying to accomplish.

24          MR. TOWERY:  I agree with that statement.

25          THE COURT:  What Ms. Stevens -- Ms. Stevens, so
26 then your issue then becomes what?

27          MS. STEVENS:  The issue is that -- the issue
28 becomes the ownership of the equipment until the equipment

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  is finally paid for by whomever we decide, either by KMTP or

2  by Mr. Wade.

3          THE COURT:  Okay, so our choices are in terms of

4  ownership of the equipment -- until that happens, our

5  choices are TV-32, Stevens, Wade or KMTP.  Those are our

6  four choices.  KMTP because they're using it --

7          MR. TOWERY:  Why don't we put Stevens and Wade on

8  title to the equipment?

9          THE COURT:  How about that?

10          MS. STEVENS:  No.  What would be the reason for

11  putting --

12          THE COURT:  We're just trying to get through --

13          MS. STEVENS:  Right, yeah.

14          THE COURT:  -- this, just a technical thing.

15          MS. STEVENS:  No.  He's proven to be an

16  obstructionist, and I don't trust his name being on the

17  title.

18          THE COURT:  The answer's no.  So, let's come up

19  with -- okay.  So, Mr. Towery, help me out.  Just help me

20  out for a second.  What -- so, if we put TV-32 on, what bad

21  thing would happen?

22          MR. TOWERY:  Well, we could make a determination

23  as we start trying to implement the settlement that the only

24  way that 1010 can be transferred in compliance with the

25  settlement is that TV-32 Digital Venture has to be

26  transferred from Stevens to Mr. Wade.  I don't know that

27  that's going to be the case, but it is absolutely within the

28  realm of possibility.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1        THE COURT: Okay, so let's just do an

2 if-that-happens. If that happens, then the equipment,

3 ownership of the equipment, title to the equipment will be

4 held in -- and let's just come up with another possibility.

5        MR. FRY: May I make a comment?

6        THE COURT: Yes.

7        MR. FRY: It seems like from what Mr. Towery's

8 saying is that, you know, perhaps the best way to do it is

9 to simply keep title the way it is right now, in the name of

10 TV-32 Digital Ventures.

11        And then, you know, upon our later discussions or,

12 you know, perhaps we'll need the assistance of Judge Silver,

13 you know, there is a determination as to how the title to

14 the property is held. You know, then at that point in time

15 it would make sense that, you know, this be revisited with

16 respect to the equipment as well. But, you know, perhaps

17 now, without knowing how that's going to play out, it may

18 even be premature to make the determination or have an

19 agreement as to how --

20        THE COURT: So, Ms. Stevens, are you willing to

21 say let's leave it in TV-32? If it turns out that TV-32

22 technically has to become Mr. Wade's, you will leave it to

23 Judge Silver to figure out, well, okay, then let's talk

24 about title then. And should title have to change, with the

25 understanding -- this is very important -- that under no

26 circumstances will your security interest in the equipment,

27 meaning the pot of money or the equipment securing it be --

28        MR. FRY: Prejudiced.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  -- affected by a title change.

2          MS. STEVENS:  He would then have to give up claim

3  to TV-32 Digital Ventures?

4          THE COURT:  No.  You're misunderstanding the issue

5  then.  TV-32 -- we don't know this because we just don't

6  know enough, and this is technical.  But to transfer 1010 to

7  Wade we don't want to trigger a reappraisal.  We don't want

8  to trigger a tax consequence, so --

9          MR. TOWERY:  Or, Your Honor, if I may, a calling

10  of the loan by the bank.

11          THE COURT:  A loan -- calling of the loan.  Some

12  loans say you can't transfer the property.  So, it may be

13  that Wade is going to have to be the owner of TV-32 so that

14  it's not a change of ownership.

15          If that happens, we want to make sure that there

16  are no other assets of TV-32 that he's getting as a

17  consequence that he shouldn't get.  The only other asset is

18  the equipment.  It's the only other asset of TV-32.

