1   THE COURT: Okay. Then that -- off the record.
2       (Whereupon, a discussion was had off the
3   record.)
4   THE COURT: On the record. We've talked about how
5 we're not doing tracing. So, that if money was on -- if
6 there's a charge to Mr. Wade's personal credit card --
7   MS. STEVENS: That was paid for by my account.
8   THE COURT: Right, fair enough. We're not doing
9 that tracing. We're not undoing years and years of you
10 paying for him.
11  MS. STEVENS: No, it's not years and years and
12 it's not me paying for him. That's why I said it's
13 equipment that I'm looking at.
14  THE COURT: I --
15  MS. STEVENS: Not tracing of anything else.
16  THE COURT: Mr. Towery, what's your response?
17  MR. TOWERY: We agree with the Court's comments.
18  THE COURT: I mean, you're not even able to tell
19 me what it is. You know, you're talking about, well, one
20 thing might be an editing something. I mean --
21  MS. STEVENS: That's what it's used for. You
22 know, I don't have the model number. I don't have the name,
23 but...
24  THE COURT: Ms. Stevens, are you able to let that
25 one go?
26  MS. STEVENS: No.
27  THE COURT: The only thing I can think of is that
28 she make a list of all the equipment she has in mind, what

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)
Case: 13-50376   Doc# 52-4   Filed: 06/06/13   Entered: 06/07/13 13:20:45   Page 1 of 13

1  she's able to trace, the sources of funds. And that if she
2  believes she can prove that it's hers, it goes to Silver for
3  a determination. Is that agreeable?
4          MR. TOWERY: Is this the final issue?
5          THE COURT: It is.
6          MR. TOWERY: Then I would recommend it to you
7  being the final issue; is that an agreement, Mr. Wade?
8          MR. WADE: Yes.
9          THE COURT: Ms. --
10         MS. STEVENS: Yes.
11         THE COURT: -- Stevens, you understood everything
12 I said?
13         MS. STEVENS: Yes.
14         THE COURT: You are -- do you have any -- I assume
15 you have no other questions; is that correct?
16         MS. STEVENS: That's correct.
17         THE COURT: Do you agree to these terms and
18 conditions?
19         MS. STEVENS: Yes, I do.
20         THE COURT: Do you want me to make this a court
21 order?
22         MS. STEVENS: Yes, I do.
23         THE COURT: Okay, so we have an agreement. It's
24 binding as of now. The dates that we set up are binding as
25 of now, even if the settlement agreement follows. So, you
26 have to be prepared to move. You have to effectuate the
27 inspection of Woodside and 1010.
28         MR. HAMERSLOUGH: And 1010. Jim?

COPYING PROHIBITED PURSUANT TO GOV'T CODE 69954(d)

1  MR. TOWERY: Are you going to draft it?
2  MR. HAMERSLOUGH: Sure.
3  MR. TOWERY: Thank you.
4  MR. HAMERSLOUGH: Fair enough.
5  MR. TOWERY: I will owe you the next one.
6  THE COURT: And you'll get a transcript. IF there
7  are any disagreements, I ask that you first meet and confer.
8  If you can't, then take a draft. Then don't just do a whole
9  different copy. Just highlight the part that one side
10 doesn't like and the alternate language, along with the
11 parts of the transcript you think support you because I go
12 off the transcript to determine what version of the signed
13 agreement to go with.
14      I know this has been a long, long time. I wish I
15 could spend more time with you. Let me just say this. I
16 think the reason why this took so long, and I have to say it
17 for both of you, and it's not just Ms. Stevens. It's
18 Mr. Wade, too. This has been a very emotional thing for
19 both of you. Reaching this decision has been emotional for
20 both of you. You have had a long relationship. It has had
21 its ups and downs.
22      But when people have long relationships, it comes
23 with a lot of emotion. And the two of you, both of you have
24 a lot of emotion. I am hoping and I know that there's still
25 some litigation pending, and there are some serious issues.
26 And the Court takes seriously issues of domestic violence,
27 so I don't want to get too much into that other than to say
28 I hope that your ability to reach this agreement today will

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

release you from some of the pain and anxiety and will have you both living better off in terms of being able to salvage some of the assets that I know once existed in far better shape than they exist today.

You folks are the victims of a very, very bad economy, and it's distressing to see what was a huge pile of money dwindle this way. So, I am hoping and I firmly believe that this agreement will help you in a way a trial never could, leave both of you better off.

