**EXHIBIT B**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

BEFORE THE HONORABLE JAMIE JACOBS-MAY, JUDGE

DEPARTMENT NO. 4

---oOo---

| | |
|---|---|
| ARLENE STEVENS, SUNGILT CORPORATION and TV-32 DIGITAL VENTURES, INC., )<br><br>Plaintiffs, )<br><br>vs. )<br><br>COOPER-FOWLER MEDIA COMPANY, MINORITY TELEVISION PROJECT, INC., GREG TALLEY, SHEILA ROBERTSON TALLEY and BOOKER T. WADE, JR., )<br><br>Defendants. )<br>_____ )<br>AND RELATED CROSS-ACTION. )<br>_____ ) | Case No. 1-07-CV-090284 |

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Wednesday, January 21, 2009

VOLUME I of II - Pages 1 - 67

---oOo---

A-P-P-E-A-R-A-N-C-E-S:

FOR THE PLAINTIFFS:        DAVID M. HAMERSLOUGH and
                           STEPHEN S. FRY,
                           Attorneys at Law

FOR THE DEFENDANTS:        JAMES E. TOWERY and
                           **NATASHA M. PARRETT,**
                           Attorneys at Law

OFFICIAL COURT REPORTER:   PATRICK CROWLEY, CSR 11271
                           RPR, CRR 846186

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

```
 1  San Jose, California                Afternoon Session

 2                       PROCEEDINGS

 3           THE COURT:  Okay.  We're on the record in the

 4  matter of Stevens versus Wade, 1-07-CV-090284.  There are

 5  related matters.  There was a related case in San Mateo, and

 6  this case is resolving that because that has to do with a

 7  partition of Woodside, right?

 8           MR. TOWERY:  They've been coordinated.

 9           THE COURT:  Here?

10           MR. TOWERY:  Three actions have been coordinated

11  in this number.

12           THE COURT:  Okay, so the --

13           MR. TOWERY:  And I don't -- I don't have the other

14  case numbers.

15           THE COURT:  Well, there are three actions.  One's

16  this Woodside action and another is a domestic violence

17  action.  And the domestic violence action is both -- is it

18  the restraining order or is it the personal injury for the

19  domestic violence?

20           MR. HAMERSLOUGH:  It's -- all of that is being

21  carved out.

22           THE COURT:  Okay, so the first thing we're going

23  to do is get appearances for Ms. Stevens, first of all.

24           MR. HAMERSLOUGH:  Dave Hamerslough.

25           MR. FRY:  Stephen Fry.

26           THE COURT:  And, Ms. Stevens, I need your name for

27  the record.

28           MS. STEVENS:  Arlene Stevens.
```

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

```
1           THE COURT:  And for Mr. Wade.

2           MR. TOWERY:  James Towery.

3           MS. PARRETT:  Natasha Parrett.

4           THE COURT:  And?

5           MR. WADE:  Booker Wade.

6           THE COURT:  And we've been at this for about two

7  and a half days.  I'm going to start announcing the terms of

8  the agreement for the record.  If I say anything wrong,

9  interrupt me right away -- don't wait -- so we get it right.

10 If I leave anything out, at the end of this tell me what it

11 is so we can get it on the record.

12          At the end of this record, I'm going to ask the

13 two parties three questions:  Did you understand everything

14 I said; do you have any questions; do you agree to these

15 terms and conditions -- four questions -- and do you want me

16 to make this a court order?  And when I hear yes to all

17 that, it's binding.

18          If at the end of all this there's a dispute about

19 what we agreed to, I get this transcript and this transcript

20 controls.  So, if you end up drafting a written agreement or

21 not, you end up fighting about what did we agree to, I go

22 back to this transcript and this transcript controls.

23          I guess the first thing I want to say is let's

24 just talk about -- there are a number of cases; they're

25 coordinated.  This case is not resolving the domestic

26 violence cases in any respect.  So, my understanding is

27 there may be issues about restraining orders; there may be

28 issues about personal injury involving domestic violence.  I
```

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  think there are claims and cross-claims, meaning each party

2  has asserted claims against the other.  This case is not

3  resolving anything that has to do with domestic violence or

4  personal injury resulting from domestic violence.

5       MR. TOWERY:  Your Honor, the way that I would

6  suggest we phrase that is -- we've been discussing among

7  counsel -- is that the causes of action in the respective

8  second amended complaint, first amended cross-complaint

9  related to intentional torts and/or domestic violence are

10 severed.  And so those causes of action are in this

11 complaint right now, but we're severing them in this

12 complaint -- this settlement leaves those unresolved.

13      THE COURT:  Intentional tort is too broad.  So,

14 there may be causes of action for fraud or deceit or

15 whatever, and we are resolving those.  So, let's just stick

16 to the gravamen, which is domestic violence, which leads to

17 a restraining order.  And what I understand is domestic

18 violence is also known as battery and assault, meaning

19 physical touching that leads to personal injury.  So,

20 anything arising out of notions of this physical touching

21 are carved out.

22      MR. HAMERSLOUGH:  Right.  And, for example, when

23 we were talking today up in Judge Cabrinha's department, we

24 were talking about, you know, the police officers, the

25 police reports, you know, doctors, you know, the medical

26 issues, those sorts of things, Judge.

27      THE COURT:  So, those are not being settled.  So,

28 now we've talked about what's not being settled.  The second

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 thing I want to say is the Court -- I mean, strike that.

2 The parties have asked the Court --

3         MR. TOWERY:  That would include -- what's not

4 being resolved is the malicious prosecution.  That was

5 alleged out of all of those incidents in the August of '07,

6 so that is severed and set aside as well.

7         THE COURT:  Okay.  So, if you're talking about

8 malicious prosecution arising from domestic violence claims,

9 that's fine.

10        MR. TOWERY:  That's what's pled, and --

11        THE COURT:  Then that is also not being resolved.

12 So, the things arising out of the domestic violence claims,

13 whether they're claims for a restraining order, claims for

14 personal injury or claims that were brought improperly and

15 are subject to a malicious prosecution case are not being

16 resolved.

