Victory Cynthia

| | |
|---|---|
| From: | Richard Silver [rsilver@mbay.net] |
| Sent: | Friday, November 06, 2009 7:15 AM |
| To: | Hammerslough David; stevesfry@netscape.net; bookertwade@hotmail.com |
| Cc: | Victory Cynthia |
| Subject: | Order re Sale of Woodside |
| Attachments: | Order re House.pdf |

Counsel and Mr. Wade:

This matter came on for hearing on Thursday, November 5, 2009, at 5:00P.M. All parties and counsel appeared telephonically. Because I had been in mediation all day I had not received the e-mail documents detailing the dispute and positions of the parties prior to the conference. As a result I asked the parties to detail those matters.
After the hearing I was able to access the materials sent to me from Mr. Wade and Mr. Hammerslough and review them. The matters contained therein are consistent with the representations made during the phone conference.

The hearing was set in order for Ms. Stevens to seek an order directing Mr. Wade to sign related sale documents concerning the Woodside house and, should he fail to do so, to request the Superior Court to issue and order directing the clerk to execute those documents as authorized by California law. Mr. Wade had previously refused to sign these documents and the matter was initially heard by the Court. At the direction of the Court the matter was referred back to this Arbitrator.

Mr. Wade stated his opposition. He believes the sale is premature and being sold under value and that if it is held and marketed for a longer period of time that it will increase in value. He also believes that he may have an interest in those proceeds if he is successful in appealing the previous order of the Court denying his motion to set aside the settlement. He complains that he has been delayed in filing a writ or appeal because Ms. Stevens had not provided the Court with a formal order. He also complains that Ms. Stevens has failed to pay certain sums on the Palo Alto house and that this should provide him with some interest or consideration in the Woodside residence.

Ms. Stevens, through her counsel, objected and requested the order as indicated above. They represented that it was likely that the sale would be lost if it was again delayed and summarized the information that is also contained in the letter from the broker which I have now received and read.

The order is GRANTED as requested by Ms. Stevens and a formal order is attached hereto. The ruling is based on consideration of the following factors.

This matter has been in litigation for a substantial time. The settlement was reached with the court many months ago. Since that time there has been constant disputes and continued litigation. Prior to the settlement all of the properties of the parties were being substantially supported out of the funds received in the sale of the license that underlies this dispute. At the time of the settlement most of the funds of the parties had been depleted in maintaining the property or litigation costs.

The settlement divided the property of the parties in various
manners. Ms. Stevens received the Woodside property in its entirety.
Mr. Wade's only interest was in seeing that his name was removed from the mortgage and that, until that occurred, that it not be in default. For a period of time it was in default. As a result of certain matters the arbitrator ordered that Ms. Stevens bring the mortgage current. Notwithstanding, the debt service on the residence is very significant, and if the

1

matter is not timely sold, will again deplete all available funds. From the very beginning Mr. Wade has resisted the sale of the residence beginning with issues concerning vacating the residence, signing the listing agreements, and objecting to previous sales.

Other aspects of the settlement and subsequent issues need also be mentioned.

As part of the settlement Mr. Wade had represented that he had authority to enter into a settlement that divided the Topeka license between he and Ms. Stevens. Disputes arose as to the manner of sale of that license. Eventually Mr. Wade represented that he had no authority to enter into that agreement. I made an order that he comply. The Court declined to enforce that order. I understand that the court was concerned that actual ownership of the license was with
out of state parties over which this court did not have jurisdiction.
It appears that a potentially valuable asset, that was a part of the settlement, may now be lost or tied up in extensive litigation and that there will be further litigation in this matter for indemnity for that loss.

