Booker T. Wade Jr.
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250
bookertwade@hotmail.com

In Propria Persona

FILED

JUL 2 2 2013

CLERK
United States Bankruptcy Court
San Jose, California

# UNITED STATS BANKRUPCY COURT OF
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

In re

BOOKER THEODORE WADE, JR

      Debtor

Case No. 013-50376 SLJ
Chapter 11

Date:    July 24, 2013
Time:    2:00 p.m.
Location:  Courtroom 3099
          280 S First Street
          San Jose, CA 95113

## RESPONSE TO OBJECTION TO MOTION TO REJECT EXECUTORY CONTRACT AND OPPOSITION TO MOTION TO REJECT EXCUTORY CONTRACT

### A.  Introduction

Debtor Booker T. Wade Jr. [Wade] hereby files this response to the Objection to Motion to Reject Executory Contract filed on July 10, 2013, by Arlene Stevens [Objection]. Wade also responds to the Opposition to Motion to Reject Executory Contract filed by Campeau Goodsell Smith on July 10, 2013 [Opposition].  As detailed below, neither the Objection nor the Opposition states any basis upon which the Court should deny the request to reject the Settlement Agreement in issue.

### B.  Stevens Objection

In her Objection, Arlene Stevens [Stevens] advances two arguments in urging the Court not to approve Wade's motion to reject the Settlement Agreement.  She maintains the approval request is (a) unnecessary and (b) unsupported and improperly motivated.

-1-

1. Unnecessary

"Unnecessary" is not a basis to withhold approval. Section 365(a) of the Code details the predicates for a rejection. As interpreted, that Section provides the Court should approve rejection of an executory contract, *unless* the Court finds that the requested rejection is manifestly unreasonable and based on bad faith or whim or caprice. *In re Pomona Valley Medical Group*, 476 F.3d 665,670 (9th Cir. 2007). Stevens ignores the statute and on point precedents.

Stevens argues that rejection will be "unnecessary," not because "unnecessary" is a supporting legal basis, but because the motion may become moot if the Court grants a Motion to Lift the Automatic Stay Stevens filed subsequent to the filing of the rejection motion.[1] Stevens *anticipates* that the Court will make a refer to the state court which will ultimately produce state court orders for specific performance of the Settlement Agreement or damages or an order rendering the Settlement Agreement as performed. Again, Stevens ignores the applicable statute and on point precedents noted above.

2. Unsupported

Stevens argues that the rejection request is "largely unsupported" as Wade has not advanced an acceptable justification for rejection. Opposition, at 3-4. Stevens also argues that the rejection motion is an attempt to create rights in the Settlement Agreement.

Precedents provide that the Court should presumptively defer to the judgment of the Debtor, including the Debtor's financial judgment and the Debtor's formulation of his litigation strategy. *Pomona Valley*, *supra*, at 670. In determining whether to grant its approval, the Court should not apply any rigor but only conduct a "cursory" review of the Debtor judgment and motivation, as debtors, and not the courts, are in better positions to make all the subjective decisions as to their reorganization and what is beneficial to the estate. *Id.*

**C. Campeau Goodsell Smith Opposition**

Campeau Goodsell Smith [CGS], Stevens' prior bankruptcy counsel in a related case of TV 32 Digital Ventures Inc., appears as an interested party and opposes rejection.

1. Party in Interest Status

As a preliminary matter, Wade contends that CSG lacks standing to oppose rejection. While Section 1109(b) of the Code expressly allows a "party in interest" to appear and be heard, such standing is not unlimited . The term is not defined in Section 1109(b) nor contained among the

---

[1] Concurrently herewith, Wade has filed an opposition to the request to lift the stay. To nay extent necessary, Wade incorporates herein his opposition.

Case: 13-50376    Doc# 63    Filed: 07/22/13    Entered: 07/23/13 13:01:37    Page 2 of 8

definitions in Section 101 of the Code. However, precedents limit standing to entities whose pecuniary rights may be *directly* affected by the Court's actions. See, e.g., *In re Guido*, 237 B.R. 562 (E.D. N.Y. 2004), citing Black's Law Dictionary 1122 (6th ed. 1990).

CSG has not alleged, let alone detailed, how its pecuniary rights or interests would be directly affected by the Court's approval of the rejection motion. Wade's assumes that Stevens may owe CSG legal fees from its prior representation of Stevens. But even if correct, that assumption is insufficient by itself to support standing. The requirement is that CSG demonstrates a <u>direct</u> interest in the proceeds contained in the escrow accounts at issues. It has not done so. Because Stevens may owe CSG monies, that alone is insufficient.

In *In re Innkeepers USA Trust*, 448 B.R. 131 (S.D. N.Y 2011), holders of certificates entitling them to financial interests in proceeds of Debtor's mortgage funds were denied standing as parties in interest. The Court concluded that their interests were too indirectly involved, they had no privity with the Debtor and to any extent that those interests needed protected, the appearance of the mortgage servicers was adequate. Similarly herein, CSG has no privity with the Debtor or the establishment of the escrow accounts and any CSG interests can be, and in fact is being, represented by Stevens. As such, the Court should not consider the CSG opposition.

