Booker T. Wade Jr.
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250
bookertwade@hotmail.com

In Propria Persona



UNITED STATS BANKRUPTCY COURT OF
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re

BOOKER THEODORE WADE, JR

    Debtor

Case No. 013-50376 SLJ
Chapter 11

Date:     July 23, 2013
Time:    10:00 a.m.
Location:  Courtroom 3099
            280 S First Street
            San Jose, CA 95113

## OPPOSITION TO MOTION FOR RELIEF FROM STAY TO SEEK JUDGMENT IN STATE COURT AND FOR RELATED RELIEF

**A. Introduction**

On July 9, 2013, Arlene Stevens [Stevens] filed a Motion for Relief From Stay To Seek Judgment in State Court And For Other Relief [Stay Motion]. Stevens wishes to "foreclose" in state court on funds in the two escrow accounts containing approximately $790,500, held by Stevens' counsel and co-counsel as trustees for both Stevens and Wade to ensure the faithful performance of obligations of Stevens and Wade under a "Settlement Agreement" emanating from proceedings in the Santa Clara County Superior Court.

As detailed below, Stevens is not a secured creditor of Wade nor otherwise have any "foreclosure" rights either under the Settlement Agreement or under law. Further, as also shown below, Stevens has not demonstrated entitlement to stay relief.

-1-

## B. Lack of Statutory Basis for Relief

Relief from stay under Section 362(d) of the Code is designed primarily for secured creditors seeking access to collateral. Their security interests and liens survive the filing of the case but the stay precludes them from realizing on the collateral. To prevail on a stay request, a secured creditor must show two factors: (a) entitlement to relief under Section 362(d)(2) – the lack of equity in the collateral and (b) that the collateral is not necessary to an effective reorganization. The Supreme Court interpretation of the relevant portions of Section 362(d) provides –

> "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, [the] property will be needed for it; but that the property is *essential* for an effective reorganization that is *in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be a "reasonable probability of a successful reorganization within a reasonable time." [Emphasis added.]

> *United Savings Association v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 376-76.

Further, it is most uncommon for courts to lift the stay during the early months of a case as has been held in numerous precedents reflecting the intent of the Code:

> "The policy of the Code, as was part of the predecessor statutes, is to encourage reorganization. Because of this [d]eterminations that property is not necessary to an effective reorganization due to the lack of feasibility should not be favored in the early stages of bankruptcy proceeding. No one knows whether the debtor can survive until he has done what Chapter 11 affords him the occasion to do so."

*In re American Bank v Grand Sports Inc.*, 86 B.R. 971, 974 (Bankr. N.D. Ind. 1988). Stevens has not demonstrated – indeed as not even seriously addressed[1] – these controlling provisions of the Code and precedents.

As access to the escrow funds is to date the *only* available means and therefore access is essential to effectuate a prospective reorganization, and as the case is still in the early stages of just over five months, and Debtor has not had even one opportunity to present a plan, the Court should not lift the stay to defeat the prospective plan. As such, consistent with *United Savings, supra,* and *In re American Bank, supra,* relief from stay should be summarily denied.

---

[1] At the end of the <u>Stay Motion</u>, Stevens parenthetically notes the requirement that she demonstrate that the escrow funds are not essential for an effective reorganization. In a one-sentence conclusion, she maintains that any reliance by Wade on escrow funds is speculative. That is insufficient.

### C. Stevens' Arguments

#### 1. Use of Escrow Funds for Reorganization

Stevens' parenthetical reference to reorganization is that even if the Settlement Agreement is rejected, that alone will not permit Wade access to the escrow funds for use in reorganization, as rejection does not terminate the agreement and Wade would not have funds available for reorganization. Thus, Stevens argues reorganization is purely speculative.

Stevens ignores an important factor. Following the settlement discussions and negotiations, the Presiding Judge, *sua sponte*, disqualified herself from further participation in the state case because the Presiding Judge concurrently during the settlement discussions was also negotiating employment opportunities with the JAMS arbitrator she appointed to resolve Settlement agreement implementation disputes. Given the prospective employment discussions, Section 170.1 of the California Code of Civil Procedure required her disqualification. The disqualification rendered the judge's order making the Settlement Agreement binding as void. *Roscoe Holdings Inc v. Bank of America* (2007), 149 Cal.App.4th 1353, 1362; (2006) *Christie v. City of El Centro* (2007) 135 Ca.App. 4th 767; (1932) *Cadenasso v. Bank of Italy,* 214 Cal. 562.

While there has been some dispute in lower state courts as to whether such orders should be considered void or only voidable at the option of a party, the California Supreme Court's latest opinion on the subject held them to be void. *Christie v. City of El Centro, supra*, 135, citing multiple precedents. As such, rejection of the Settlement Agreement for bankruptcy purposes, combined with the Settlement Agreement being void under state law, would terminate any and all Wade obligations and thereby make Wade at least entitle to half of the escrow funds that originated from Wade-Stevens joint tenancy property, approximately $310,000. These funds could be used in a reorganization plan.

