

The following constitutes
the order of the court. Signed September 5, 2013

_____
Stephen L. Johnson
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re:

BOOKER THEODORE WADE, JR.,

    Debtor(s).

) Case No.: 13-50376 SLJ
) Chapter 11
)
) Date: July 24, 2013
) Time: 2:00 p.m.
) Ctrm: 3099

## ORDER: (1) DENYING MOTION TO REJECT EXECUTORY CONTRACT AND (2) GRANTING MOTION FOR RELIEF FROM STAY

    Debtor Booker Wade, Jr.'s Motion to Reject Executory Contract ("Rejection Motion") and creditor Arlene Stevens' Motion for Relief from Stay to Seek Judgment in State Court ("Stay Relief Motion") came on for hearing at the date and time referenced above. Appearances were noted in the record.

    To summarize the motions, Debtor seeks to reject a property settlement agreement ("Settlement") between him and Arlene Stevens ("Stevens") which was negotiated before a Judge of the Superior Court in the context of prior litigation. Stevens and her former counsel, Campeau Goodsell Smith, L.C., opposed the Rejection Motion. Stevens filed the Stay Relief

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

Motion seeking relief from the automatic stay to have the Settlement entered as a judgment in the state court pursuant to California Code of Civil Procedure § 664.6. Debtor opposed the Stay Relief Motion.

For the reasons described below, the court will DENY the Rejection Motion and GRANT the Stay Relief Motion.

## I. FACTS[1]

### A. Settlement of Prior Litigation before Superior Court Judge Jacobs-May

Prior to 2009, Debtor and Stevens were engaged in litigation in the Santa Clara Superior Court and San Mateo County Superior Court. Subsequently, the two actions were consolidated. Over the course of two and a half days, the parties to the litigation, Wade and Stevens, negotiated a comprehensive settlement, under the supervision of Judge Jamie Jacobs-May. Both Debtor and Stevens were represented by counsel in that negotiation. At the conclusion of the negotiation, Judge Jacobs-May put the settlement the parties reached on the court's record. The transcript of that resolution (the "Transcript") runs 116 pages, and was attached as Exhibit 1 to the Rejection Motion. Although a written version of the Settlement was not signed by the parties, both Debtor and Stevens agreed that the terms of the Settlement are embodied in the 116-page transcript of the settlement conference, dated January 21, 2009. (Transcript, p. 114).

From a reading of the Settlement, it becomes clear Debtor and Stevens were personally and romantically involved for many years. During that time, they acquired individually and together, as well as through certain closely held businesses, both real and personal property. They also participated in the operation of certain businesses, including Wedding TV, a television station, KMTV. Finally, they owned certain transmission licenses and equipment. The Settlement clearly evinces the parties' intention to resolve their disputes, divide their properties and part ways--for good.

---

[1] Debtor is representing himself in this matter. He attached to his moving papers copies of certain material, including the Transcript described below. The court will consider this material because counsel for Stevens introduced portions of the same transcript in its moving and responsive papers.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

To summarize the parties' 116 page settlement discussion is challenging and unnecessary in this context.[2] The major points of agreement were these: Stevens would sell real property at 3515 Tripp Road, Woodside, California, and Debtor would sell real property at 1010 Corporation Way, Palo Alto, and 605 Forest Avenue, Palo Alto. Stevens would keep the proceeds of the Woodside Property. Debtor would keep the proceeds of the Forest Avenue Property. Stevens and Debtor would split the proceeds of the Corporation Way property 60%-40%.

In addition, Debtor took certain broadcast equipment, and agreed to pay Stevens $300,000 for that equipment by giving her a promissory note. The broadcast licenses held by the parties or their affiliates would be sold and the proceeds distributed to Stevens and Debtor 70%-30%.

Stevens was granted ownership of certain broadcasts of Wedding TV, a program produced by the parties, and Debtor agreed to deliver to Stevens the digital computer equipment on which those episodes were recorded. The parties retained their personal effects, and agreed to split furnishings based on ownership and use.

