Booker T. Wade Jr.
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250
bookertwade@hotmail.com

In Propria Persona



UNITED STATS BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re

BOOKER THEODORE WADE, JR

　　Debtor

Case No. 013-50376 SLJ

Chapter 11

RESPONSE TO "MOTION BY SECURED CREDITOR FOREST VILLA HOMEOWNERS ASSOCIATION FOR RELIEF FROM AUTOMATIC STAY (11 U.S.C. 362(D)(1)(2)"

Date:　　October 29, 2013
Time:　　10:00 a.m.
Judge:　　Hon. Stephen Johnson
Ctrm:　　3099

　　Booker T. Wade, Jr., Debtor herein, answering the "Motion by Secured Creditor Forest Villa Homeowners Association for Relief From Automatic Stay (11 U.S.C. 362(D) (1) (2)," alleges and maintains as detailed below. Except as admitted below, Debtor denies the allegations set forth in the motion.

## I.　　Introduction

　　On October 8, 2013, Forest Villa Homeowners Association (the Association) filed a <u>Motion By Secured Creditor for Relief From the Automatic Stay (11U.S.C. Sections 362(d)(1) and (2) [Relief Request]</u>. The Association maintains that the Debtor has pre-petition and post-petition unpaid liabilities as to Debtor's primary condominium residence; and, as such, cause exists for relief from the automatic stay.

As detailed below, the Debtor maintains the Association is not entitled to relief from the automatic stay given that (a) the Association has not complied with required statutory and covenant procedural requirements (b) the Association is not a secured creditor but an unsecured creditor (c) the debt amounts advanced by the Association are factually incorrect (d) equity in the property exists and the property is needed for an effective reorganization (e) all post-petition delinquencies have been paid and (f) a security deposit is offered for an adequate assurance. As such, the Relief Request should be denied.

## II. Requirements for Relief

The basic standard for relief from the automatic stay is that relief is to be granted only *for cause. 11 U.S.C. 362(d)*. While the Code does not define the term *for cause*, Section 361 of the Code gives examples, including the lack of adequate protection of interests in property and where the Debtor has no equity in the subject property. The Association has the burden of proof as to a lack of equity in the property, while the Debtor has the other burdens - with the burdens shifting to the Debtor as to other factors only upon the Association satisfying its burden. The Code also provides that the Association must comply with all statutory, covenants and by laws procedural requirements. *In re Plummer,* 484 B.R. 882 (Fla. W.D. 2013). Further, even as a secured creditor in a Chapter 11 reorganization proceeding, the Association's non-consensual statutory lien may be stripped off where the lien of the first lender exceeds the value of the property. *Zimmer v PSB Lending*, 313 F. 3d 1220 (9th Cir. 2010); Compare, *Laskin v. First National Bank of Keystone,* 222 B.R. 872, 876 (BAP. 9th Cir. 1998).

## III. Procedural Non-Compliance

*A. Lack of Authority for Lien Filing*

The Association is empowered by California law to levy assessments but only as permitted by the Association's governing covenants, conditions and restrictions ("CC&Rs") and bylaws and *Civ. Code Section 1366(a)*. That Code section vests governing authority in the Association's Board of Directors, unless the governing documents otherwise delegates the authority. The CC&Rs submitted as Exhibit A by the Association shows some non-related authority delegated to the Board of Directors. See, e.g., Exhibit A, page 14, Section 11 [relating to contracting for services]. But, the Association makes no showing of any kind as to whom or how liens are authorized on behalf of the Association. Declaration of Booker Wade, paragraph 2, Attachment A. Thus, there is no valid predicate for the lien and concomitantly, the Relief Request.

### B. *Pre-Lien Notice Requirements*

The Association's assessment lien was recorded in 2009 [See <u>Stay Relief</u>, Exhibit A], *Civil Code Sections 1367.1 and 1367.4* thusly expressly impose certain conditions that an association must satisfy before the assessment lien may be enforced by foreclosure. See *Civil Code, Section 1367.1(m)*. These conditions include prior notice requirements, beginning with the pre-lien notice mandated by Section 1367.1(a); affording Debtor a mandated dispute resolution opportunity; an open meeting of the Board of Directors; and recorded board minutes. The Association may initiate foreclosure of a lien for a delinquent assessment only where the lien "has been validly recorded...," i.e., in compliance with these provisions. *Civil Code Section 1367.4(c)(2)*. Despite these requirements, the Association has not provided any showing to support that it has complied with any of these provisions. Indeed, the Association does not even make allegations that it has complied. Debtor maintains that the Association has not complied and that none of the minutes of the Board of Directors distributed to unit owners reflect compliance. Wade Declaration, paragraph 2, Attachment A. Nor has Debtor received any pre-lien notices by regular mail or certified mail, as required. Wade Declaration, paragraph 2. Thus, there is no basis for the lien and concomitantly the <u>Relief Request</u>.