19          So, what I'm saying is let's let Silver figure out

20  who should have title pending the paying off of the note

21  with everything in mind, but under no circumstances can your

22  security interest be affected.  So, it's going to be a

23  technical issue because we're going to make sure -- he has

24  to make sure -- this is the agreement, that your security

25  interest in the media equipment is not affected.

26          MR. HAMERSLOUGH:  Right, the security interest

27  being either the equipment itself or the proceeds generated

28  from the real or media properties.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  Exactly.

2          MR. HAMERSLOUGH:  Yeah, that's perfect.

3          MR. FRY:  But with one caveat, and that is that

4    that presumes that from this point until the point that

5    Judge Silver makes that determination, that Ms. Stevens is

6    the 100 percent owner of TV-32.

7          THE COURT:  We're leaving it open who owns TV-32.

8    We are not deciding ownership.  We have competing claims to

9    TV-32.

10         MR. HAMERSLOUGH:  But your point, Your Honor, is

11   that if we hold that in abeyance and we let Judge Silver

12   decide only so that we could accomplish the technical result

13   that we need without jeopardizing or impairing the two

14   security interests, the equipment and the proceeds from the

15   media sales, that's what we're balancing, correct?

16         THE COURT:  That's correct.

17         MR. HAMERSLOUGH:  That's perfect.

18         MR. TOWERY:  And just to make sure that I

19   understand what the Court is saying, Judge Silver in the

20   final analysis gets to decide this issue, consistent with

21   the principles that you have articulated here this morning.

22   It is not that the parties have to reach some further

23   agreement or else the settlement could fall apart.

24         THE COURT:  That's exactly right, but the parties

25   will have a chance to present their case to him.

26         MR. TOWERY:  Correct.

27         THE COURT:  First, he may try to mediate it.  I

28   don't know how he works.  He may try to get you guys to

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954

1  agree to something.  Ultimately, whether it's this issue or

2  any issue, you are agreeing to have Judge Silver decide

3  things, act as an arbitrator --

4        MR. TOWERY:  Right.

5        THE COURT:  -- with these principles in mind.

6  Okay, that's everything.  So --

7        MS. STEVENS:  Is that binding arbitration?

8        THE COURT:  Binding arb -- that's another way of

9  putting it, yes, binding arbitration.  He makes the call and

10  you're done, both ways.  Nobody can appeal it.  Nobody can

11  fight it.

12        You folks are in a position where time is of the

13  essence, and you have to have someone there to make a

14  decision quickly because the alternative to that -- and

15  that's one of the things that I think has motivated you to

16  settle as opposed to try the case.

17        If you try the case and you have appellate rights

18  and you can go on and on and on, you, both of you, will lose

19  everything because you have to make decisions about

20  liquidation.  You have to try to liquidate to make this

21  stuff work or refinance or do whoever you can to hang onto

22  this property.  Time equals losing the property, all of it,

23  all of the assets.  And it's something I think we have all

24  agreed to, which is why you need someone to be able to just

25  call it and you both live with it.  So, the answer's yes,

26  both of you, so --

27        MR. TOWERY:  Your Honor, before you voir dire the

28  parties, couple small clarifications.  Number one, when you

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 were talking about joint credit cards, you triggered a

2 thought. There is one joint bank account of which we are

3 aware that both remain signatories on. It's a Bank of

4 America account.

5      It's originally Mr. Wade's. He's had it for a

6 long time. Our preference for that would be that rather

7 than close that account, we would just do a new signature

8 card, so that Mr. Wade would be the sole signator on that

9 account. It allows him to get whatever benefits exist from

10 having -- from being a long-time customer of Bank of

11 America. It's not an account that has been used by the

12 parties any time in the past several years.

13      THE COURT: Is that agreeable, Ms. --

14      MS. STEVENS: And then they would say I would not

15 have the benefit for having that account for X number of

16 years, so I would be prejudiced by that.

17      THE COURT: So, you're saying no?

18      MS. STEVENS: Yes.

19      THE COURT: So, you have to close the account.

20 Next one.

21      MR. TOWERY: Okay. Yesterday the issue came up

22 about the Wedding TV, whether there was an FCC issue about

23 whether the station had to retain copies of what is aired;

24 and, therefore, there would be an exception to the

25 everything gets turned over to Ms. Stevens.