I not only want to thank both of you coming here and reaching a very difficult agreement for both of you but your attorneys. Your attorneys have been outstanding. They are some of the best attorneys in our county, and they certainly have proven so in terms of how they've been here, both in terms of their level of preparation and their professionalism. I as a judge couldn't have asked for anything better, so thank you all very, very much.

MR. HAMERSLOUGH: Your Honor, once again, thank you very, very much for the time and energy and creativity and insight. Thank you.

THE COURT: You're welcome.

MR. TOWERY: I don't know of anybody else who could have done this. We appreciate it.

THE COURT: You're welcome, and I really do hope that life for both of you will only be enhanced as a result of this. Thank you very much.

MR. TOWERY: Thank you.

(Whereupon, the proceedings were concluded.)

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  STATE OF CALIFORNIA    )
                          )
2  COUNTY OF SANTA CLARA  )

3

4  CERTIFY:    I, PATRICK K. CROWLEY, CSR #11271, HEREBY

5

6      That the foregoing is a full, true, and correct
7  transcript of the testimony given, of the evidence offered
8  and received, and statements of the Court, also all
9  objections of counsel and all matters to which the same
10 relate, in the proceedings had, entitled:  IN THE MATTER OF:
11 ARLENE STEVENS, SUNGILT CORPORATION and TV-32 Digital
12 Ventures, INC. versus COOPER-FOWLER MEDIA COMPANY, MINORITY
13 TELEVISION PROJECT, INC., GREG TALLEY, SHEILA ROBERTSON
14 TALLEY and BOOKER T. WADE, JR., Case number 1-07-CV-090284,
15 taken on January 22, 2009;
16     That I reported the same in stenotype to the best of my
17 ability, being the duly-appointed, qualified, and acting
18 official stenographic reporter of said court, and thereafter
19 transcribed the same into typewriting as herein appears.
20     I further certify that I have complied with CCP _ 237
21 (a)(2) in that all personal juror-identifying information
22 has been redacted, if applicable.
23
24     DATED: March 6, 2009
25
26
27                          _____
28              Patrick K. Crowley, CSR  #11271

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

# Exhibit 2
## Stevens Post Petition Proposed Written Settlement Agreement

David Hamerslough (SBN 95010)
Rossi, Hamerslough, Reischl & Chuck
1960 The Alameda, Suite 200
San Jose, CA 95126-1493
(408) 261-4252
(408) 261-4292 (Fax)

Stephen S. Fry, C.S.B. 177816
P.O. Box 1044
Nevada City, CA 95959
(530) 264-7224
(530) 264-7225 (Fax)

Attorneys for Plaintiff Arlene D. Stevens

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

| | |
|---|---|
| ARLENE D. STEVENS, TV-32 DIGITAL VENTURES, INC., and SUNGILT CORPORATION<br><br>Plaintiffs,<br><br>vs.<br><br>BOOKER T. WADE, JR., MINORITY TELEVISION PROJECT INC., COOPER-FOWLER MEDIA COMPANY, SHEILA ROBERTSON TALLEY, GREG TALLEY and DOES 1 to 10, inclusive,<br><br>Defendants.<br><hr>AND RELATED CROSS-ACTION | CASE NO. 1-07-CV-090284<br><br>COORDINATED ACTION<br><br>SETTLEMENT AGRREMENT |

## I. INTRODUCTION

This matter concerns two civil actions: one filed in Santa Clara County Superior Court (Case No. 1-07-CV-090284) and a second filed in San Mateo County Superior Court (Case

1
SETTLEMENT AGREEMENT

No. CIV 465663). By order of the Santa Clara County Superior Court, the San Mateo County action was coordinated with the Santa Clara County Superior Court action (hereinafter "Actions".

The parties to the Actions entered into a settlement agreement pursuant to a judicially supervised pre-trial settlement conference conducted before the Honorable Jamie A. Jacobs-May, Presiding Judge of the Santa Clara County Superior Court and the terms of settlement were read onto the record. The Reporter's Transcript of said settlement comprising a total of 117 pages encompasses two days, January 21, 2009 and January 22, 2009 (hereinafter "RT"). The intent of the settlement was to resolve all issues articulated in the various Complaints and Cross-Complaints on file in the Actions with the exception of those relating to or arising out of the Domestic Violence and Malicious Prosecution claims. (RT: 3-4). Those matters were expressly bifurcated out of the settlement. With respect to the claims included within the settlement, the parties agreed that the Santa Clara County Superior Court, would retain jurisdiction over enforcement of the terms of settlement pursuant to Code of Civil Procedure §664.6. (RT: 5) Further, the parties agreed that with respect to decisions about the liquidation of assets as contemplated by the settlement, the Honorable Richard M. Silver, Retired would have jurisdictional authority through the services of JAMS. (RT: 30) In the event that Judge Silver is unable to serve in that capacity then a new neutral person shall be agreed upon. In the event that a new neutral is not agreed upon than each party shall submit two names to the Court and the Court shall choose the new neutral. (RT: 80) The following are the specific terms of agreement contained within the settlement. A true and correct copy of the Reporter's Transcript is attached hereto as Exhibit A.