17        The parties have asked the Court to retain

18 jurisdiction under CCP Section 664.6, which is the one that

19 says if you have disputes about what this agreement is and

20 you need a Court to help enforce this quickly and by motion

21 only and not by filing a whole new lawsuit, that code

22 section allows me to do that, and that's part of this

23 agreement.  I will do that.

24        The next thing is that -- I'm going to talk about

25 real property next.  There are three pieces of real property

26 that are in dispute with the -- between the parties.  One we

27 call Woodside because it's located in Woodside.  Does

28 somebody have the address?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1   And then we'll pick a start date in a second for

2   when all this starts.  I mean, should we start it February

3   1st?  Should we start it today?  You tell me when you want

4   to start it.

5   MR. HAMERSLOUGH:  I think we ought to start it as

6   of where we are right now.

7   THE COURT:  Today?

8   MS. STEVENS:  Can we talk about that?

9   THE COURT:  So -- all right, so we'll talk for a

10  second.  We'll park that for a second.  That's Palo Alto

11  we're splitting 60/40 and 1010.

12  My understanding is that it's going to be put up

13  for sale immediately; that beginning today or whatever start

14  date we figure out, Mr. Wade would be fully responsible for

15  the carrying costs, utilities, everything that goes along

16  with ownership.

17  That unlike the Woodside and Palo Alto pieces of

18  property, Ms. Stevens has guaranteed 1010, and she's on the

19  hook for $3.5 plus million.  And so the attorneys are going

20  to meet and confer.  They're going to try to agree on the

21  details involved in selling, who -- you know, who they

22  should engage to be the listing broker, what should be the

23  purchase price, those kinds of things.

24  If you can't agree, the parties agree to go to

25  Judge Silver, and he'll act as an arbitrator.  He may act

26  trying to get the parties to agree; but if you can't agree,

27  he'll just make the call, and you folks will live with the

28  call.  And that's true about the two pieces of property that

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  have to be sold, which is 1010 and Palo Alto.  If you have a

2  dispute, you're going to go to Silver.

3          In terms of -- and both of you are going to be

4  agreeing on the methodology of selling Palo Alto because you

5  own it 60/40 and 1010.  Because even though Mr. Wade owns

6  it, Ms. Stevens is on the hook personally if she can't get

7  out of it.

8          If before the time for sale happens, before the

9  time you enter into a contract with someone to buy it, you

10 are able to get Ms. Wade -- Ms. Stevens off the guarantees,

11 then you're free to do whatever you want to with the

12 property.  So, that if some -- you were able to convince the

13 lender to release her from the guarantee or able to refi it,

14 your obligations are complete.  That's the key for

15 Ms. Stevens is being released of the liability.

16         If when you sell it, you sell it for more than the

17 encumbrance, you get to keep the money.  If when you sell

18 it, you sell it for less the encumbrances and there's a

19 deficiency because Ms. Wade is on the hook for that --

20         MR. HAMERSLOUGH:  Ms. Stevens.

21         THE COURT:  Ms. Stevens is on the hook for it,

22 Mr. Wade is obligated to pay that amount of money.  In other

23 words, it's not Ms. Stevens' burden.  It's Mr. Wade's burden

24 to pay any deficiency in 1010, just like it's his -- he gets

25 the benefit of ownership, but he also gets the detriment of

26 ownership.  So, that's the property.

27         In terms of --

28         MR. HAMERSLOUGH:  And may we -- I'm sorry, Your

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       MR. TOWERY: Yeah. We accept it, too. I also

2  want to be heard on the effective date of this

3  responsibility of the real property. I don't know when --

4       THE COURT: We're going to -- we haven't talked

5  about it yet. We'll get there.

6       MR. TOWERY: Okay.

7       THE COURT: Now, the next thing is -- the next

8  thing I want to talk about is there's equipment, and the

9  equipment is going to be owned by -- off the record.

10      (Whereupon, a discussion was had off the

11      record.)

12       THE COURT: All right, on the record. There's

13  equipment. Mr. Wade is going to take ownership of the

14  equipment. Mr. Wade, in exchange for the ownership of the

15  equipment, is going to owe Ms. Stevens $300,000. Whether

16  it's this note for $300,000 or the obligation under 1010 to

17  get her released from the $3.5 million guarantee, there is

18  other property that is going to secure those obligations.

19       And this other property that's going to secure

20  those obligations is the licenses. So, the parties agree

21  that the three sell licenses, plus the Topeka license, are

22  going to be sold. And the parties will again meet and

23  confer regarding the way to sell that property.

24       If they can't agree, that too will go to Judge

25  Silver for decision. The sale of that property -- and we'll

26  call it the licenses, three sell and the Topeka license,

27  will be shared 70/30, 70 percent to Ms. Stevens, 30 percent

28  to Mr. Wade.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          Nobody -- once that stuff is sold, nobody can

2     collect money until whatever issue they have with respect to

3     the other party is resolved.  For example -- and I'll

4     explain it.  Ms. Stevens has Woodside.  You, Mr. Wade,

5     you've signed a loan on Woodside.  So, Ms. Stevens can't --

6     her 70 percent is going to sit in that account until that

7     debt is over and those issues are resolved.

8          In terms of you, until she is removed from the

9     $3.5 million problem and until your $300,000 note is paid

10    off, your 30 percent interest in this money is going to sit

11    in an account as security for those obligations.  Once the

12    $3.5 million guarantees are removed and once your 300,000

13    note is paid, you can get whatever the remainder is.  But

14    that money will sit there as security to pay for those

15    debts.

16         MR. HAMERSLOUGH:  And can we agree, Your Honor,

17    that we will cooperate and that money will be placed in some

18    interest-bearing account subject to Judge Silver's

19    authorization?

20         THE COURT:  Yes.

21         MR. TOWERY:  This is a material change from

22    anything we've heard before.