In addition, Mr. Wade was to receive the Corporation way property in its entirety. However this was complicated by the fact that Ms.
Stevens has a personal guarantee for $1,000,000.00 against that property. Because this was one of the primary pieces of property awarded to Mr. Wade much effort has gone into allowing him to maximize
his investment but at the same time protecting Ms. Stevens.
Notwithstanding, Mr. Wade has permitted the property to go into substantial default as a result of his lack of funds and the inability of the property to support itself through rents. This has been complicated by the fact that the major tenant of the property is an entity in which Mr. Wade has an interest which either did not pay rent or paid less than market rent. Mr. Wade was given substantial time to attempt to work out an arrangement with the banks holding the mortgages. He has been unable to do so. At one point I even authorized Mr. Wade's portion of certain monies coming in from the sale of another license to be used to assist in bringing the mortgage current notwithstanding that all of those sums were suppose to remain as security for other monies owed to Ms. Stevens under the settlement agreement. Mr. Wade represented that he could borrow some additional sums to assist in paying the required amount but, even with these sums, he could not raise the additional amounts necessary. He did not appear to have or offer any personal funds to assist. Eventually the banks foreclosed. At that point the entity owning the building, which is controlled by Mr. Wade, filed bankruptcy. The sale has been stayed while the Banks now seek relief from bankruptcy.

As indicated above, in the settlement agreement, Mr. Wade also agreed to pay Ms. Stevens $300,000.00. Any funds he received from the sale of any other properties is to be held as security for the payment of that debt.

As the Court is aware, in the recent past, Mr. Wade made a motion to set aside the settlement. The motion was denied by the Court.

Notwithstanding the representation made by Mr. Wade concerning values in Woodside, the declaration of the broker is clear and to the point.
This sale is at market, prices are still dropping, and it is not
likely that prices will raise substantially in the near future.
During all the time that Mr. Wade has objected to the sale he has never presented any evidence to support his position. It is simply "his belief".

He made the same representations to me with respect to the Corporation way property. Based on what he and his broker then said I allowed the listing to be at a higher amount over the objections of Ms. Stevens. When the foreclosure was imminent and it was of necessity to obtain a sale we had a hearing in which the broker was present. Although I did lower the

2

listing price significantly what was important was information that the broker actually provided that indicated that the initial listing price was grossly overstated. This has put Mr. Wade in a position of losing the asset without any recovery and Ms. Stevens at significant risk on the personal guarantee. All based on Mr. Wade's belief that sometime in the future the property will increase in value. The significance of this as it relates to the present dispute is that Mr. Wade has a tendency to speak from "hope" and "belief", not from actual market conditions, and does not have any funds to contribute in the meantime.

If this sale is lost there will be no funds to carry it other than the remaining funds of Ms. Stevens that will soon be depleted. The loss of another sale will further stigmatize the property. The sale is for a substantial amount in excess of the present debt and, according to the broker and all of the evidence, at current market.
Mr. Wade has at best a "contingent" interest IF he is successful in setting aside the settlement. Even if that were to happen there wouldn't be any money left.

The Palo Alto property issues do not warrant a delay in the sale of the Woodside residence. Ms. Stevens also has a substantial interest in that property. Mr. Wade has been living there. He has wanted to buy her interest claiming that its market value was stagnant at its current listing, will return little money, and she should sell it to him. He would give her a "note" for the difference. She has refused this offer, does not want any more "debt" from him, and believes it should have been marketed. Mr. Wade has also resisted the sale of this property. It is true that she has not made payments on this property. Although I am not certain as I sit her at 8:45P.M., I also believe he is in arrears on his payments. However, even if he wasn't, the solution is not to hold up the sale of the Woodside residence but, as I have done, hold the proceeds in an interest bearing account until a full hearing on those issues.

Because of the history of this matter I believe it may be necessary for Ms. Stevens to seek the assistance of the Court in issuing an order allowing the Clerk to sign the sale documents. If I delayed the matter any further for another hearing, as requested by Mr. Wade, there is a substantial probability the sale will be lost. The delay occasioned by this matter and seeking Court assistance on Monday may still have that result. As I told Mr. Wade, it is time to act, not delay.

I have provided the detail above so that the Court could have the full benefit of the basis of this ruling.

DATED: November 5, 2009


richard m silver, arbitrator.

3

Case: 13-50376    Doc# 59-9    Filed: 07/09/13    Entered: 07/09/13 14:50:31    Page 3 of 3