Assuming the Court concludes to consider the CSG interests, Wade responses to the Opposition to the extent the Opposition raises matters not addressed above by Stevens.

CGS maintains that rejection is inconsistent with (a) the Settlement Agreement as a state court order (b) underlying facts and (c) the best interest of the estate.

2. Inconsistent with Settlement

CSG argues that rejection is inconsistent with the Settlement Agreement given that state courts have upheld the Settlement Agreement. <u>Opposition</u>, at 3. The <u>Opposition</u> at length details, often incorrectly, the state court proceedings. The response is that the argument and the procedural history are irrelevant to the rejection motion. Nothing in the applicable statute or precedents provides that the refusal of a state court to invalidate an executory contract precludes the Bankruptcy Court from rejecting the contract. CSG has not cited any authority for its argument. Indeed, CSG's argument proves too much: it would give a state court veto power over the supremacy of federal bankruptcy law. Congress did not intend such state court preclusion as Congress did not include any such exemption in the Bankruptcy Code. And CSG has not advanced any authorities to support any implicit intent of Congress.

### 3. Incorrect Assertions

CSG argues that Wade's Schedule of Assets incorrectly lists claims to the proceeds in the escrow accounts at issues. Opposition, at 4. Accepting for the sake of argument CSG's assertions, the argument is unavailing. Errors, if any, in the schedule do not defeat rejection approval and CSG cites no authorities of any kind in support of its argument. At best, the argument – and the incomplete detailing of the state proceeding – is but an obfuscation. If there are errors in the Schedule of Assets, CSG must address those outside the motion to reject the Settlement Agreement.

### 4. Substantial Performance

CSG maintains [Opposition at 12] that the Settlement Agreement is not an executory contract, advancing four arguments, as follows:

(a) the Settlement Agreement is not a contract but an "order" of the state court;

(b) Stevens has substantially performed her obligations under the Settlement Agreement;

(c) only money needs to be paid by Wade to Stevens; and

(d) the non-performance by Stevens is non-substantial.

As a general response, Wade notes that CSG has not provided any support for any of its four arguments and none of the arguments are within the statutory standard as interpreted that court approval should be granted absent manifest unreasonableness, bad faith or caprice. CSG's arguments are no more but an unsupported plea for help to protect its claims for legal fees owed.

### a. Court Order

The proposition that the Settlement Agreement is someone more magical and therefore binding on this Court is devoid of merit. The only factual support cited by CSG for the argument is that at the end of the on-the-record settlement discussions, the then Presiding state court judge asked Sevens and Wade if they wished the court to make the on-the-record discussions an "order" to which both Sevens and Wade answered in the affirmative. However, CSG's factual argument is misleading. CSG fails to note the very next lines of the transcript where the Presiding judge, after receiving affirmative answers, declares –

> "OK, so we have an agreement. Its binding as of now."
> Reporter's Transcript, 114:23-24.

This conclusion by the Presiding Judge on its face says no more than that an agreement was made. It does state or provide that in any way it is some special order of the Court which has special consequences. Pivotally, this is not an "order" that the Bankruptcy Code excludes from or limits the

rights of the Debtor to reject an otherwise executor contract. CSG provides no authority for its position.

   b.  Rights to Property

CSG maintains that in seeking rejection, Wade is attempting to establish rights. Opposition, at 12. CSG misses the point. As the Settlement Agreement provides more detriments than benefits to the estate, Wade seeks to reject the Settlement Agreement in its entirety as to whatever rights and benefits currently inure to Wade or Stevens. Nowhere in the motion to reject is there a request to the Court that it determine any rights under the Settlement Agreement.

   c.  Stevens Performance

CSG says Stevens has no significant outstanding performance obligations, citing some obligations that have been performed. CSG ignores obligations that are unperformed. In his Motion to Reject Executory Contract, at 4, Wade listed the non-performed obligations by Stevens.

   Written Settlement Agreement: Stevens has failed to reduce the settlement agreement to a formal contract as required in January 2009. Yes, Stevens provided a proposed written agreement in September 2012, three and one half years late, following years of litigation over the settlement terms which a written agreement could have avoided. That is hardly the good faith required by the settlement terms. Moreover, the proposed 2013 written agreement, in reducing the 116 page of terms and conditions to 1.5 pages, failed to include most of the terms of the settlement discussion. It included only those terms relating to outstanding issues that benefited Stevens. The proposal was untimely and incomplete. CSG ignores these factors. Also, Stevens filed post-petition on January 23, 2013, another proposed Settlement Agreement. This was as post-petition filing in the state court in violation of the automatic stay. The effort fails as an intentional effort at bootstrapping to defeat a rejection. Indeed, the effort is subject to sanctions. Critically, to be considered as a performed obligation, the provision of the written agreement must have occurred pre-petition. *In re Columbia Gas System Inc.,* 50 F.3d 233, 240 (3d Cir.1995) ["The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed."] (citations omitted).