#### 2. Cause to Lift Stay

Stevens argues that there is "cause" to life the stay. <u>Stay Motion</u>, at 5. She notes that the Settlement Agreement has been in place for four years and has been largely implemented.[2] Thus, Stevens says judicial economy would be served by lifting the stay. Stevens further argues that lifting the stay and allowing her to seek "foreclosure" on the escrow accounts and other specific performances by Wade is an *efficient* method of completing the state action. <u>Stay Motion</u>, at 5.

---

[2] The "largely implemented" expression is a play on words. As shown in the Motion to Reject Executory Contract [the Settlement Agreement] set for hearing on tomorrow, June 24, 2013, Wade details material and substantial non-performance by Stevens and Wade.

To the contrary, Wade submits that lifting the stay and referring the case back to the Superior Court will require this Court to hold this proceeding in abeyance, pending the outcome of litigation in state courts which could be for years, only to be referred back for additional litigation in this Court. The case has been pending in the Superior Court for six and half years, two and half of the last years on an inactive basis. During the latter time frame, neither Stevens nor Wade made any effort to bring the case to a conclusion. Importantly, the Superior Court - otherwise known for its capacity to move its case calendars expeditiously – failed to manage the case. The reasons for this are reflected in the orientation of the Superior Court, as more fully detailed below in Section E.

    3. Stevens' Property, Not Wade's

Stevens argues that all proceeds in the escrow accounts belong to her and that Wade's interests [and now the estate's interests] in the proceeds in one of the accounts was a "security interest" for Wade's obligation to pay Stevens $300,000, quoting a statement from the Presiding Judge. See <u>Stay Motion,</u> at 10, Note 5. A security interest requires a Promissory Note, a Security Agreement and a lien and/or customarily a UCC filing. There are no references anywhere in the Settlement Agreement to a security agreement or lien or UCC filing. Even if these documents were intended, they were implicitly contemplated in the Settlement Agreement to be the obligation of Stevens to create and present them. See, Reporter's Transcript, at 115:1-6. Neither document has been created. Indeed, Stevens had the obligation to provide written documents implementing the settlement agreement itself, but she failed to do so. Thus, there is no pre-petition security agreement or lien or security document of any kind. Stevens' argument is that she wishes to "foreclose" on non-existent security agreement, lien and Promissory Note, relying on a single word ["security"]in the Settlement Agreement, may appear clever, but in fact it lacks any supporting authority.

Stevens' argument proves too much. For if the quoted single word provides a basis for a foreclosure, then Wade also has security interests and foreclosure rights in the escrow funds as the Settlement Agreement also required Stevens' to sell and share the proceeds of the Portland license with Wade. Instead, Stevens forfeited that license. If Wade has a security interest in the escrow funds, then Wade has economic ownership interests in the same funds and Wade could move for an order directing Stevens to hand over the funds on behalf of the estate.

**D. Equity**

Stevens calculates that any entitlement Wade has to any escrow funds would be offset by monies owed Stevens and then argues that Wade lacks equity in the proceeds. Sevens ignores that she owes Wade for her nonperformance, including failing to make any payments for four years on

the Palo Alto condo[3] as required and the intentional forfeiture of a valuable license to start a cellular telephone company in the Portland, Oregon, market which would have been worth millions of dollars. Thus, Wade's damage claims far surpasses the total sums owed her, if any, including the sums in both escrow accounts.

### E. The Superior Court

This proceeding is mostly all about claims for legal fees by Stevens' litigation counsel David Hamerslough and Stevens' family law co-counsel Stephen Fry and Stevens' former bankruptcy counsel William Healey and Wade's former state court counsel James Towery. Such fees total approximately $1.4 million. The only source of available funds for payment of the fees is the monies in the two escrow accounts. As a paramount matter, This proceeding is about the Debtor's rights to property for the benefit of the estate, not Stevens' counsel right to fees. If Stevens' counsel wishes it fees, the appropriate remedy are actions against Stevens, including an involuntary bankruptcy petition.

The case is not about any funds that will inure to Stevens as her debts far exceeds liens held by her three attorneys and the default judgment claims of the Small Business Administration. Because she lacks any incentive, Wade submits, Stevens has not cooperated with her attorneys – indeed, she has been incommunicado with her attorneys for years. Likely, Stevens will be compelled also to file a bankruptcy petition. In the related bankruptcy proceeding of TV 32 Digital Ventures Inc., Judge Weissbrodt addressing Stevens, candidly questioned whether Stevens understood the nature of the litigation and the effect of her then not supporting the reorganization plan that would have protected her from personal liability to the SBA. Knowing Stevens and the circumstances, Wade questions whether Stevens has freely given her informed consent to the filing of the Stay Motion.

In seeking stay relief, counsel for Stevens is forum shopping. Sensing a possible inability to defeat the motion to reject the settlement agreement, counsel is attempting this maneuver to move to a friendly forum.