The parties agreed to present any disputes about their Settlement to Judge Silver, a JAMS arbitrator who had worked with them previously. The parties also agreed to prepare a final settlement document reflecting the terms of their deal. They also agreed, however, that if no final settlement agreement was drafted, that they would be bound by the deal they placed on the record.

B. Status of Compliance with Settlement

According to the declaration of David Hamerslough,[3] Stevens' state court counsel, the Settlement has been complied with in material respects by Stevens. Among other things,

---

[2] It would not be an exaggeration to say that much of the transcript reflects nit-picking and quibbling by the parties, who obviously did not get along. The summary outlined here touches only on the main points and ignores finer distinctions and points that, in hindsight, look like posturing.

[3] Debtor did not object to the Declaration of David Hamerslough or any other declarant, and the court accepts the testimony for the purposes of this decision.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

Stevens sold the real property located 3575 Tripp Road, Woodside, California, and deposited $620,000 in proceeds in a separate bank account, pending further order from the state court. Stevens also sold cellular licenses. Counsel is holding $176,000 in funds pending further order from the state court. 1010 Corporation Way, Palo Alto, California, was foreclosed by the lender representing the Small Business Administration before it could be sold. Debtor did not sell the real property at 605 Forest Avenue, Palo Alto, California. A broadcast license in Topeka, Kansas has not been sold because Debtor was not able to secure the right to sell it from co-owners. Debtor did not give Stevens a $300,000 promissory note.

C.  Debtor's Efforts to Rescind Settlement

Debtor has made several attempts to set aside the Settlement, generally based on perceived unfairness or a lack of impartiality on the part of Judge Jacobs-May or Judge Silver.

On May 7, 2009, the Superior Court granted Stevens' motion to enforce the Settlement. Debtor moved for a writ of mandamus in the California Court of Appeals but that court denied the writ in an order dated December 2, 2009. The California Supreme Court denied Debtor's petition for review.

On August 26, 2009, Debtor moved to vacate the Settlement. On November 10, 2009, the Superior Court denied that motion.

On April 19, 2010, Debtor again moved the Santa Clara Superior Court to vacate the Settlement. The motion was denied by an order docketed on June 17, 2010. The Court of Appeals denied Debtor's petition for a writ of mandamus on September 17, 2010.

D.  Summary of Parties' Positions

1.  Debtor's Rejection Motion

In his Rejection Motion, Debtor argues that the Settlement is an executory contract that has not been substantially performed by both sides. Debtor identified four obligations of Stevens that he considers unperformed: (1) the failure to reduce the Settlement to writing; (2) the failure to market and sell and construct a new wireless telephone entity in Portland, Oregon; (3) the failure to cooperate with Debtor in securing the release of her personal liability relating to loans secured by the 1010 Corporation Way property; and (4) failure to

accept delivery of 325 video tapes and digital instruments from Debtor.[4] Debtor further asserts that rejection of the Settlement is in the best interest of the estate because it would relieve the estate of Stevens' claim and make available to Debtor half of the approximately $620,000 currently being held in an account at Comerica Bank to pay claims.[5]

Stevens filed an opposition to the Rejection Motion, arguing that it is unnecessary because Stevens filed the Stay Relief Motion to allow her to obtain a judgment from state court based on the Settlement. Stevens further argued that rejection of the Settlement would not automatically result in giving Debtor possession of half of the $620,000 proceeds.

2. Stevens' Stay Relief Motion

In response, Stevens filed the Stay Relief Motion, asserting that the best course of action for the estate is to permit the state court to enter a judgment on the Settlement so it can be enforced. In the Stay Relief Motion, Stevens argued that the terms of the Settlement have been substantially completed. To the extent any obligations were not performed or were impossible to perform at this point, Stevens contended that the state court retains jurisdiction under the Settlement to liquidate these alleged failures to perform.