### IV. **HOA Creditor Status**

In Schedule F, Debtor listed the Association as an unsecured creditor. In its Proof of Loss filed on February 15, 2013, the Association listed itself as a secured creditor. Debtor maintains that the recorded lien was not authorized by the Association's Board of Directors, as detailed above, and is thereby invalid. As such, the Association is not a secured creditor with lien rights. Debtor will file an adversary action to resolve the status of the Association's lien.

### V. **Lack of Equity and Adequate Protection**

In its request, the Association generally alludes to the examples of 'adequate protection' and 'lack of equity.' Two allegations are made: (1) "...the Debtor has failed and refused to provide for and in fact make payment of Association dues..." [<u>Relief Request</u>, at 2, Lines 15-16]; and, (2) given the foregoing, "...the Association ...cannot be assured of repayment of the outstanding post-petition balance due and owing...". <u>Relief Request</u>, at 2, Lines 15-16; 25-28. Stated more succinctly, the Association sole argument in support of the <u>Relief Request</u> is that Debtor has post-petition[1]

---

[1] The Association does not make a specific claim that it is entitled to payments on any pre-petition obligations. Debtor notes that on his Schedule F, the Association is listed as an unsecured creditor for $45,000. On February 15, 2013, the Association filed a Proof of Claim [Number 4] as a secured creditor for $60,930.

obligations of $1,775.00[2] and on that basis alone, the Relief Request should be granted. However, the Association does not submit any authority is support of its position. It should therefore be rejected.

   A. *Lack of Equity*

The Association must demonstrate that the Debtor lacks equity in his property. In effect, the Association must show that it would incur some "substantial harm." *Colliers on Bankruptcy, Practice, Automatic Stay/Relief From Stay*, Section 38.16(1). Both elements must be proven, lack of equity is not enough. *3 Collier on Bankruptcy*, Section 362.08 (Matthew Binder 16th Ed.).

A debtor's equity in the property is the difference between the property value and the total encumbrances of the property *Steward v Gurley*, 745 F.2d 1194 (9th Cir. 1984). Herein, the Association cites as value the property as the amount Debtor lists on his Schedule D, $710,250. The Association maintains three liens exist, as follows:

- the Association's claim for $60,571;
- the claim of Hoge Fenton Jones Appell Inc for $739,693; and
- the first lender's claim of $ $674,945, all of which totals $1,447,209.

Relief Request, Declaration of Rob Babcock, at 4. Thus, according to the Association, total liens on the property produce a negative value. As such, the Association maintains there is no equity in the property and relief from stay is proper.

The problem with the Association's calculations is that while the first mortgage lien is valid, the lien of Hoge Fenton, filed on November 10, 2012, within 90 days of the petition on January 22, 2013, is invalid as a preference and Debtor will include in his reorganization plan an avoidance of the lien. Further, this lien is a judicial lien and under Section 522(f) of the Code may be avoided as it would impair Debtor exemption. *In re Higgins*, 201 B.R. 965 (9th Cir. BAP 1996).

In order to resolve disputes as to miscalculations, unreasonable charges and interest, the Association agreed in writing and reduced its lien claim amount to $45,000 and agreed not to pursue litigation as to any other amounts. Wade Declaration, paragraph 3. That contract has not been subject to any adjudication or litigation and thus remains valid.[3] Thus, the only cognizable lien amounts are those of the first lender of $674,945 plus $45,000 for the Association, or $719,946, or $9,696 as a negative value. Notwithstanding this negative number, Debtor submits that value

---

[2] See Relief Request, Exhibit B, last page, last line.
[3] In determining the extent of any equity, the Court is permitted to consider the existence of claims, offsets and defenses, even in this summary proceeding. *Bialac v. Harsh Inv. Corp.*, 694 F.2d 625 (9th Cir. 1982).