26      We found out further information. We think we

27 have a very simple solution that should be in the interest

28 of both parties. Mr. Wade talked to Jim Winston this

COPYING PROHIBITED PURSUANT TO GOV/CODE 69954(d)

1  morning.  Jim Winston is a Washington D.C. lawyer who has

2  and continued to represent both Sungilt and KMTP.  Both

3  parties are familiar with him.  He's represented both, and

4  he said that it's not a question of a specific regulation.

5  It is a question of a general FCC regulation that stations

6  keep records of what they've broadcast.

7         For example, they can come back and say did you

8  show obscenity in a show on December 10th.  So, the station

9  would have to have tape of what it showed on December 10th

10 to show they didn't do it.

11        When we talked about this yesterday where we left

12 it on the record was a direction from the Court that this

13 issue would go to Judge Silver to decide if there was an FCC

14 regulation; and if there was, then the station could keep

15 it.

16        Rather than doing that, a simpler solution to this

17 is KMTP won't keep anything regarding Wedding TV, but rather

18 we'll entrust a copy of the hard drives that it's giving

19 back to Ms. Stevens to Mr. Winston; and, therefore, in the

20 event that KMTP gets called upon to need it, Mr. Winston as

21 KMTP's lawyer will have it.  It will accomplish what

22 Ms. Stevens asked for yesterday that KMTP not be left with

23 any of the residual Wedding Television intellectual

24 property.

25        THE COURT:  That sounds good to me, with the

26 understanding that Winston signs an agreement saying that he

27 won't give it to anybody else, that this is protected.  It's

28 her 100 percent property, and he's under the obligation not

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  to share it with anybody else unless it's necessary to prove

2  something about KMTP and what they aired to a regulatory

3  authority.

4       MR. TOWERY:  I would simplify it to say unless

5  requested by a regulatory agent, but, yes, with that --

6       THE COURT:  Is that agreeable?

7       MS. STEVENS:  I have a question.

8       THE COURT:  Yes.

9       MS. STEVENS:  Has that -- any of that product been

10  shared with anyone else heretofore?

11       MR. TOWERY:  It hasn't been given to anybody

12  outside the station.  It's been aired, as you know.

13       THE COURT:  So, is it fair to say in making a

14  representation, Mr. Wade, that copies of this tape have not

15  been given to anybody else?

16       MR. WADE:  No, but I'm sure people have copied it

17  because it's always on the air; people copy everything.

18       THE COURT:  Off their own television sets?

19       MR. WADE:  Right.

20       THE COURT:  Anything else?

21       MS. STEVENS:  Yes.  Have any documents or records

22  or research been shared with anyone else?

23       THE COURT:  So --

24       MR. WADE:  I'm sure there has been.  You know, we

25  -- these things -- KMTP and Sungilt produce these things

26  jointly in association with other independent producers, 30

27  of them.  They may well have copies; I don't know.  But I

28  cannot represent there are no other copies of some of this

1 stuff or parts of this stuff with other people. I can only

2 represent KMTP has not given --

3       THE COURT: We're going beyond --

4       MR. WADE: Okay.

5       THE COURT: -- what we're here to do, Ms. Stevens.

6 So, is it okay with you that Winston holds onto it with him

7 signing an agreement about not sharing the information with

8 anybody?

9       MS. STEVENS: That part is; yes, that's

10 acceptable.

11       THE COURT: Okay, all right. So, now we're up to

12 the time of --

13       MS. STEVENS: No. We didn't deal with the

14 equipment that belongs to WTV.

15       MR. FRY: That's still reserved with Judge Silver.

16       MS. STEVENS: And the ownership of Sungilt.

17       MR. FRY: Well, I mean, my suggestion with respect

18 to Sungilt, the sell licenses and the -- I guess it's only

19 really the sell licenses are owned by Sungilt; and that upon

20 the sale of those licenses, the corporation be dissolved

21 unless you want to hold onto it. And I don't know if

22 Mr. Wade would have any objection --

23       THE COURT: Do you want to hold onto it?

24       MS. STEVENS: Yes.

25       THE COURT: Okay, so the last thing is once the

26 assets of Sungilt are sold, the corporation will not be

27 dissolved, and the parties agree that Ms. Stevens will

28 become a hundred percent owner of the corporation Sungilt.