## II. SPECIFIC TERMS

### WOODSIDE PROPERTY

The parties agreed that the real property located at 3575 Tripp Road in Woodside, California would become the sole and exclusive property of Ms. Stevens. (RT: 9). The parties acknowledge that Ms. Stevens' share of proceeds from the sale of either the Cellular Licenses or the Topeka License as set forth hereafter shall not be released to her until such time that the

Woodside mortgage is satisfied relieving Mr. Wade of his obligations, if any, under said note. (RT: 19). Either Judge Silver or the Court shall have the authority to make decisions relating to the release of said funds. (RT: 22).

## PALO ALTO CONDO

The parties agreed that the real property located at 605 Forest Avenue in Palo Alto, California would be shared between the parties: 60% to Ms. Stevens and 40% to Mr. Wade. (RT: 9). The property shall be listed for sale and sold. (RT: 16). Any net proceeds to be split between the parties in proportion to their respective percentage of interest. Any deficiency to be split between the parties in proportion to their respective percentage of interest. (RT: 13) Judge Silver shall have the authority over the sale of the property. (RT: 15, 16).

## 1010 CORPORATION WAY

The parties agreed that the real property located at 1010 Corporation Way in Palo Alto, California would become the sole and exclusive property of Mr. Wade. (RT: 9). The property shall be listed for sale and sold immediately. (RT: 15, 16). Judge Silver shall have the authority over the sale of the property. (RT: 15, 16). In the event that Mr. Wade is able to obtain Ms. Stevens' release from the guarantees associated with the loans encumbering the property then he can forego the effort to sell the property. (RT: 16). Mr. Wade is responsible for any deficiency relating to the property. (RT: 16) Mr. Wade's entitlement to his share of proceeds from the sale of either the Cellular Licenses or the Topeka License as set forth hereafter shall act as additional security for Mr. Wade's obligation to obtain the releases from the guarantees. (RT: 19). Either Judge Silver or the Court shall have the authority to make decisions relating to the release of said funds. (RT: 22).

## BROADCASTING EQUIPMENT/NOTE

Mr. Wade shall pay Ms. Stevens $300,000 for the broadcasting equipment located at 1010 Corporation Way. The payment shall be in the form of a note (hereinafter "Note"). Mr. Wade's entitlement to his share of proceeds from the sale of either the Cellular Licenses or the Topeka License as set forth hereafter shall act as additional security for Mr. Wade's

obligation to satisfy said note. (RT: 19). Either Judge Silver or the Court shall have the authority to make decisions relating to the release of said funds. (RT: 22).

The Note shall be in the principal amount of $300,000 at an interest rate of seven percent per annum fully amortized over seven years for purposes of the monthly payment amount but due in full within three years. In the event that any payment is not made, a flat fee penalty of $100 shall be assessed for each missed payment. Failure to pay constitutes a default. In the event that the Note is in default and either the Cellular Licenses or the Topeka License is sold then Mr. Wade's share of the proceeds shall be paid to Ms. Stevens and credited to the debt on the Note. (RT: 30).

## WEDDING TELEVISION "WTV"

The parties agree that WTV and the intellectual property rights related thereto belong to Ms. Stevens. Mr. Wade shall provide Ms. Stevens with all the hard drives associated with WTV. Copies of the hard drives may only be retained by KMTP by order of Judge Silver. Mr. Wade shall sign a declaration under penalty of perjury that there exist no other form of this intellectual property whether it be CD, videotape, or other. (RT: 38, 43). Mr. Wade shall provide Ms. Stevens with any periodicals, files that Ms. Stevens created, magazines that she saved, clippings that she collected, all relating to WTV. Mr. Wade shall provide Ms. Stevens with a declaration under penalty of perjury that all such material have been delivered to her. (RT: 50). KMTP shall cease to air any WTV programming. In the event that KMTP fails to ratify this agreement then Judge Silver will retain jurisdiction over any violation of Ms. Stevens' intellectual property rights and may assess damages and/or impose injunctive relief as well as all other available remedies in the event of such an infringement. (RT: 49). With respect to editing equipment, hardware, and digital camera(s) used in the production of WTV programming, the parties shall first meet and confer concerning ownership and then submit to Judge Silver for determination. (RT: 36).