23         THE COURT:  No, I -- well, let me --

24         MR. TOWERY:  Because we've heard this applied to

25    the equipment.  We understood and agreed that this principle

26    would apply to the equipment, so that the obligation to

27    repay Ms. Stevens for the equipment was going to be secured

28    by the licenses; therefore, it followed --

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1    THE COURT: If that's true, then it's my apology

2 because I wasn't able to make it clear enough. It was

3 always the -- it's my fault. It was always what was

4 intended. So, do you need a chance to talk?

5    MR. TOWERY: Well, I mean, let me just surface the

6 issue. What I would like to do is to build a mechanism into

7 this so that we can come back to you if necessary or Judge

8 Silver -- my preference would be you -- to apply for a

9 modification of this because I can see a circumstance where

10 the licenses are sold. There's money there.

11    If the money could be released to Mr. Wade, then

12 Mr. Wade could do a work-out with the bank and get

13 Ms. Stevens off the guarantee for the bank loan. But if

14 Ms. Stevens says you can't have access to the money, then

15 that would frustrate his ability to do a work-out. And, I

16 mean, it would really -- it would be detrimental in the long

17 run to both parties.

18    THE COURT: So, why don't we build this in, and

19 then we can figure out if it's me or Silver. But I agree

20 with what Mr. Towery said, so let me just clarify it and

21 make it crystal clear. This is important to listen to. I

22 think it's very, very important for those assets to secure

23 obligations to Ms. Stevens, both the $300,000 loan and the

24 $3.5 million, no question.

25    What Mr. Towery is suggesting, which makes

26 perfectly good sense to me, is you standing before me and

27 say if you can only give me the $200,000, the bank will

28 release her from the $3.5 million. And I did pay off the

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  $300,000 note, so, come on, be rational, and I get that.

2         So, if I were convinced or Judge Silver were

3  convinced that a release of money would in fact satisfy your

4  obligations, that's what would happen.  But if the release

5  of the money wouldn't, if it's, well, come on, let me just

6  carry it for two more months and then maybe they will,

7  there's no maybes here.  There's no release of money for

8  maybes.  It's got to actually do the trick.

9         MR. HAMERSLOUGH:  Your Honor, I accept that an

10  application can be made with, you know, supporting evidence

11  in front of either you or Judge Silver, and we would be

12  given the time to, you know, look into it and evaluate it

13  and then --

14         THE COURT:  But you're agreeing now, both of you,

15  to live with whatever decision either me or Judge Silver

16  makes.  That's the point of this, that you're agreeing now.

17  And I'm trying my hardest to anticipate what would come down

18  the pipe and how would I decide it so you're not just you

19  buying into this blind.

20         MR. HAMERSLOUGH:  Right.  As long as, from our

21  perspective, the sale of those other media properties is

22  security or collateral for the payment of the $300,000 with

23  any accrued, you know, interest and principal.  If they want

24  to pay us off out of proceeds, you know, then that's fine

25  with us.

26         We also want that to be security for their

27  obligation to carry the property and security for their

28  retiring us from Corporation Way's underlying loans.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  understanding of this agreement is Silver has broad

2  authority to make decisions about how to do things to

3  maximize money.  If he thinks somebody has a good idea and

4  the other person opposes it, he has the right to say we're

5  doing it.  He has broad authority, and you have to live with

6  it.

7          MR. HAMERSLOUGH:  That's fine.

8          MR. TOWERY:  That's fine.

9          MR. HAMERSLOUGH:  We need somebody to make

10  decisions where we may have disputes about how to proceed

11  and go forward.

12          THE COURT:  Exactly.

13          MR. HAMERSLOUGH:  And he's got the power to make a

14  decision and allocate assets, you know, or how we're going

15  to move forward with those assets.

16          THE COURT:  Exactly.  It's not so much the

17  allocation.  I've done the allocation.  It's more the

18  decision making about how to proceed to maximize money, who

19  to sell to, how much, how to market, what price.  Decision

20  making about the liquidation of assets is what we're talking

21  about.

22          So, back to this one.  I think we now agree it's

23  seven percent, seven-year amortization but paid off over

24  three years with a balloon payment.  If I -- if a payment is

25  missed, it's a hundred dollar flat fee.  If payments are not

26  made, the interest will accrue.  The late fee will accrue.

27  And as soon as an asset is sold, the entire amount is due

28  and owing and will be paid out of the asset owed as an

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  cannot, it goes to Judge Silver for decision.

2          MR. TOWERY:  That's fine.

3          THE COURT:  Okay.

4          MR. HAMERSLOUGH:  Okay.

5          THE COURT:  The next thing is -- so, you

6  understood what I just said?

7          MS. STEVENS:  Yes.

8          MR. HAMERSLOUGH:  And why don't we just finish up

9  the rest of Wedding TV in terms of --

10          THE COURT:  Okay, and the last piece of Wedding TV

11  is that there's software and tapes, which basically means

12  the -- you produce some kind of show, and that's the tapes,

13  right?

14          MS. STEVENS:  Well, let me say software and

15  hardware because there's certain hardware that goes along

16  with the equipment that the tapes have to be played on, and

17  -- and that's used, so...

18          THE COURT:  The only thing you told me about were

19  the tapes.  I have my notes.

20          MS. STEVENS:  Right, yes, right.

21          THE COURT:  You said, "software and tapes."

22          MS. STEVENS:  Right.  And I failed to mention it

23  at that time, but there is the hardware that I just talked

24  about, and then --

25          THE COURT:  So, hardware will go along with the

26  editing equipment and the camera.  You need to come up with

27  the receipt.  You'll meet and confer.  And if you can't

28  reach agreement, you'll go to Silver on it.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  And are you willing to give the hard

2    drives over with the digital information?

3          MR. WADE:  Yes.

4          THE COURT:  Done.

5          MS. STEVENS:  There are tapes also because when

6    they're taking -- when the product was captured -- was

7    captured on tape, there are lots of very small tiny tapes

8    about this size (indicating.)