   Portland Cell License: Stevens failed to market and sell and share the proceeds of a sale with Wade. As a result of that failure, Stevens caused the license to be forfeited. Prior to the forfeiture, Wade offered to cause the construction required by the Federal Communications Commission in order to avoid the forfeiture. Sevens refused to grant her consent or otherwise cooperate and the forfeiture followed. This was and remains a failure to perform and Stevens is now

incapable of performance. As the value of the license and a constructed facility would be worth millions, the failure to perform is very significant. CSG ignores these factors.

Stevens Personal Liability:  As noted in the rejection motion at 4, Stevens was required to cooperate to secure her release from personal liability on the commercial office building assigned to Wade.  She did not.  Now as the building has been foreclosed, she cannot. CSG ignores these factors.

Wedding Television: As noted in the rejection motion, at 4, Stevens was required to accept delivery of hundreds of video tapes containing television programming property. If delivery was incomplete, Stevens was required to review the tapes for completeness and, if incomplete, provide to Wade a list thereof, requiring Wade to conduct further research and respond to Stevens. Stevens failed to accept delivery or to determine completeness. CSG ignores these factors.

Credit Card Debt:  Although not listed in the motion to reject, Stevens was also required to examine Wade's credit card debt and allocate charges and accept responsibilities for those charges that benefited her. Reporter's Transcript, 111-114. She failed to do so. CSG ignores these factors.

Section 365(b) of the Code provides that a debtor may not assume an executory contract unless the debtor cures defaults under the contract. It stands to reason that if the default cannot be cured, the debtor may not assume the contract.  Similarly, herein, Stevens has defaulted on her performance obligations and the required performances are now incapable of performance. As such, the rejection motion should be approved. Compare, *Worthington v General Motors Corp.*, 113 F.3d 1029, 1034-1035 9th Cir. 1997) [incurable defaults precludes contract assumption].

d.  Money Only

CSG says that the only non-performance due is that Wade needs to pay Stevens money. That is wishful thinking. It ignores the above and it ignores the non-performance items by Wade detailed in the rejection motion at 5. It also ignores the non-performance items by the JAMS arbitrator listed in the rejection motion at 5.  And it ignores the four non-performance items Stevens post-petition has alleged in her filing in state court seeking specific performance of non-monetary obligations.

D.  Rejection Benefits the Estate

Under the Settlement Agreement, there is no dispute that Wade presumptively is entitled to certain benefits, including proceeds of the escrow accounts and has obligations to pay Stevens monies. But those settlement agreement rights and obligations are disputed. Still, any prospect that the funds in the escrow accounts could be secured for the benefit of the estate and any extinguishment of Wade's obligations to pay Stevens would relieve the estate of burdens and permit

-6-

Wade instead to provide funds for creditors. These factors alone should be pivotal. See, *NLRB v Bildisco and Bildisco*, 465 U.S. 513 (1984) .

E. Conclusion

The Settlement Agreement is a contract under state law and material provisions of the contract have been demonstrated to not have been performed. Having considered all alternatives, Debtor believes rejection would best serve the interests of the estate and best effectuate Debtor's litigation reorganization strategy. There are no showings – indeed no allegations – of manifest unreasonable or bad faith, whim or caprice. At best there are only differences in opinions as to the ultimate effectiveness of rejection with a creditor and a putative party in interest. Under these circumstances, Debtor submits that he is entitled to, and urges the Court to, approve his motion to reject the Settlement Agreement.

July 22, 2013                                    Respectfully submitted,

                                                 Booker T. Wade Jr., Debtor

**Certificate of Service**

The undersigned hereby certifies that on July 22, 2013, she deposited in the United States Mail, first class postage prepaid a copy of the foregoing RESPONSE TO OBJECTION TO MOTION TO REJECT EXECUTORY CONTRACT AND OPPOSITION TO MOTION TO REJECT EXCUTORY CONTRACT addressed to the following:

> Jennifer Protas
> Hoge Fenton Jones &Appel
> 60 South Market Street, Suite 1400,
> San Jose, CA 95113-2396

> The Mlnarik Group, Inc
> 2930 Bowers Avenue
> Santa Clara, CA 95051

> William Healey
> Campeau Goodsell Smith
> 440 North First Street
> San Jose, CA 95112

> David Hamerslough
> Rossi Hamerslough Reischl & Chuck
> 1960 The Alameda Suite 200
> San Jose, CA 95126

> Wendy Smith
> Binder &Malter
> 2775 Park Ave
> Santa Clara, CA 95050

_____
Fan Wen

July 22, 2013