---

[3] As to the Palo Alto condo, Stevens argues that Wade as failed to sell the property as required by the Settlement Agreement. Stevens is intentionally misleading the Court. Stevens fails to note that following a hearing in which counsel for Stevens appeared, prior to his withdrawal the arbitrator concluded that the condo's value was underwater and a sale would produce a deficit that would burden both Wade and Stevens. Thus, the arbitrator revoked his order to sell the property, expunging the property from the Settlement Agreement. Further, Stevens maintains that Wade has breached an obligation to sell the Topeka television station license. Stevens again misleads this Court. The Superior Court concluded that disposition of the Topeka license required the post-settlement concurrence of the out-of-state license holders who were not parties to the Settlement Agreement and who declined to concur. The Court effectively expunged the license.

In state court proceedings, an on-the-record Settlement Agreement is treated as sacrosanct. No factor of any kind – nothing – is permitted to invalidate a Settlement Agreement. Even though Stevens post-settlement conceded she had hid from the settlement discussions, $400,000 in contested funds in a non-disclosed bank account with First Republic Bank of Palo Alto, this fraud in the formation of the Settlement Agreement was insufficient to invalidate it. Even though then Presiding Judge Jacobs-May disqualified herself from further participating in the state court proceeding for concurrently negotiation employment with the JAMS arbitrator while referring cases to JAMS – all in violation of law – that do was insufficient to vacate the arbitrator's appointment, even though the applicable statute automatically imputed the Presiding Judge's disqualification to the arbitrator.

Even though applicable state statutes provide that orders of a disqualified judge are void that was also was insufficient to vacate the Settlement Agreement, rendering in the state court's docket a void but non-vacated Settlement Agreement. Even though upon her disqualification, applicable statutes directed that a substitute judge be assigned by the California Judicial Council which traditionally assigned the case to a judge in another superior court, that did not occur; instead, the disqualified judge as Presiding Judge in open court, directed her court clerk to cause the case to be re-assigned to a colleague judge who promptly and summarily denied without explanation or comment a motion to vacate the Settlement Agreement.

Even though Wade's former counsel, and now counsel with the Hamerslough law firm, is a nominee to the Santa Clara County Superior Court, the instant proposal is to refer this proceeding back to the Santa Clara County Superior Court for adjudication by Towery's sitting colleagues.

Wade reluctantly submits that the Superior Court's position has been to protect the reputation of its former Presiding Judge as an expert at mediation and arbitration by not disturbing the Settlement Agreement herein, or, for that matter any settlement agreement. The Presiding Judge ultimately retired and accepted a position with JAMS. Wade has searched in vain to locate any settlement agreement of the Presiding Judge that has been vacated by the former Presiding Judge or any other judge on the Superior Court.

Wade submits that all of these factors are but a judicial lynching. They raise substantial constitutional issues of professional responsibility and judicial misconduct. While it may be tempting to refer the case back to the state court given the factual complexities, Wade urges the Court to avoid this quagmire and not refer the case. The real judicial efficiency is for this Court to

reject the settlement agreement and resolve any Stevens' Proof of Claims or any issues presented in an adversary action.

### F. Conclusion

Stevens has not demonstrated cause to lift the stay. There are reasonable legal basis for Wade to provide for an effective reorganization. It is much too early for the Court to consider lifting the stay. The Court has set a date for submission of a plan. Wade should be given the opportunity to present that plan.

Finally, the filing of the <u>Stay Motion</u> is but a mischievous maneuver[4] an effort to moot the motion to reject the settlement agreement rather than stand on the merits of the rejection motion. The Court should deny the <u>Stay Motion</u>.

Respectfully submitted,

*/s/ Booker T. Wade Jr.*
Booker T. Wade Jr.
Debtor

July 22, 2013

---

[4] Given that the Motion to Reject Executory Contract was filed prior to the filing of the Stay Motion, Wade moves the Court to continue the hearing on the Stay Motion until tomorrow when both motions can be heard concurrently.

## Declaration of Booker T. Wade Jr.

I am the Debtor in this proceeding. I prepared the Opposition to the Motion For Relief From Stay to Seek Judgment In State Court and For Related Relief. I know the contents of the Opposition and believe the contents of the Opposition to be true and correct, including the factual assertion contained therein.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Palo Alto, California on July 22, 2013.

Booker T. Wade Jr.

## Certificate of Service

The undersigned hereby certifies that on July 22, 2013, she deposited in the United States Mail, first class postage prepaid a copy of the foregoing Opposition to Motion For Relief From Stay To Seek Judgment In State Court and For Related Relief addressed to the following:

Jennifer Protas
Hoge Fenton Jones &Appel
60 South Market Street, Suite 1400,
San Jose, CA 95113-2396

The Mlnarik Group, Inc
2930 Bowers Avenue
Santa Clara, CA 95051

William Healey
Campeau Goodsell Smith
440 North First Street
San Jose, CA 95112

David Hamerslough
Rossi Hamerslough Reischl & Chuck
1960 The Alameda Suite 200
San Jose, CA 95126

Wendy Smith
Binder &Malter
2775 Park Ave
Santa Clara, CA 95050

Fan Wen

July 22, 2013