Debtor opposed the Stay Relief Motion, arguing that (1) because the judge who presided over the Settlement disqualified herself, the Settlement is void; (2) the state court has mismanaged the case since the disputes between Debtor and Stevens had been pending in state court for over six and half years; (3) Stevens does not have any security interest in the escrow funds and Debtor has "economic ownership interest" in the funds; and (4) Stevens is forum shopping because the state court has refused to invalidate the Settlement, even though Debtor alleged the Settlement was procured by fraud and was overseen by a disqualified judge in a biased state court that was concerned with protecting the reputation of its judges.

---

[4] The parties do not dispute that the Debtor has not substantially performed under the Settlement as of January 22, 2013, the petition date.

[5] The funds are attributable to Stevens' sale of 3515 Tripp Road, Woodside, California.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

### 3. Creditor Opposition to Rejection Motion

The law firm of Campeau Goodsell Smith, L.C. ("Campeau") also filed an opposition. Campeau is the former counsel for Stevens and asserts that it has obtained an assignment order and has rights to Stevens' portion of the funds from the Settlement. Campeau contends that the Settlement is not an executory contract because (1) it is a court order; (2) Stevens has substantially performed; and (3) the only remaining obligations are payments of funds from Debtor to Stevens. Like Stevens, Campeau points out that rejection would not result in any portion of the $620,000 proceeds going to the estate.

Debtor replied that Campeau lacks standing to oppose because it has no direct pecuniary interest in the Settlement.[6] Debtor clarified in the reply that by rejecting the Settlement, he is not seeking to determine any rights under the Settlement.

### 4. Hearing on Rejection Motion and Stay Relief Motion

At the hearing on the Motion, Stevens represented that judgment has not been entered and conceded that the Settlement is a contract, not an order. Although Stevens argued in the Stay Relief Motion that the Settlement was substantially performed, her counsel stated at the hearing that the Settlement is "probably not substantially completed" but that it "is largely completed." Counsel did not explain the difference between "substantially completed" versus "largely completed." Nevertheless, Stevens asserts that having the state court enter a judgment on the Settlement would be the most efficient way to adjudicate the disputes between Stevens and Debtor because the rejection of the Settlement does not undo the rights and liabilities under the Settlement. Stevens further argues even if the court grants the Rejection Motion, relief from stay should be granted so a judgment can be entered.

---

[6] At the hearing on July 24, 2013, Campeau clarified that it has an assignment order from state court and therefore it is an assignee of Stevens' rights under the Settlement, giving it standing to oppose the Rejection Motion. Because the relevant arguments were made by both Campeau and Stevens, it is not necessary to make a determination on Campeau's standing.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

## II. DISCUSSION

### A. A Settlement Agreement is a Contract

A settlement agreement is considered a contract under many state laws, and it is treated as a contract in bankruptcy unless some federal interest requires a different result. *In re Columbia Gas System, Inc.*, 50 F.3d 233, 238 (3rd Cir. 1995). Under California law, "[a] settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Weddington Prod., Inc. v. Flick*, 60 Cal. App. 4th 793, 810 (1998). Certain types of settlements may be converted to judgments under California Code of Civil Procedure § 664.6.

The Settlement here consists of an exchange of promises between the parties, but has not been converted to a judgment under CCP § 664.6. Based on the record presented, considering that Debtor and Stevens – the two parties to the Settlement – both conceded that the Settlement is a contract, the court finds that the Settlement is a contract.

### B. The Settlement is not an Executory Contract and Cannot be Rejected

Debtor correctly points out that a contract can be rejected by the bankruptcy estate if it is "executory." This is provided for by § 365(a) of the Bankruptcy Code, which permits a trustee to either assume or reject any executory contract. 11 U.S.C. § 365(a). This right is extended to a debtor in possession like Debtor. 11 U.S.C. § 1107(a).