-4-

evaluation is not an exact science and that the $9,696 amount is *de minims* and not a showing of lack of equity. Further, Debtor now values the property at $781,215, given appreciation in the market since January 22, 2013, a ten percent increase in value. Wade Declaration, paragraph 5, thereby producing equity. Further, in seeking relief, the Association is required to provide evidence that the value of the property is <u>declining</u>. (1985) *United Savings Association v. Timbers of Inwood Forest Associated, Ltd.*, 484 U.S. 365. The Association has not and cannot make any such showing.

### B. Effective Reorganization

Assuming *arguendo* the Association has satisfied its burden to demonstrate a lack of equity in the property, the Debtor is required to show that the property is necessary for an "effective reorganization" under Chapter 11. *11 U.S.C. Sections 362(a)*. However, a stay relief hearing should not be converted into a plan confirmation hearing, a hearing to determine the confirmability of Debtor's plan to address the "effective reorganization" component requirement. Precedents provide that an "effective reorganization" component requires only a showing by the debtor that a proposed plan is not "patently" incapable of confirmation. *In re Sun Valley Newspapers Inc.*, 171 B.R. 71, 74-75 (9th Cir. BAP 1994). Debtor need only to offer some evidence to indicate that a successful reorganization within a reasonable time is plausible. *Ibid.*

In his Status Conference Statement, filed on March 25, 2013, and incorporated herein by reference, Debtor submitted a proposed reorganization plan. That proposed plan, at page 6, provides for full payments of secured creditor claims, a treatment of that all unsecured claims, plan conditions and descriptions of class interests. The statement also detailed the source of the funds and amounts to be used to implement the proposed plan. Those funds currently are in two escrow accounts totally $800,000. The funds are held in trust by counsel for creditor Arlene Stevens (Stevens) arising out of a property settlement agreement between Stevens and Debtor.

The proposed plan is not simply an argument that the automatic stay should continue because Debtor needs the property in order to propose a plan based on future "high hopes." Instead, the actual funds are in the escrow accounts, collecting interest, and Debtor has settlement agreement contract rights presumptively to part of the funds, and conditionally to most, if not all, of the funds.

Entitlement to the escrowed funds was the subject in part of a "Motion to Reject Executory Contract," filed by the Debtor on June 6, 2013. While the Court declined to approve a rejection, the Court permitted Stevens and Debtor to return to state court to determine, *inter alia*, Debtor's entitlement, if any, to any of the escrowed funds. <u>Order Granting Motion for Relief from Stay,</u>

-5-

entered on September 5, 2013. As to timing, the question of availability of access to the funds is in prospect. On October 21, 2013, counsel for Stevens advised Debtor that he intends to seek with the state court a hearing on December 5, 2013, on the issues. Wade Declaration, paragraph 6. Although one hearing may not be dispositive, the process will begin shortly. Further, the Debtor as an individual, must have some place of residence. The carrying costs of the property at $3,000 monthly (including the Association dues) is substantially equal to renting. Wade Declaration, paragraph 7. As such, the property is needed for housing so that Debtor has a location to provide income to implement his reorganization plan.

Debtor maintains that under these circumstances, his proposed plan is not "patently" incapable of confirmation and thereby an effective reorganization is plausible and in prospect.

C. *Adequate Protection*

Debtor and the Association disagree on the exact amount owed for post-petition obligations. The Association claims the amount is $1,775. Babcock Declaration, at 3, Line 13. Debtor says the amount as of the date of the Relief Request is $1,500. Wade Declaration, paragraph 8. The Association has not submitted sufficient evidence or documentation in support of its specifics. In its Exhibit B, last page, the Association submits only a statement of credits and a running balance of $1,775; it does not detail the *charges* behind these amounts. Debtor maintains that this is a miscalculation and does not represent generally accepted accounting procedures. Further, since the filing of the Relief Request, Debtor has paid the $1,500 that he maintains is the correct amount due. Wade Declaration, paragraph 8. In any event, the dispute as to post-petition obligations now is as to two hundred and twenty five dollars ($225.00).

The Association maintains that solely because Debtor is (has been) delinquent for two payments and late for one payment, there is no adequate assurance that Debtor will pay future payments. Debtor responds that that is a *non-sequitar*, as it ignores both the other post-petition payments made to the Association and the first mortgage lender.