COPYING PROHIBITED PURSUANT TO GOV CODE §69954(d)

1        MR. WADE: I have no problem with that, but it

2 seems to me that that's the same kind -- TV-32, it's just a

3 name, and --

4        THE COURT: We're doing things one at a time.

5        MS. STEVENS: And is TV-32 Digital Ventures being

6 asked to be dissolved?

7        THE COURT: We're not -- we're leaving -- is it

8 being asked to be dissolved? We don't know what's going to

9 happen with TV-32.

10        MS. STEVENS: Because it goes to Judge Silver?

11        THE COURT: Yes. All right.

12        MR. TOWERY: Well, specifically, because the Court

13 articulated the policy reason that the transfer of title be

14 done in a way that --

15        THE COURT: So --

16        MR. TOWERY: -- minimizes tax consequences or loan

17 consequences.

18        THE COURT: Let me just say, and then what

19 ultimately happens to TV-32 will be a Judge Silver call if

20 the parties disagree.

21        MR. TOWERY: Fine.

22        THE COURT: Okay. Ms. Stevens.

23        MS. STEVENS: I'd like to know if there are any

24 outstanding debts or commitments against -- or regards to

25 WTV or Sungilt or TV-32 Digital Ventures.

26        THE COURT: Is there anything that we don't know

27 about that you know about?

28        MR. WADE: Sungilt --

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       MR. TOWERY:  Let me answer the question first, and

2  we can have Booker assent to what I say or add to what I

3  say.

4       With respect to Wedding TV, there is nothing from

5  Mr. Wade or KMTP that constitutes a debt or an obligation.

6  With respect to Sungilt, the same statement can be made.

7  With respect to TV-32 Digital Ventures, the corporation has

8  been in the control of Ms. Stevens.  We are not



9  independently aware of any obligations that Mr. Wade has

10  incurred on behalf of TV-32 Digital Venture.

11      This does raise one ancillary point, and that is

12  there was a notice to quit that was served in December by

13  TV-32 Digital Venture on tenants at 1010.  And I'm assuming

14  that there will be an affirmative statement in the

15  settlement agreement that TV-32 Digital Venture will cease

16  and desist from any further steps to evict any tenant.

17      THE COURT:  That would be accurate.

18      MR. HAMERSLOUGH:  Correct.

19      THE COURT:  Mr. Wade, anything else?

20      MR. WADE:  She -- the question's very broad about

21  debts to Sungilt.  And I can remember from earlier years

22  there's still some unpaid bills; accounting firm comes up.

23  And I'm sure there might be others but nothing new that I

24  have added since post-separation.

25      MR. HAMERSLOUGH:  Judge, my suggestion would be to

26  the extent there is such an issue, that we leave it with

27  Judge Silver.

28      THE COURT:  Is that agreeable?

COPYING PROHIBITED PURSUANT TO GOV CODE 69954(d)

1         MR. TOWERY: I agree with that.

2         THE COURT: All right. Anything else,

3 Ms. Stevens?

4         MR. FRY: Did we discuss the other credit line or

5 however you want to refer to it as that they hold jointly?

6 It's a Discover card; also, that both their names are on it,

7 and I don't know if we discussed it.

8         MR. WADE: Both our names are on it, and I assume

9 both have charged to it, so I don't --

10         THE COURT: So, each of you are responsible for

11 your own charges. If you disagree about who made the

12 charge, it goes to Silver, and that credit card has to be

13 destroyed as of today.

14         MR. HAMERSLOUGH: Agreed.

15         THE COURT: So, this agreement is, if we get

16 around to getting people to agree to it, is binding as of

17 today. It's not binding as of when we come up with a

18 written agreement. It's binding as of today. Destroy those

19 cards. Stop using joint cards. Ms. Stevens, we're ready.