## ASANO DEPOSITION TRANSCRIPT

The parties agree that the Deposition Transcript of Bonnie Asano shall be sealed by the parties, meaning that Ms. Stevens or her counsel shall not give that transcript to anyone

4
SETTLEMENT AGREEMENT

In the event of a dispute, first meet and confer. If unable to resolve then submit to Judge Silver.

### JOINT ACCOUNTS/CREDIT CARDS

The joint Bank of America account is to be closed. (RT: 79, 100) With respect to any joint credit cards such as the Discover Card, the account is also to be closed, use discontinued, cards destroyed and each of the parties is responsible for their own charges. (RT: 106).

### TV-32 DIGITAL VENTURES

No determination as to ownership. This determination is within Judge Silver's jurisdiction. (RT: 104)

### SUNGILT CORPORATION

Ms. Stevens retains 100% ownership of Sungilt Corporation. (RT: 103)

### INDEMNIFICATION

The parties agree to mutual indemnification. With respect to the terms of this agreement and the subject matter thereof, if the conduct of either party causes a financial loss, liability, or cost of defense to the other, the injured party has rights of indemnification against the injuring party. (RT: 71, 80).

### EFFECTIVE DATE

The parties agree that the effective date of the agreement is January 22, 2009. (RT: 106).

IT IS SO AGREED

_____
Arlene Stevens

_____
Booker T. Wade

unless she is under a subpoena from a court, governmental entity, or agency. (RT: 56). In the event that either Ms. Stevens or her counsel receives such a subpoena, she or they shall provide Mr. Wade with notice of such receipt. The sealing of the transcript shall in no way infringe upon Ms. Stevens' First Amendment rights and she is free to pursue any administrative, regulatory or any other claims or complaints that she feels may be appropriate and she is free to talk about what she understood or what she understood was testified to by Ms. Asano. (RT: 57).

### TOPEKA LICENSE

The parties agree that the Topeka License will be sold and that Ms. Stevens will be entitled to 70 percent of the net proceeds and that Mr. Wade will be entitled to 30 percent, subject to the terms and condition of this agreement. Mr. Wade agrees and represents that all interested persons whether it be Robertson, Talley, Cooper-Fowler Media Company, or otherwise agree to said terms. (RT: 60). With respect to post-settlement expenditures incurred by either the parties or any of the related persons, such expenditures must first be approved by the other party or decided by Judge Silver. (RT: 62-63)

### CELLULAR LICENSES

Three Cellular FCC Radio Station Authorizations were issued to Sungilt Corporation as licensee on May 13, 2005. The licenses are for Longview, Washington; Bryan-College Station, Texas; and Portland, Oregon. The parties agree that the three licenses shall be sold and that the net proceeds from said sale shall be split: 70% to Ms. Stevens and 30% to Mr. Wade, subject to the terms and condition of this agreement.

### VEHICLES

Each party shall retain the vehicle currently in his or her possession. Title shall be transferred accordingly.

### PERSONAL BELONGINGS (Woodside)

In the event of a dispute, first meet and confer. If unable to resolve then submit to Judge Silver.

### FURNISHINGS AND EQUIPMENT (1010 Corporation Way)

# CERTIFICATE OF SERVICE

. I am over the age of 18 and not a party to the within action. My business address is 830 Stewart Drive, Suite 239, Sunnyvale, CA 94085

On June 6, 2013, I served the documents described as:

**MOTION TO REJECT EXECUTORY CONTRACT**

on the following parties in this action by placing true copies thereof enclosed in sealed envelopes addressed with first class postage fully prepaid, in the United States mail at San Mateo, California, and addressed as follows:

Mlnarik Law Group
2930 Bower Avenue
Santa Clara, CA 95051

Stephanie Oats
Hoge Fenton Jones & Appel Inc.
Sixty South Market Street Suite 1400
San Jose, CA 95113

Heinz Binder
Wendy Smith
Binder & Malter LLP
2775 Park Avenue
Santa Clara, CA 95050

Law Offices of Stephen Fry
PO Box 1044
Nevada City, CA 95959

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on June 6, 2013, at San Mateo, California.

_____
Fan Wen