9          THE COURT:  What kind of camera captured tape?

10   Are we talking --

11         MS. STEVENS:  I don't know the name of or the

12   model of the tapes, but there were tapes and it's digital,

13   too.

14         THE COURT:  Why don't we say this --

15         MS. STEVENS:  There are DVDs as well.

16         THE COURT:  Why don't we say -- this is my

17   suggestion.  He'll give you the hard drives.  He'll give you

18   the digital information that's contained on it.  He will

19   give you everything he has related to the taping of this

20   wedding show.  If this is all he has, the hard drive and the

21   -- with the digital information, he will sign a declaration

22   under penalty of perjury saying he has no other form of --

23   there are no other tapes; there is no other physical media

24   containing this wedding filming.  And he'll sign under

25   declaration of penalty of perjury he doesn't have anything

26   else.  So, he -- either he gives it to you or he gives the

27   declaration.

28         MS. STEVENS:  Let me say this.  I failed to

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  subsequent.  We'll agree to it subject to later ratification

2  by KMTP.  And if KMTP does not ratify the decision Mr. Wade

3  is making here today, then we take it to Judge Silver to

4  deal with the consequences.

5          It makes sense -- I think it's doable, but just in

6  terms of legality you can't ask a party who's not here to

7  make a decision.  And I know what your view is of this,

8  David, but, you know --

9          THE COURT:  All right, so --

10          MR. TOWERY:  We have a different view, just so --

11          THE COURT:  So, this is my suggestion.  My

12  suggestion is that this agreement is that Ms. Stevens is --

13  on her side of the column is the intellectual property known

14  as the Wedding Channel; that she gets the hard drives with

15  all of the digital information contained on it; that

16  Mr. Wade has to sign a declaration under penalty of perjury

17  that there exists no other form of this intellectual

18  property.  Whether it's CD, videotape it doesn't matter.

19  That there isn't anything else.  If there is anything else,

20  he needs to give it to Ms. Stevens.

21          So, that he has to sign a true declaration that

22  there isn't anything else except what he's given to her;

23  that the -- that he is -- that if the FCC does require the

24  station to retain a copy of it, that will be up to Judge

25  Silver to determine if the parties can't determine that

26  through a meet and confer process; that if indeed that is an

27  FCC requirement as determined by Judge Silver, they will be

28  allowed to keep it.  If it isn't a requirement, then they

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  won't.

2          That if they are allowed to keep it, they are not

3  allowed to use it.  That if that requires subsequent board

4  ratification, so be it.  And if the board fails to ratify

5  it, Judge Silver shall determine -- shall determine the

6  damages to Ms. Stevens and shall award her monetary

7  compensation for those damages because the agreement is

8  she's supposed to have that information for her sole use and

9  possession.  That's the agreement as I understood it.

10         MR. HAMERSLOUGH:  Good.  That's agreed.  May I --

11         THE COURT:  Wait.  Do you guys need to go outside

12  and talk or are you okay?

13         MR. WADE:  We'll be back.

14         MR. TOWERY:  Just one moment, please.

15         (Pause in proceedings.)

16         THE COURT:  Okay.  Back to the Wedding.

17         MR. TOWERY:  I think we're okay.  If I understood

18  you, the issue that would be referred to Judge Silver for an

19  assessment of what damages were suffered by Ms. Stevens is

20  if KMTP aired the Wedding Television tapes -- that's copies

21  -- after this agreement is signed?

22         THE COURT:  Or used -- or otherwise used the

23  property.  In other words, it's up to Silver to determine

24  it, but the idea is she's supposed to have 100 percent

25  ownership of the intellectual property.

26         MR. TOWERY:  But it's use of it that would lead to

27  damages?

28         THE COURT:  Yes.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1    never had it, so that's the rationale.  If that's not good
2    enough, then we don't have a deal.
3          MR. FRY:  Well, just one point of clarification.
4    I mean, you can infringe upon somebody's intellectual
5    property rights not necessarily only by using that product
6    but by, you know, using the concept or the idea if it's
7    substantially similar.
8          THE COURT:  Exactly, and that --
9          MR. FRY:  Yeah, which --
10         THE COURT:  And that's Silver's call.
11         MR. FRY:  And that should be protected from that
12   as well.
13         THE COURT:  That's Silver's call.
14         MR. HAMERSLOUGH:  Including injunctive relief --
15         THE COURT:  Including -- whatever.
16         MR. HAMERSLOUGH:  -- kind of remedy.
17         THE COURT:  Any kind of remedy, but he's going to
18   determine if it infringes, yes.
19         MS. STEVENS:  So, you're saying he can't be any
20   worse off, but he's better off because of what he's had
21   already.
22         THE COURT:  If he uses it, if it's derivative, if
23   he's not allowed to do it, Silver can stop it.  But if he
24   could do something, having never seen your show because it's
25   not similar because it doesn't infringe, then he can do it.
26   Okay, so are we in agreement?
27         MS. STEVENS:  Yes.
28         THE COURT:  Okay.  The next one is --

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          MR. FRY:  Your Honor, just to back up, Dave had

2     also mentioned there are some files and boxes apparently

3     **with,** you know, cutting through newspapers and magazines and

4     things of that sort which went into the production of these

5     tapes, and she would like to have those materials as well.

6          THE COURT:  Do you --

7          MS. STEVENS:  Well, they're all of my business

8     files because he took everything out of my office.  And

9     there are magazines that date back from, oh, I don't know,

10     the '60s, and those are important.

11          THE COURT:  Do you know --

12          MR. WADE:  I will make a search for those and

13     deliver them.

14          MR. HAMERSLOUGH:  Well, I --

15          THE COURT:  Stop.  So, the settlement is that any

16     periodicals, files that Ms. Stevens created, magazines that

17     she saved clippings that she collected have to be returned

18     to her.  And if you can't find anything, you have to submit

19     a declaration under penalty of perjury saying you don't have

20     them.