To be covered by § 365(a) and rejectable, a contract must be "executory." In the Ninth Circuit, a contract is executory if "the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *In re Wegner*, 839 F.2d 533, 536 (9th Cir. 1988). When one party has substantially performed, the contract is not executory. According to the Ninth Circuit, "This means that when a party has 'substantially performed' its side of the bargain, such that the party's failure to perform further would not constitute a material breach excusing performance by the other party, a contract is not executory." *In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir. 1989).

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

Courts have defined "material performance" as "the essence of what the other party sought and expected when he entered into the ... Agreement, and without it, the party will lose the benefit of the bargain that he thought he had struck." *In re WorldCom, Inc.* 343 B.R. 486, 496–97 (Bankr. S.D.N.Y. 2006) (quoting *In re Teligent,* 268 B.R. 723, 730–31 (Bankr. S.D.N.Y.2001)). To determine whether the failure to perform any remaining obligations would constitute a material breach, the Ninth Circuit looks to contract principles under the relevant nonbankruptcy law. *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1348, n. 4 (9th Cir. 1983)("[A] bankruptcy court should determine whether one of the parties' failure to perform its remaining obligations would give rise to a "material breach" excusing performance by other party under the contract law applicable to the contract under the choice of law rules of the state in which the court sits."). Because the Settlement was entered into between two parties who lived in California, whose substantial assets were in California, and was entered into before a judge of the Santa Clara County Superior Court, California law controls.

Under California law, the question of whether a breach of an obligation is a material breach is a question of fact. *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). Courts consider the following factors to determine the materiality of a failure to perform: "(1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the willful, negligent, or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract." *Sackett v. Spindler*, 248 Cal.Ap.2d 220, 229 (1967), *citing* Restatement (First) of Contracts § 275.[7]

---

[7] Restatement (Second) of Contracts § 241 provides similar factors in determining whether a failure to render performance is material: (1) the extent to which the injured party

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

No one disputes that Debtor failed to perform under the Settlement. As of the petition date of January 22, 2013, therefore, Debtor had substantial and continuing obligations that he failed to meet.

The same cannot be said for Stevens. Debtor identifies a list of unperformed obligations by Stevens, but he neither addresses the question of materiality of the obligations nor presented any evidence that these obligations were material. After reviewing the entire transcript of the Settlement and the record in this case, the court determines that the portions of the Settlement Debtor claims Stevens failed to perform are either immaterial, or were misstated in Debtor's argument. Thus, to the extent that Stevens has failed to perform, her failure is not a material breach and cannot render the Settlement executory.

Debtor contends the Settlement was breached because Stevens never reduced it to a writing. The Settlement did not require a writing. At the end of the two and a half day settlement conference, Judge Jacobs-May stated "Okay, so we have an agreement. It's binding as of now. The dates that we set up [for sales and other dispositions of property] are binding as of now, even if the settlement agreement follows. So, you have to be prepared to move. You have to effectuate the inspection of Woodside and 1010." (Transcript p. 114). The court asked Stevens' counsel to draft a written version of the Settlement, but the settlement was not in any way contingent on that being done. Because a writing was not required for enforcement, it could not have been a bargained for objective of the parties and cannot constitute a material breach.

Debtor also contends Stevens breached the Settlement by failing to construct a wireless facility in Portland, Oregon, which resulted in the loss of a license. There are two answers to this contention. First, the Settlement does not impose any obligation on Stevens to

---

will be deprived of the benefit he reasonably expected; (2) the extent to which the injured party can be compensated for the part of the benefit of which he will be deprived; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the party failing to perform will cure his failure, taking account of all the circumstances including reasonable assurances; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

1 construct a wireless facility in Portland, Oregon. Second, assuming there was such a promise, the failure to carry it out constitutes a breach by Stevens of her obligations, which might entitle Debtor to damages, but it has no effect on any future performance obligations because the license itself has expired, according to Debtor.