Notwithstanding the foregoing, to assure adequate protection to the Association, Debtor offers to deposit with the Association the sum of one thousand dollars ($1,000) as a security deposit for future monthly payments. This amount represents two months of Association dues. Wade Declaration, paragraph 8. Debtor notes that payments on the first mortgage lien and taxes and insurance are current and have remained current throughout this proceeding. Wade Declaration, paragraph 8. Thus, there would be no declining value in the property to prejudice the Association's lien.

Given the remaining disputed amount and the offer of a security deposit, Debtor maintains that cause for stay relief does not exist given the non-documented and disputed amount of post-petition unpaid obligations.

### VI. Discharge

Prior to 1994, the Court had the power to discharge any and all homeowner assessments - past, present or future - or pre-petition or post-petition. *In Re Rosteck* 899 F.2d. 694 (7th Cir., 1990). However, Congress then amended the Code to provide in relevant part in Section 523(a)(16) to preclude a discharge of an individual debtor from any debt for a fee or association assessment that becomes payable *post-petition*. Congress did not change the provisions as to *pre-petition* association assessments. These debts may still be discharged. *Forest Condo Association v Spencer*, 435 B.R. 650, 658-659 (BAP, 9th Cir. 2010). Thus, the Association's use of *pre-petition debt* does not constitute a basis for stay relief as Debtor's plan would propose a discharge, but only if necessary.

### VII. Lien Stripping

A. <u>Applicable Law</u>

While a discharge would relieve the Debtor of personal liability, *in some circumstances* the Association's lien, if it prevails as a secured lender, would "ride through" or survive the bankruptcy proceeding as a covenant running with the property. However, *Chapter 11* proceedings are different. In these proceedings, statutory liens such as the one of the Association, may be stripped or voided where the amount of a senior lien exceeds the value of the property. *Zimmer v PSB Lending*, 313 F. 3d 1220 (9th Cir. 2010). See also, *In re McNeal*, 477 Fed. Appx. 562, 563-64 (11th Cir. May 11, 2012) (citing *Folendore v. United States Small Business Administration.*, 862 F.2d 1537 (11th Cir. 1989). The Association's lien is one created by state statute. *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 300-301.

*Zimmer* holds that in reorganizations under applicable Code provisions, a secured claim is not a function of whether or not a security lien attaches, but a determination of the value of the property. Thus, where the value of the senior lien exceeds the property value, the lien may be stripped-off. *Ibid*.

The Supreme Court has held that Section 506(d) of the Code does not allow a *Chapter 7 debtor* to "strip down" an allowed and consensual lien. <u>*Dewsnup v. Timm*</u>, 502 U.S. 410, 112 (1992). The Court reasoned that if the debtor was allowed to freeze the value of the collateral to the judicially determined amount, rather than the amount bargained for, the lien holder would not get

the benefit of any increase in the value of the property by the time of the foreclosure sale. *Dewsnup*, 502.

Section 506(d) of the Code provides that a wholly unsecured lien is subject to strip-off. The issue of whether a wholly unsecured lien in cases outside of Chapter 7 is subject to strip off has not been fully resolved by the circuit courts.

The Western District of Washington court has concluded that strip-offs of a lien is not contingent upon the availability of a discharge. *Litton Loan v Blendheim*, No. 11-2004 (W.D. Wash. March 29, 2013). In upholding the bankruptcy court's finding in favor of the debtors, the district court noted "an emerging trend" in the Ninth Circuit permitting lien stripping outside of Chapter 7 proceedings. See *In re Tran*, 321 B.R. 230, 235 (N.D. Cal 2010); *In re Hill*, 440 B.R. 176, 182 (S.D. Cal 2010); In re Okosisi, 451 B.R. 90, 100 (D. Nev 2011). The District Court found that these cases were correctly decided, reasoning that the Supreme Court in *Johnson v Home State Bank*, 501 U.S. 78 (1991), explicitly sanctioned Chapter 20 cases and that nothing in the later amendments to the Code imposed a discharge requirement upon the ability to strip an lien that is otherwise subject to stripping. The District court found that the lien could be stripped upon completion of plan payments.

Outside this circuit, courts have concluded that where the creditor's claim has not been allowed or is not in Chapter 7, a wholly unsecured lien is void and may be stripped off. *In re Smith)*, 247 B.R. 191 (W.D. Va. 2000); *In re Farha)*, 246 B.R. 547, 549. Compare, *In re Concannon*, 338 B.R. 90 (9th Cir. BAP 2006)[holding that a Chapter 7 debtor may not strip off a wholly unsecured lien]. The later decision in *Zimmer* by the Ninth Circuit plainly provides that where a lien would be worthless as to value, the lien may be stripped off.