20         MS. STEVENS: Yes. I would like Mr. Wade to sign

21 a statement as to what he just attested to, that there are

22 no outstanding debts.

23         THE COURT: You have him on the record.

24         MR. HAMERSLOUGH: It's on the record.

25         THE COURT: All right, so --

26         MR. HAMERSLOUGH: Under penalty of perjury.

27         THE COURT: Ms. Stevens, we're now ready -- we're

28 done. So, we have all the terms. We're now moving forward.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  I'm going to actually start with Mr. Wade.  Mr. Wade, did

2  you understand everything we just said --

3           MR. TOWERY:  Yes.

4           THE COURT:  -- over the last two days?  I mean,

5  this is more than one day's worth of settlement talks.

6           MR. WADE:  Yes.

7           THE COURT:  Do you have any questions at all?

8  MR. WADE:  No.

9           THE COURT:  Do you agree to these terms and

10  conditions?

11          MR. WADE:  Yes.

12          THE COURT:  Do you want me to make this a court

13  order?

14          MR. WADE:  Yes.

15          THE COURT:  Ms. Stevens, did you understand

16  everything we said?

17          MS. STEVENS:  I would like one section to be

18  reviewed.

19          THE COURT:  Okay.

20          MS. STEVENS:  And that is in regards to 1010.

21          THE COURT:  Okay.  What don't you -- you tell me

22  what you understand about 1010.

23          MS. STEVENS:  I would like the whole thing to be

24  reviewed.

25          THE COURT:  You tell me what you understand about

26  1010.  It's going to go faster this way.  What do you

27  understand what's going on about 1010?  Who's going to own

28  it after today?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1        MS. STEVENS:  Mr. Wade.

2        THE COURT:  And who's going to be responsible for
3 any money past due?

4        MS. STEVENS:  Mr. Wade.

5        THE COURT:  What else do you need to know?

6        MS. STEVENS:  I currently have two offices in
7 1010, and I would like to keep those offices.

8        THE COURT:  We've talked about that yesterday, and
9 I said once he owns it you don't have a right to be there.
10 So, we've talked about that.  When he owns it, you don't
11 have a right to be there.  Do you have any other questions?

12        MS. STEVENS:  I'd like to speak to my lawyers.

13        THE COURT:  Okay.

14          (Pause in proceedings.)

15        THE COURT:  Okay.  We're back on the record.
16 Ms. Stevens, did you understand everything I just said?

17        MS. STEVENS:  Yes.

18        THE COURT:  Do you have any questions at all?

19        MS. STEVENS:  Yes, I do.

20        THE COURT:  Okay.

21        MS. STEVENS:  There are furnishings at 1010
22 Corporation Way that belong to me and that belong to TV-32
23 Digital Ventures, and I would like those.

24        THE COURT:  Do you know what she's referring to?

25        MR. WADE:  No, I don't.

26        THE COURT:  Do you want to be more specific?

27        MS. STEVENS:  Office furniture.

28        THE COURT:  Okay, so --

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1    MR. WADE: KMTP's --

2    THE COURT: So, you know, never brought up before.

3  I think the contemplation is when ownership is going to

4  somebody, it's everything. That's certainly not true about

5  personal effects, and we talked about Woodside in that

6  respect.

7    MS. STEVENS: Mm-hm.

8    THE COURT: But when we're talking about getting

9  the building over there, it includes the furnishings. So,

10 the answer to your question is the furnishings would go to

11 Wade.

12    MS. STEVENS: Okay. I don't agree with that. And

13 some of the furnishings I purchased with my own money.

14    THE COURT: Okay, so it's brand new, haven't heard

15 anything.

16    MS. STEVENS: Because we're looking at the issues

17 now.

18    THE COURT: It's okay, yeah. We're not looking at

19 the issues now. We've been looking at the issues for two

20 and a half days, so --

21    MR. FRY: Your Honor, I have a suggestion.

22    THE COURT: Yeah.

23    MR. FRY: With respect to, you know, any

24 furnishings that she personally purchased, number one, I

25 don't know if Mr. Wade would -- even has an objection to

26 providing her with those furnishings. And if he does and he

27 feels that those identified furnishings were in fact paid by

28 KMTP, you know, perhaps we can reserve to Judge Silver based

COPYING PROHIBITED PURSUANT TO GOV CODE 69954(d)

1  on evidentiary proof.