21          MR. WADE:  No problem.

22          MR. HAMERSLOUGH:  I think I'd also like to add to

23     the extent that we need to get into Woodside, we'd like to

24     get into Palo Alto and just physically look.

25          MR. FRY:  You mean into 1010 Corporation?

26          MR. HAMERSLOUGH:  1010 Corporation.

27          THE COURT:  All right, so let's go to that one

28     next, and this was always the case at least as to Woodside.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  No.  Mr. Wade, when can you gather all

2    your stuff?  Will it take a week?

3          MR. WADE:  No.  I mean --

4          MR. TOWERY:  Your Honor, can we make it part of

5    the discussion of the effective date?  Because it ties right

6    into that.

7          THE COURT:  All right, all right.  But, anyway,

8    everyone agrees Ms. Stevens gets her stuff?

9          MS. STEVENS:  Well, then question:  What do we do

10   if items are missing?

11         THE COURT:  You go to Judge Silver.  Judge Silver

12   has full authority to award compensation if he believes it.

13         Okay.  Then the next one is that there is a

14   deposition of --

15         MR. TOWERY:  Bonnie Asano.

16         THE COURT:  Say it again.

17         MR. TOWERY:  Bonnie Asano, A-s-a-n-o.

18         THE COURT:  That deposition transcript shall be

19   sealed by the parties, meaning Ms. Stevens is not allowed to

20   give that transcript to anyone except if she is under a

21   subpoena from a court or from a governmental entity or

22   agency.  And in response to a subpoena, she shall give it

23   up.  Otherwise, she's not allowed to give that deposition

24   transcript to anyone.

25         MR. HAMERSLOUGH:  Now, if I am under a subpoena,

26   am I also authorized to provide a copy of a transcript?

27         THE COURT:  Right, but a subpoena not from an

28   individual.  It has to be from -- in other words, an

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1   attorney can issue a subpoena.  That doesn't count.  It has

2   to be from a Court or from a governmental entity, an agency.

3           MR. HAMERSLOUGH:  Right, but she is free to pursue

4   any administrative, regulatory or any other claims or

5   complaints that she feels are appropriate.

6           THE COURT:  Exactly, and she's free to talk about

7   what she --

8           MR. HAMERSLOUGH:  What she understood or what she

9   understood was testified to or not testified to.

10          THE COURT:  Exactly right.  So, she has First

11  Amendment rights, but she can't give up the transcript

12  without a subpoena as described.

13          MR. TOWERY:  Your Honor?

14          THE COURT:  Yes.

15          MR. TOWERY:  We agree with all of that.  There

16  should be one further clause though; that if anybody

17  receives a subpoena for that deposition, they give notice to

18  us so that we have the opportunity to make any appropriate

19  motion that may exist.

20          THE COURT:  That's fair.

21          MR. TOWERY:  To quash the subpoena.

22          THE COURT:  That's fair.

23          MS. STEVENS:  See, and that's the purpose.

24          THE COURT:  No.  Ms. Stevens, we're going by law,

25  and they have a right to have notice of it.  And they have a

26  right to quash it; so, if they can, fine.  If not, not, but

27  that's a fair request.

28          MS. STEVENS:  And for the other depositions?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       THE COURT: And also with respect to the Topeka

2 license, that you have control over that; that you --

3 whether it's you, yourselves or whether it's as the agent

4 for the niece and nephew, if there's a claim that they own

5 the Topeka license, that the Topeka license is being sold

6 and that all those people agree that 70 percent of the

7 proceeds will go to Stevens and 30 percent will go to

8 Wade --

9       MR. TOWERY: That is correct.

10      MR. WADE: There is one point that this brings up

11 is the people with the Topeka license do have some cost

12 involved. It gets --

13      MR. HAMERSLOUGH: No.

14      MR. WADE: No.

15      THE COURT: It comes out of your --

16      MR. WADE: No, no, no. I mean...

17      THE COURT: You guys need to talk.

18      MR. WADE: Listen.

19      THE COURT: You need to talk to your client

20 outside.

21      (Pause in proceedings.)

22      MR. TOWERY: Okay. Number one, before everybody

23 gets upset that we are violating process, it's the first

24 time we've ever heard this portion of the clause. Here's

25 what the issues are as a practical matter very briefly.

26 There are maybe 10 to $12,000 of fees that were paid to

27 third parties, such as legal fees and engineering fees that

28 were paid by Cooper-Fowler.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1       Number two, there are unpaid regulatory fees of

2   maybe another 10,000.  My proposal to deal with this is

3   since we obviously do not have an agreement on this and

4   since we do not want this small dollar issue to scuttle a

5   settlement is that we carve this issue about the cost

6   advanced by Cooper-Fowler out of this settlement agreement

7   and leave it to a meet and confer process among counsel.

8   And barring that, a decision by Judge Silver as to whether

9   there is to be any reimbursement, and if so by whom.

10      The analogy is here these are costs of sale, and

11  it would be unfair for us to assume that all of the costs of

12  sale are going to be borne either by Cooper-Fowler or by

13  Booker.  So, there are strong equitable issues on both

14  sides.  It's a brand new issue.  I mean, it's -- with

15  respect, it's totally unfair to ask Booker to agree to the

16  brand new issue that he hears for the first time

17  substantively when the settlement agreement is being

18  recited.  So, that's an appropriate resolution of it.

19      MR. HAMERSLOUGH:  Here's my response.  As far as

20  the attorney's fees, I don't agree that that's a brand new

21  issue.  That's something that comes out of his share if he

22  wants to deal with it.

23      As far as $10,000 of ongoing, you know, expense,

24  you know, to maintain this, then, yeah, leave it up to Judge

25  Silver or we agree to split it and 70/30.  I mean, we're

26  splitting other costs, you know, 70 -- I mean, on a

27  percentage basis.