Debtor also alleges that Stevens failed to comply "in securing a release of her personal liability" pursuant to deeds of trust on the 1010 Corporation Way property. The issue here is rather simple. The Settlement required that 1010 Corporation Way be sold, and the proceeds split between Stevens and Debtor 60%-40%. The Settlement noted that Stevens had a $3.5 million guaranty obligation that was partly secured by the 1010 Corporation property. (Transcript, p. 15). Because the property was jointly owned, the parties agreed to market it cooperatively. If they had a dispute over the marketing or sale, they agreed to take the dispute to the arbitrator, Judge Silver. Finally, if Debtor was "able to convince a lender to release [Stevens] from the guaranty or able to refi it" *before it was sold* he was free to deal with the property as he saw fit. The key was that Stevens be released of any liability. The Settlement did not require any effort or cooperation from Stevens on this point. Instead, the Settlement refers expressly to Debtor securing Stevens' release. In any event, the parties agree the property was lost to a foreclosure sale before this bankruptcy case commenced. To the extent Stevens failed to comply with her obligations, her failure may constitute a breach. She cannot comply with the obligation now because the property is gone.

Finally, the Settlement provides that Debtor was to produce the "digital content" relating to Wedding Television to Stevens. Debtor argues that Stevens failed to accept the delivery of the video tapes. The flaw here is that Stevens had no obligation to accept the tapes. Stated precisely, Debtor was obliged to produce the digital content to Stevens. It does not obligate Stevens to accept delivery of video tapes and digital instruments. If Stevens refused to accept something that she was entitled to take, she has waived a right under the Settlement. Such a waiver is not an obligation and does not render the Settlement "executory."

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

From a careful review of the Transcript and Settlement, it is clear that the material purpose of the Settlement was the division of the major assets between Stevens and Debtor, which included three real properties, cellular licenses, and contents and equipment of their television business. The unperformed obligations identified by the Debtor were either not required under the Settlement or, to the extent they were unperformed by Stevens, they were not material. Viewing the Settlement as a whole, these alleged failures to perform by Stevens would not constitute a material breach justifying a discharge of Debtor's obligations under the Settlement. Accordingly, the Settlement is not an executory contract and is not subject to rejection under § 365(a).

### C. Effect of Rejection

Debtor believes, incorrectly, that by rejecting the Settlement, he will be entitled to take assets generated by Stevens' sale of real property and other assets. He argues: "Wade seeks to reject the Settlement Agreement in its entirety as to whatever rights and benefits currently inure to Wade to Stevens." *Response to Objection to Motion to Reject Executory Contract,* filed on July 22, 2013. But the effects of rejection are not so far reaching.

A rejection of an executory contract constitutes a breach of such contract that is effective immediately before the petition date. *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006)("[R]ejection of an executory contract serves two purposes. It relieves the debtor of burdensome future obligations while he is trying to recover financially and it constitutes a breach of a contract which permits the other party to file a creditor's claim." (internal quotation marks and citations omitted)); 11 U.S.C. § 365(g).

Rejection "do[es] not affect the parties' substantive rights under the contract or lease, such as the amount owing or a measure of damages for breach, or the enforceability of an arbitration cause, and does not waive any defenses to the contract." 3 Collier on Bankruptcy ¶ 365.10[1] (A. Resnick & H. Sommer eds., 16th ed.). Similarly, rejection does not rescind or void the contract and leaves the creditor with potential remedies under applicable state law. *Onecast Media*, 439 F.3d at 563; *In re Continental Airlines,* 981 F.2d 1450, 1459 (5th Cir.1993) ("Significantly, § 365(g)(1) speaks only in terms of 'breach.' The statute does not

invalidate the contract, or treat the contract as if it did not exist. To assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached").