Condominium association liens do not enjoy any special status under the Bankruptcy Code. *In re Palmer*, 167 B.R. 579 In this circuit the Bankruptcy Appellate Panel has held that in Chapter 7 cases the reasoning of *Dewsnup* applies regardless of whether the lien is wholly unsecured or merely under-secured. *Laskin v. First National Bank of Keystone*, 222 B.R. 872, 876 (B.A.P. 9th Cir. 1998).

Unlike cases in a Chapter 7 proceeding, where there are no assets to administer, the claims allowance process is meaningless. The trustee's report of no distribution notifies creditors that they need not go through the exercise of filing claims as there are no unencumbered assets to liquidate to generate payments to the creditors. That is not the situation in reorganization cases as assets are involved. As concluded by the Bankruptcy Appellate Panel, Section 506(d) "… provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se." *Laskin v. First National Bank of Keystone*,

Case: 13-50376    Doc# 84    Filed: 10/28/13    Entered: 10/28/13 15:00:50    Page 8 of 14

222 B.R. 872, 876 (B.A.P. 9th Cir. 1998). Debtor maintains that Section 506(d) of the Code, in conjunction with Sections 727, 1129, 1225, or 1325, may be used to avoid a lien.

Section 522(f)(1) of the Code expressly permits a debtor in reorganization to avoid statutory liens which are non-consensual and/or non-purchase ones. While the Association's lien is a non-consensual statutory lien with a security interest attached upon the assessment of fees, it remains a statutory lien created by solely by operation of state statute. *In re Eastman*, 182 B.R. 386, 390-91 (Bankr. S.D. N.Y. 1995); *In re Johnson*, 108 B.R. 81 (Bankr. W.D. Pa. 1989); *In re Nentwick*, 79 B.R. 145, 146 (Bankr. N.D. N.Y. 1987); *In re Stern*, 44 B.R. 15, 18 (Bankr. D. Mass. 1984). Thus, it may be voided. As such, applicable precedents permit the Debtor to strip the lien as void.

Finally, Debtor scheduled his condo residence as exempt property. As Debtor is a senior, age 71, the exemption amount pursuant to *Civil Code Section 704.730* is $175,000. See Schedule C. As such, the Debtor may avoid the Association's lien to the extent it impairs Debtor's exemption. *In re Higgins*, 201 B.R. 965 (9th Cir. 1996). Debtor maintains, that while *Higgins* involved a non-consensual judicial lien, the case reasoning also equally applies to non-consensual statutory liens.

B. Amount of the Association Lien

The Court is permitted to consider the existence of claims, offsets and defenses, even in this summary proceeding. *Bialac v. Harsh Inv. Corp.*, 694 F.2d 625 (9th Cir. 1982). Thus, the Court should consider the Debtor's claims that the December 2012 written agreement between Debtor and the Association is valid and that the pre-petition amounts claimed by the Association are incorrect.

Additionally, pre-petition in December 2012, Debtor and his first lender entered into a loan modification agreement under which the terms, conditions and amounts owed to the lender were temporarily and conditionally reduced and suspended for five to seven years. See, Wade Declaration, paragraph 9. The modification agreement is predicated on Debtor's ownership and occupancy of the property as the Debtor's principal residence. Wade Declaration, paragraph 9. If the stay relief is granted, the modified and suspended interest rate and debt amounts will revert to pre-modification levels. This result will produce a first mortgage lien of $810,440. Wade Declaration, paragraph 9. This would be in excess of the current value of $781,275. Under these circumstances, the Association would be wholly unsecured and holding a non-consensual lien, the Debtor would be entitled to strip off the Association's lien, rendering the Association to an unsecured creditor without the standing for stay relief as a secured creditor.

-9-

## VIII. Conclusion

The Debtor has demonstrated that the Association has not complied with state procedural and notice requirements as to the filing of its statutory lien. The Debtor has also shown that the amounts claimed by the Association are inaccurate. The Association has not demonstrated a lack of equity in Debtor's property. The Debtor has shown that the property is necessary for a plausible, in prospect effective reorganization. And, the Debtor has shown that the Association's lien can be stripped or voided as a statutory lien in a Chapter 11 case. Under these circumstances, the Court should deny the request for relief from the automatic stay. To any extent the Court concludes that any factual matter is contested and requires resolution, or is otherwise unable to deny the <u>Relief Request</u>, Debtor requests the Court to treat this hearing as a preliminary hearing and set the matters for an evidentiary hearing within the next thirty days.