2      MR. TOWERY:  Let me say two things.  We are happy

3  to have a meet and confer process.  And if she identified

4  specifically what it is that she wants and it's within any

5  broad range of reasonableness, we'll be happy to give her

6  the furnishings at issue.

7      THE COURT:  If it's not, meaning she says she --

8  it belongs to her and you say it doesn't, are you willing to

9  let that go to Silver?

10      MR. TOWERY:  Yes, we are.

11      THE COURT:  Mr. Wade?

12      MR. WADE:  Yes.

13      THE COURT:  Is that agreeable?

14      MR. WADE:  Yes.

15      THE COURT:  Ms. --

16      MS. STEVENS:  Well, not only the furnishings that

17  belong to me individually but the furnishings that belong to

18  TV-32 Digital Ventures.

19      THE COURT:  We -- off the record.

20          (Whereupon, a discussion was had off the

21          record.)

22      THE COURT:  Okay.  I think there are two last

23  questions that Ms. Stevens has.  One we've touched on is the

24  furnishings in 1010 Corporation Way.  My understanding is

25  that the parties will agree to meet and confer.  She'll give

26  a list of what she thinks is hers.  If the parties agree,

27  that ends that.

28          To the extent there's disagreement, and that means

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 that she believes either it came out of her own personal

2 money or TV-32 Digital, and I know there's a dispute about

3 who owns TV-32 Digital, that Silver decides those issues.

4 Is that -- with respect to furnishings of 1010. Is that

5 agreeable, Mr. Wade?

6          MR. WADE:  Yes, it is.

7          THE COURT:  Ms. Stevens?

8     MS. STEVENS:  Yes.

9          THE COURT:  And then the very, very last thing is

10 there's, quote, equipment of TV-32.  I think we've said this

11 a number of times.

12          MS. STEVENS:  No, no, no, not TV-32.

13          THE COURT:  Oh, what?

14          MS. STEVENS:  Oh, I'm sorry; that equipment that

15 was purchased with monies, my monies.

16          THE COURT:  Do you know what equipment you're

17 talking about?

18          MS. STEVENS:  Um, I would have to get a list to

19 you.

20          THE COURT:  I mean, can you even give me an

21 example?

22          MS. STEVENS:  An example is like a small editing

23 system.

24          MR. TOWERY:  Didn't we talk about this at length

25 yesterday?

26          THE COURT:  Isn't that --

27          MS. STEVENS:  No, that's different.  It's not an

28 editing system; I'm sorry.  I don't really know.  It's kind

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  of like a computer and you do editing work on it.

2          THE COURT:  So, what you're saying is you think

3  there's equipment and maybe there's -- in 1010 that you

4  think can be traced to your personal money?

5          MS. STEVENS:  Yes, my personal account.

6          THE COURT:  And you want the ability to go to

7  Silver --

8          MS. STEVENS:  Yes.

9          THE COURT:  -- to say I can prove this came from

10 my personal money and I have a claim to it?

11         MS. STEVENS:  Yes, yes.  That, you know,

12 everything that came out of my personal account I have a

13 claim to, yes.

14         MR. TOWERY:  May we have one question for clarity?

15         THE COURT:  Yeah.

16         MR. TOWERY:  When the word "personal account" was

17 used making reference to a TV-32 Digital account or an

18 Arlene Stevens account distinct from --

19         MS. STEVENS:  Bank of America account.

20         THE COURT:  Bank of America.

21         MS. STEVENS:  Bank of America and credit cards,

22 Bank of America, yeah.

23         THE COURT:  So, a personal credit card and a

24 personal account, personalized to Arlene Stevens?

25         MR. WADE:  The joint Bank of America account or?

26         THE COURT:  The joint account or your --

27         MS. STEVENS:  The joint account and the Amnesty

28 Bank credit card.

COPYING PROHIBITED PURSUANT TO GOV. CODE 6954(d)