28      MS. STEVENS:  I've had to pay all the carrying

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  costs, all the costs associated with all of the properties,

2  all of the sales, mostly everything, including Topeka

3  because it's my money that went into the building of that,

4  of Topeka.  So, if they want to talk about being reimbursed

5  for costs, then I should be reimbursed for all of these

6  costs.

7           THE COURT:  This is what I think we should do.  I

8  think we should take costs to date for which a claim for

9  reimbursement is being made on behalf of the Cooper-Fowler

10 to the niece and the nephew and say -- and I've said this to

11 Ms. Stevens a lot of times.  If the money's been spent,

12 we're not doing an accounting.  If the money's been spent by

13 any of those entities, there's no right of reimbursement.

14          If there is money that has to be paid -- in other

15 words, these have not yet been paid and you need to pay

16 them, they'd be paid, and they'd be paid off the top of the

17 sale.  And -- or if they have to be advanced, they have to

18 be advanced 70/30.  But -- because the property's going to

19 come in 70/30.

20          MR. FRY:  But --

21          THE COURT:  But cost -- and off the top is the

22 same thing because otherwise it would be distributed 70/30.

23 It works out the same way.  But cost to date, there's no

24 reimbursement, not either way.

25          MR. HAMERSLOUGH:  And, Your Honor --

26          MR. FRY:  And, Your Honor, with respect to future

27 costs, obviously before any cost is incurred it has to be

28 approved by the other party.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          THE COURT:  That's correct.

2          MR. HAMERSLOUGH:  Right, and the other thing --

3          THE COURT:  Or decided by --

4          MR. FRY:  Or decided by Judge Silver.

5          MR. HAMERSLOUGH:  And the other thing we talked

6    about is Cooper-Fowler, Talley and Robertson have to sign

7    off that they have no further right, interest, control in

8    this; that they are subject to decisions by Judge Silver,

9    and that they agree to cooperate and sign what is necessary.

10   That obligation certainly exists between the parties on all

11   of these types of assets.

12         MR. TOWERY:  I don't see that being a problem.

13         MR. HAMERSLOUGH:  All right.

14         THE COURT:  Okay, so --

15         MS. STEVENS:  So, any costs I have will be borne

16   by him also proportionately if --

17         THE COURT:  So --

18         MS. STEVENS:  If I --

19         THE COURT:  The reason why we're doing Topeka this

20   way is because you own Topeka 70/30.  So, if there's -- with

21   respect to Woodside, Woodside you own a hundred percent.

22   Your costs are a hundred percent.  1010 Corporation Way he's

23   going to own a hundred percent.  He's responsible a hundred

24   percent.  The costs going forward who pays is determined by

25   the ownership interest.

26         MS. STEVENS:  So, then who determines what costs

27   should be incurred?

28         THE COURT:  If there's a dispute, Silver.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             IN AND FOR THE COUNTY OF SANTA CLARA

3          BEFORE THE HONORABLE JAMIE JACOBS-MAY, JUDGE

4                    DEPARTMENT NO. 4

5                      ---oOo---

6   ARLENE STEVENS, SUNGILT        )
    CORPORATION and TV-32 DIGITAL  )
7   VENTURES, INC.,                )
                                   )
8           Plaintiffs,            )
                                   )
9           vs.                    )    Case No. 1-07-CV-090284
                                   )
10  COOPER-FOWLER MEDIA COMPANY,   )    SETTLEMENT
    MINORITY TELEVISION PROJECT,   )
11  INC., GREG TALLEY, SHEILA      )
    ROBERTSON TALLEY and BOOKER T. )
12  WADE, JR.,                     )
                                   )
13          Defendants.            )
    _____)
14                                 )
    AND RELATED CROSS-ACTION.      )
15  _____)

16
                       ---oOo---
17
               REPORTER'S TRANSCRIPT OF PROCEEDINGS
18
                  Thursday, January 22, 2009
19
               VOLUME II of II - Pages 68 - 117
20
                       ---oOo---
21

22
    A-P-P-E-A-R-A-N-C-E-S:
23
    FOR THE PLAINTIFFS:            DAVID M. HAMERSLOUGH and
24                                 STEPHEN S. FRY,
                                   Attorneys at Law
25
    FOR THE DEFENDANTS:            JAMES E. TOWERY and
26                                 NATASHA M. PARRETT,
                                   Attorneys at Law
27

28  OFFICIAL COURT REPORTER:      PATRICK CROWLEY, CSR 11271
                                  RPR, CRR 846186

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  giving up an interest to it; and that Mr. Wade will

2  indemnify and hold harmless Ms. Stevens for any claims of

3  KMTP to the equipment or for that matter anything else.  So,

4  we'll just -- which is the reason why you need to have KMTP

5  signing off in language that you feel protects yourself.

6          MR. TOWERY:  We agree that -- first of all, that

7  Mr. Wade is going to become the owner of the equipment.  We

8  agree with the principle of indemnification.  I had assumed

9  -- and maybe this is a good time to clarify that.  It's not

10  going to be indemnification limited to this issue, but it is

11  going to be a broad mutual indemnification clause in the

12  agreement; that if the conduct of either party causes a

13  financial loss to the other, there are rights of

14  indemnification.

15          THE COURT:  And specifically because there are

16  outstanding parties that Mr. Wade has control -- strike

17  that.  I don't want to say control over -- that's a loaded

18  word -- but is affiliated with KMTP, his niece and his

19  nephew.  You're going to be drafting language that you think

20  protects yourself, but Ms. Stevens is going to get indemnity

21  from Mr. Wade for those kinds of things, meaning the people

22  and entities affiliated with them.

23          MR. TOWERY:  What I had assumed was going to be

24  included is an indemnification clause that says among other

25  things if there are claims of a third party that cause a --

26          THE REPORTER:  Cause a what?

27          MR. TOWERY:  A loss to any party, then the other

28  party indemnifies that person.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  because I don't want anything to be unsaid.