There is no question that Debtor has future obligations remaining under the Settlement and rejection would relieve Debtor of these obligations. However, rejection affects the unperformed portions of the Settlement only. *See, e.g., In re Executive Tech. Data Sys.,* 79 B.R. 276, 282 (Bankr. E.D. Mich.1987) ("Section 365 addresses only future performance obligations of the parties. It does not have any impact upon the executed portions of a contract."). The breach created by rejection does not terminate the rights and obligations under the Settlement. Rejection does not alter the apportionment of the properties in the Settlement, terms and provisions in the Settlement, and obligations that have already been performed. It certainly does not give Debtor access to half of the proceeds currently held in escrow by Stevens' counsel. Specifically, whatever methods and percentages provided by the Settlement in splitting the escrowed proceeds currently being held by Stevens' counsel remain and are not affected by any rejection. Rejection does not cancel, repudiate, or rescind the Settlement.

D. Relief from Stay

In considering whether to grant relief from stay to allow state court proceedings to continue, the court must consider four factors: (1) judicial economy, (2) expertise of the state court, (3) prejudice to the parties, and (4) whether bankruptcy issues are involved. *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). The court finds there are grounds to grant relief from stay. The court will consider these factors in turn.

1. Judicial Economy

Debtor and Stevens litigated their disputes in state court. At the conclusion of that litigation, and just prior to a scheduled trial, the parties settled their cases. The settlement was overseen by Judge Jacobs-May, with the assistance of an arbitrator. Given the Superior Court-supervised settlement of this matter, this court sees little advantage or value in its intervention.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

### 2. Expertise of the State Court

The Settlement resolved two pending lawsuits in the Superior Court. In addition to managing the litigation , the Superior Court held a two and a half-day settlement conference. Obviously, the state court has experience with the case and the parties. Section 664.6 permits the state court to enter judgment on a settlement agreement without the need for a new lawsuit. *Weddington Productions, Inc. v. Flick*, 60 Cal.App. 4th 793, 809 (1998). In doing so, the state court determines in the first instance whether the parties have entered into an enforceable settlement. *Elyaoudayan v. Hoffman*, 104 Cal.App. 4th 1421, 1428 (2003).

Moreover, the issues in the state court involved nothing more complicated than resolving competing ownership claims to assets. This sort of analysis does not require the expertise of a bankruptcy judge, especially where the issues involve state law questions. To the extent the state court liquidates Stevens' claim, this court will adjudicate the claim as part of the claim allowance process. What comes of that judgment will most likely be decided when Stevens files a proof of claim in this case.

### 3. Prejudice to the Parties

No prejudice will arise by returning this case to state court. Many of Debtor's frustrations with the Settlement, include his assertion that Judge Jacobs-May was biased, have been considered and rejected by the state courts. The escrowed funds are being held by Stevens' counsel pursuant to a state court order, and the parties most likely need a state court order to release those funds.

### 4. Whether Bankruptcy Issues are Involved

The Settlement the parties agreed to does not involve bankruptcy issues, but state law issues of ownership and compliance with a settlement.

In sum, the parties have spent six years litigating in state court but have not spent significant amount of time and energy litigating in this court. Given that the Settlement was judicially supervised in the Superior Court, the court does not find undue prejudice against the Debtor.

ORDER DENYING MOTION TO REJECT CONTRACT
AND GRANTING RELIEF FROM STAY

1 **III.  CONCLUSION**

2     For the foregoing reasons,

3     IT IS HEREBY ORDERED that the Debtor's Motion to Reject Executory Contract is
4 DENIED.

5     IT IS FURTHER ORDERED that Stevens' Motion for Relief from Stay to Seek
6 Judgment in State Court is GRANTED.  The 14-day stay of Fed. R. Bankr. P. 4001(a)(3) is
7 not waived.

9     *** END OF ORDER ***

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1 COURT SERVICE LIST

3 ECF Notifications Electronically

5 **By Mail:**

6 Booker Theodore Wade, Jr.
605 Forest Avenue
Palo Alto, CA 94301