Respectfully submitted,

Booker T. Wade Jr.
Debtor

October 28, 2013.

# Declaration of Booker T. Wade Jr.

I, Booker T Wade, Jr., declare as follows:

1. I am an individual, age 71, the Debtor herein and I am the owner of a condominium residential unit located at 605 Forest Avenue, Palo Alto, CA;

2. As a member of the Forest Villa Homeowners Association I have not received any notice of any meeting of the association members or its Board of Directors as to any action of the association as to authorization to file a lien against my unit, Number 605. Nor have I received copies of any minutes of the Board of Directors authorizing the filing of a lien on my unit. Nor have I been afforded any opportunity to pursue resolution of my disputes with a neutral third party.

3. Prior to the filing of the Chapter 11 petition herein, I contested nearly $15,000 in unexplained charges billed to me by the building's homeowners association, the Forest Villa Homeowners Association (FVHOA). Thereafter, on December 12, 2012, FVHOA and I entered into a written agreement that some of the charges should be removed and that the total amount owed was agreed upon as forty five thousand dollars ($45,000);

4. As of the date of the execution of the request for relief from the automatic stay and the attached Declaration of Rob Babcock, I had paid my post-petition payments through July 2013. The monthly association dues are five hundred dollars [$500]. Only payments for August and September were unpaid, a total amount due of one thousand dollars [$1,000].

5. In December 2012, I entered into a loan modification agreement with my first mortgage lender wherein my mortgage payments and interest rates were reduced. During this period, the value of my residential unit was determined to be approximately $710,250. Based on my review of current literature, including online evaluations and a review of property sales distributed by broker firms in Palo Alto and adjusted for its dated condition, I conclude that my property currently is valued at $781,215, an approximate ten percent increase since January 22, 2013.

6. On October 21, 2013, counsel for Arlene Stevens advised me that counsel intended to seek with the state court a hearing on December 5, 2013, on his motion to enforce the settlement agreement between me and Arlene Sevens.

7. I do not own any other real property and the condo unit is my primary residence. The current carrying cost for unit equals approximately $3,000 monthly.

8. On October 25, 2013, I forward a cashier's check for $1,500 to FVHOA for delinquent fees. All my post-petition fees are current. The monthly assessment is five hundred dollars. My carrying costs for my first mortgage and taxes and insurance are current.

9. On November 4, 2012, I entered into a loan modification agreement with Rushmore Loan Management Services LLC, the servicer for my first lender. Under the terms of the modification agreement, I made a warranty and representation that I would maintain ownership of my condo unit and reside therein as my primary residence as per item 1. B. on the attached page 2 of the modification agreement. The modification agreement provides that upon default of all warranties and representation, the loan modifications - including the modified principal balance due - would be extinguished and the suspended and deferred modified amounts would be void. This result will produce a first mortgage lien of approximately $810,440.

I declare under penalty of perjury that the foregoing is true.

Executed at Palo Alto, California on October 28, 2013.

_____

Booker T Wade Jr.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): June 5, 2007

Recorded in the Official Records of Santa Clara County, California
as Document/Instrument No. 19490690

Loan Number: 5000050905

Property Address *[and Legal Description if recordation is necessary]* ("Property"):
605 Forest Avenue
Palo Alto, CA 94301
LEGAL DESCRIPTION AS SET FORTH IN THE MORTGAGE

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G. I have made or will make all payments required under a trial period plan.

---

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®
Wolters Kluwer Financial Services ©2011, 2010, 2009

Form 3157 3/09 (rev. 10/10)

D14200 (1201)
Page 2 of 9

Case: 13-50376   Doc# 84   Filed: 10/28/13   Entered: 10/28/13 15:00:50   Page 13 of 14

# Proof of Service

I, Fan Wen, state:

I am over the age of eighteen years, a resident of the County of San Mateo, and not a party to the within action. My business address is 3130 La Selva Street, Suite 104, San Mateo, California.

On or before the date shown below, I caused to be deposited in the U.S. Mail, first class postage prepaid a copy of the foregoing document addressed to the following:

    Law Offices of Austin P. Nagel
    111 Deerwood Rd. Suite 305
    San Ramon, CA 94583

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on this the 28th day of October 2013, at San Mateo, California.