2          MR. TOWERY:  Let me just add to that.  With

3  respect to any potential claim of John Stevens, there is

4  nothing in this settlement agreement that addresses that in

5  any way, shape or form.  Nobody's assuming responsibility

6  for that.

7          MR. HAMERSLOUGH:  Nor is anybody giving up any --

8          MR. TOWERY:  Correct.

9          MR. HAMERSLOUGH:  -- cross-complaints that --

10  should something be filed.

11          MR. TOWERY:  Correct.

12          THE COURT:  Okay.  Then we talked about cars.  I

13  think you covered that already; that you'll arrange for the

14  transfer of title of Mr. Wade's car to Mr. Wade.  He's

15  responsible for his own insurance.

16          Credit cards.  You each are responsible for the

17  debts you incurred on any credit cards.  To the extent you

18  have some joint credit card, my suggestion is that you

19  destroy it; that any joint credit cards be destroyed.  If

20  either of you have a credit card in the other person's name,

21  it shall be destroyed, and you're responsible for any

22  charges that you made onto those credit cards if there are

23  any.

24          MR. FRY:  And, Your Honor, just to add one point

25  on that.  As you know, we've discussed the other issues with

26  respect to indemnification or hold harmless in the event

27  that there's any liability.

28          THE COURT:  Listen to this, Mr. Towery.  Listen to

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  this.

2         MR. FRY:  With respect to the vehicle and the fact

3  that Ms. Stevens, you know, has held title to that vehicle,

4  to the extent that there's any liability or claims that are

5  brought against Ms. Stevens, you know, while Mr. Wade has

6  had the use of the vehicle, then the indemnification, hold

7  harmless would apply to that as well.

8         THE COURT:  That would be correct.

9         MR. TOWERY:  That's fine.  We do not need separate

10  indemnifications clauses for each little issue.  These are

11  all covered under the umbrella indemnification clause.  I

12  agree with the principle that you're saying.

13         THE COURT:  Okay, and then the last thing that I

14  wanted to say is to the extent that you folks are fighting

15  about personal property or anything -- so, it's a broad

16  thing.  If you're fighting about anything other than what

17  does that agreement mean, which I'll handle, but the -- for

18  example, my grandmother's broach is missing in terms of

19  personal property or anything like that, those kinds of

20  issues all go to Judge Silver.

21         If for some reason Judge Silver is either

22  unwilling or unable to hear the case, this agreement says

23  you shall pick a new neutral person.  If you can't agree on

24  a new neutral person, you'll come to me, each of you, giving

25  me two names and a CV, and I'll pick the neutral person for

26  you.  But you're going to have a neutral -- a neutral,

27  private neutral who will through a mediation, slash,

28  arbitration process quickly resolve all of these issues for

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1 were talking about joint credit cards, you triggered a
2 thought. There is one joint bank account of which we are
3 aware that both remain signatories on. It's a Bank of
4 America account.

5 It's originally Mr. Wade's. He's had it for a
6 long time. Our preference for that would be that rather
7 than close that account, we would just do a new signature
8 card, so that Mr. Wade would be the sole signator on that
9 account. It allows him to get whatever benefits exist from
10 having -- from being a long-time customer of Bank of
11 America. It's not an account that has been used by the
12 parties any time in the past several years.

13 THE COURT: Is that agreeable, Ms. --

14 MS. STEVENS: And then they would say I would not
15 have the benefit for having that account for X number of
16 years, so I would be prejudiced by that.

17 THE COURT: So, you're saying no?

18 MS. STEVENS: Yes.

19 THE COURT: So, you have to close the account.
20 Next one.

21 MR. TOWERY: Okay. Yesterday the issue came up
22 about the Wedding TV, whether there was an FCC issue about
23 whether the station had to retain copies of what is aired;
24 and, therefore, there would be an exception to the
25 everything gets turned over to Ms. Stevens.

26 We found out further information. We think we
27 have a very simple solution that should be in the interest
28 of both parties. Mr. Wade talked to Jim Winston this

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  morning. Jim Winston is a Washington D.C. lawyer who has
2  and continued to represent both Sungilt and KMTP. Both
3  parties are familiar with him. He's represented both, and
4  he said that it's not a question of a specific regulation.
5  It is a question of a general FCC regulation that stations
6  keep records of what they've broadcast.

7          For example, they can come back and say did you
8  show obscenity in a show on December 10th. So, the station
9  would have to have tape of what it showed on December 10th
10 to show they didn't do it.

11         When we talked about this yesterday where we left
12 it on the record was a direction from the Court that this
13 issue would go to Judge Silver to decide if there was an FCC
14 regulation; and if there was, then the station could keep
15 it.

16         Rather than doing that, a simpler solution to this
17 is KMTP won't keep anything regarding Wedding TV, but rather
18 we'll entrust a copy of the hard drives that it's giving
19 back to Ms. Stevens to Mr. Winston; and, therefore, in the
20 event that KMTP gets called upon to need it, Mr. Winston as
21 KMTP's lawyer will have it. It will accomplish what
22 Ms. Stevens asked for yesterday that KMTP not be left with
23 any of the residual Wedding Television intellectual
24 property.

25         THE COURT: That sounds good to me, with the
26 understanding that Winston signs an agreement saying that he
27 won't give it to anybody else, that this is protected. It's
28 her 100 percent property, and he's under the obligation not

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          MR. WADE:  I have no problem with that, but it

2    seems to me that that's the same kind -- TV-32, it's just a

3    name, and --

4          THE COURT:  We're doing things one at a time.

5          MS. STEVENS:  And is TV-32 Digital Ventures being

6    asked to be dissolved?

7          THE COURT:  We're not -- we're leaving -- is it

8    being asked to be dissolved?  We don't know what's going to

9    happen with TV-32.

10          MS. STEVENS:  Because it goes to Judge Silver?

11          THE COURT:  Yes.  All right.

12          MR. TOWERY:  Well, specifically, because the Court

13    articulated the policy reason that the transfer of title be

14    done in a way that --

15          THE COURT:  So --

16          MR. TOWERY:  -- minimizes tax consequences or loan

17    consequences.

18          THE COURT:  Let me just say, and then what

19    ultimately happens to TV-32 will be a Judge Silver call if

20    the parties disagree.

21          MR. TOWERY:  Fine.

22          THE COURT:  Okay.  Ms. Stevens.

23          MS. STEVENS:  I'd like to know if there are any

24    outstanding debts or commitments against -- or regards to

25    WTV or Sungilt or TV-32 Digital Ventures.

26          THE COURT:  Is there anything that we don't know

27    about that you know about?

28          MR. WADE:  Sungilt --

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1        MR. TOWERY: Let me answer the question first, and

2 we can have Booker assent to what I say or add to what I

3 say.

4        With respect to Wedding TV, there is nothing from

5 Mr. Wade or KMTP that constitutes a debt or an obligation.

6 With respect to Sungilt, the same statement can be made.

7 With respect to TV-32 Digital Ventures, the corporation has

8 been in the control of Ms. Stevens. We are not

9 independently aware of any obligations that Mr. Wade has

10 incurred on behalf of TV-32 Digital Venture.

11        This does raise one ancillary point, and that is

12 there was a notice to quit that was served in December by

13 TV-32 Digital Venture on tenants at 1010. And I'm assuming

14 that there will be an affirmative statement in the

15 settlement agreement that TV-32 Digital Venture will cease

16 and desist from any further steps to evict any tenant.

17        THE COURT: That would be accurate.

18        MR. HAMERSLOUGH: Correct.

19        THE COURT: Mr. Wade, anything else?

20        MR. WADE: She -- the question's very broad about

21 debts to Sungilt. And I can remember from earlier years

22 there's still some unpaid bills; accounting firm comes up.

23 And I'm sure there might be others but nothing new that I

24 have added since post-separation.

25        MR. HAMERSLOUGH: Judge, my suggestion would be to

26 the extent there is such an issue, that we leave it with

27 Judge Silver.

28        THE COURT: Is that agreeable?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1          MR. TOWERY:  I agree with that.

2          THE COURT:  All right.  Anything else,

3    Ms. Stevens?

4          MR. FRY:  Did we discuss the other credit line or

5    however you want to refer to it as that they hold jointly?

6    It's a Discover card; also, that both their names are on it,

7    and I don't know if we discussed it.

8          MR. WADE:  Both our names are on it, and I assume

9    both have charged to it, so I don't --

10          THE COURT:  So, each of you are responsible for

11   your own charges.  If you disagree about who made the

12   charge, it goes to Silver, and that credit card has to be

13   destroyed as of today.

14          MR. HAMERSLOUGH:  Agreed.

15          THE COURT:  So, this agreement is, if we get

16   around to getting people to agree to it, is binding as of

17   today.  It's not binding as of when we come up with a

18   written agreement.  It's binding as of today.  Destroy those

19   cards.  Stop using joint cards.  Ms. Stevens, we're ready.

20          MS. STEVENS:  Yes.  I would like Mr. Wade to sign

21   a statement as to what he just attested to, that there are

22   no outstanding debts.

23          THE COURT:  You have him on the record.

24          MR. HAMERSLOUGH:  It's on the record.

25          THE COURT:  All right, so --

26          MR. HAMERSLOUGH:  Under penalty of perjury.

27          THE COURT:  Ms. Stevens, we're now ready -- we're

28   done.  So, we have all the terms.  We're now moving forward.

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  I'm going to actually start with Mr. Wade.  Mr. Wade, did

2  you understand everything we just said --

3           MR. TOWERY:  Yes.

4           THE COURT:  -- over the last two days?  I mean,

5  this is more than one day's worth of settlement talks.

6           MR. WADE:  Yes.

7           THE COURT:  Do you have any questions at all?

8           MR. WADE:  No.

9           THE COURT:  Do you agree to these terms and

10  conditions?

11           MR. WADE:  Yes.

12           THE COURT:  Do you want me to make this a court

13  order?

14           MR. WADE:  Yes.

15           THE COURT:  Ms. Stevens, did you understand

16  everything we said?

17           MS. STEVENS:  I would like one section to be

18  reviewed.

19           THE COURT:  Okay.

20           MS. STEVENS:  And that is in regards to 1010.

21           THE COURT:  Okay.  What don't you -- you tell me

22  what you understand about 1010.

23           MS. STEVENS:  I would like the whole thing to be

24  reviewed.

25           THE COURT:  You tell me what you understand about

26  1010.  It's going to go faster this way.  What do you

27  understand what's going on about 1010?  Who's going to own

28  it after today?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)

1  she's able to trace, the sources of funds. And that if she

2  believes she can prove that it's hers, it goes to Silver for

3  a determination. Is that agreeable?

4           MR. TOWERY: Is this the final issue?

5           THE COURT: It is.

6           MR. TOWERY: Then I would recommend it to you

7  being the final issue; is that an agreement, Mr. Wade?

8           MR. WADE: Yes.

9           THE COURT: Ms. --

10          MS. STEVENS: Yes.

11          THE COURT: -- Stevens, you understood everything

12  I said?

13          MS. STEVENS: Yes.

14          THE COURT: You are -- do you have any -- I assume

15  you have no other questions; is that correct?

16          MS. STEVENS: That's correct.

17          THE COURT: Do you agree to these terms and

18  conditions?

19          MS. STEVENS: Yes, I do.

20          THE COURT: Do you want me to make this a **court**

21  order?

22          MS. STEVENS: Yes, I do.

23          THE COURT: Okay, so we have an agreement. It's

24  binding as of now. The dates that we set up are binding as

25  of now, even if the settlement agreement follows. So, you

26  have to be prepared to move. You have to effectuate the

27  inspection of Woodside and 1010.

28          MR. HAMERSLOUGH: And 1010. Jim?

COPYING PROHIBITED PURSUANT TO GOV. CODE 69954(d)