No Original

# FILED

MAY 2 8 2014

DF

United States Bankruptcy Court
San Jose, California

Booker T. Wade Jr.
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In Re

BOOKER T. WADE JR.

DEBTOR

Case No. 13-50376 SLJ

Chapter 11

MOTION TO WITHDRAW REFERENCE
FROM STATE COURT; MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF

Date:        June 28, 2014
Time:        2:00 p.m.
Courtroom:   3099
Before:      Hon. Stephen L. Johnson

## INTRODUCTION

Much of the time, resources and court management burdens of this case has been devoted to seeking a resolution of issues presented by disputes between Debtor and Arlene Stevens [Stevens] arising under a property settlement agreement entered into in a state court proceeding before the Santa Clara County Superior. Counsel advocating in this and the state proceeding for Stevens has maintained that Debtor has obligations to Stevens, while Debtor has maintained just the opposite. As counsel now acknowledges, Stevens has not been in communications with counsel and has not authorized counsel's advocacy on her behalf. Counsel's advocacy as to all of Debtor's motions herein - including rejection of the executory contract, lifting the automatic stay and the request for a reference to the state court – was an impermissible advocacy of counsel's interests as a creditor of Stevens. As such, the reference to the state court should be withdrawn.

Nine months after the reference, the state court proceeding has not produced the requested judgment. Indeed, the state court likely is in a quagmire, given counsel's conceded lack of authority to represent Stevens and given jurisdictional and conflict of interest issues. In order to finally resolve this case, Debtor moves the Court to withdraw the reference and decide all state law contract issues.

# BACKGROUND

On June 6, 2013, Debtor filed a "Motion to Reject Executory Contract" [Contract Rejection Motion]. Thereafter, an opposition and additionally a motion to lift the automatic stay were filed in Stevens' name by Rossi Hamerslough Reisch & Chuck [Hamerslough]. The stay relief motion was signed by David Hamerslough as counsel for Stevens. On September 5, 2013, the Court denied the Contract Rejection Motion and concurrently granted stay relief to allow Stevens to seek in state court a judgment against Debtor. Thereafter, On December 7, 2013, a Motion to Enforce Settlement Agreement was filed in the state court by Hamerslough. On April 14, 2014, Debtor filed an "Ex Parte Motion to Strike Appearances of Counsel." On April 17 2014, Hamerslough filed herein an "Objection to Debtor's Motion to Strike Appearances." [Strike Motion Objection].

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  The Representations

   A.  *The motion for relief from stay was not authorized by Stevens and therefore was improper.*

In the Strike Motion Objection, at 1-2, Hamerslough represented that Stevens "…has not expressly retained this firm to represent her interest…" and that Stevens "…is presently unavailable…"[1] At the core, the representations acknowledge that Hamerslough has not been in communications with Stevens and of necessity she has not authorized on her behalf any pleadings or advocacy by Hamerslough. While the representations do not detail the last date which Hamerslough communicated with Stevens, the representations clearly state that Hamerslough has not been retained to authorize Hamerslough advocacy. Additionally, Debtor maintains that Hamerslough has not been in communications with Stevens and that Stevens has not authorized his advocacy on her behalf for at least since the filing of Debtor's petition.

Debtor maintains that Hamerslough has had communications and representation impasse issues with Stevens since approximately 2011 during and following a related bankruptcy proceeding wherein (a) this Court[2] concluded that under the Settlement Agreement, Stevens had no ownership or officer interests in TV 32 Digital Ventures Inc. and (b) after Stevens then bankruptcy counsel (William Healy) withdrew from the related bankruptcy proceeding and thereafter secured a default judgment against Stevens. See, Declaration of Booker T. Wade Jr., Exhibit A. The conclusions by

---

[1] On a recurring basis, Debtor sees and talks with Stevens in Palo Alto as detailed in the Motion to Strike Appearances of Counsel, filed on April 14, 2014.

[2] The reference is to the Hon. Arthur Judge Weissbrodt who presided over the TV 32 Digital Ventures Inc.

the Court in this related proceeding that Stevens had no ownership interests in TV 32 Digital Ventures Inc., and the default judgment by her former bankruptcy counsel, and a default judgment in state court on behalf of the U.S. Small Business Administration, all reflect that Stevens has no economic incentives or motivations for advocacy of any interests as any benefit of any interests would inure only to her creditors. The representations of Hamerslough effectively acknowledges that this proceeding has not been about the interests of the Estate or Stevens but been about Hamerslough and his co-counsel's advocacy and efforts to secure legal fees owed them by Stevens.

Adjudicating or protecting the interests of a creditor of a creditor or even a fiduciary of a creditor is not the role of the bankruptcy court. Instead, this Court is a forum where creditors and the Debtor can settle their disputes with each other. *In re Refco Inc.,* 505 F.3d 109, 118 (2d Cir. 2007). As the reference was based unknowingly on advancing the interests of Hamerslough in securing access to legal fees owed to him by Stevens, and not the interests of Stevens as a creditor, the reference is not supportable. It should be withdrawn.

B. *An attorney's duty of candor pervades every aspect of practicing law, in and outside the courtroom, and counsel's lack of authorization should have been disclosed earlier.*

*California Rules of Professional Conduct* 5-200, Trial Conduct, states that in presenting a matter to a tribunal, a member –

(A) Shall employ, for the purpose of maintaining the causes confided to the member, such means only as are consistent with truth; and

(B) Shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law;

The California rule differentiates between using truthful means of representations and misleading the court as it is possible to present technically correct bits of information but in a manner that is misleading in context. The duty of candor is violated by omission. ABA Model Rule 3.3 Comment [3] notes that there are circumstances where the "failure to make a disclosure is the equivalent of an affirmative misrepresentation." Debtor maintains that counsel has known of the inability to communicate with Stevens and her lack of authorization to represent her interest for some time, including prior to when counsel filed its request for stay relief. Yet, counsel omitted to so disclose.

The non-disclosure of a lack of authorization to represent Stevens also runs counter to federal policies. This circuit has concluded that while state professional responsibility rules may inform federal courts, federal courts have inherent authority to hold counsel accountable for

omissions "…made at a time when it was to his interest to claim that his actions for his client were done by him in his capacity as attorney for the client. *Cord v. Smith*, 338 F.2d 516, 524-525 (9th Cir. 1964). The reference to the state court should not be predicated on the failure to disclose a material and pivotal fact. It should be withdrawn.

      C.    *A nunc pro tunc ratification of representation would be unavailing.*

No doubt counsel may be making extraordinary efforts to communicate with Stevens and thereafter persuade her to authorize retroactively his advocacy, likely including threatening an involuntary bankruptcy. Such efforts would be coercive.

The Court should not allow a retroactive cure. The *nunc pro tunc* doctrine can only be employed to correct mistakes or omissions in the record so that the record reflects the events that actually took place and not an event to attempt to rewrite history. The doctrine may not be used to retroactively record something that never occurred or have the record reflect a fact that did not then exist. *Glynne v Wilmed Healthcare*, (4th Cir. 2012) 699 F. 3d 380, 384-385, citing *Ex parte Buskirk*, 72 F. 14, 20-21 (4th Cir. 1896).

II.    Withdrawing he Reference – Statutory and Equitable Basis

Pursuant to Section 1334(c)(1) of the Code, and concluding that the interests of justice, and the interest of comity and respect for state courts and respect for state law was pivotal, this Court exercised its discretion and abstained from hearing state law contract issues arising under the Settlement Agreement between Debtor and Stevens. The Court referred the matter to the Santa Clara County Superior Court to consider state contract issues and enter a judgment thereon. The pivotal factual predicates of the Court's decision have proven to be erroneous, as more fully detailed below.

Interests of justice or interest of comity with state court does not weigh in favor of abstention where this Court could adjudicate state court action fairly quickly even though there are state court issues but where the major defense has a preclusive effect as to Debtor's interests and the interests of the Estate. In such event, the Court could more easily address state court issues (a) as they are not difficult (b) state claims are deeply related to bankruptcy issues (c) the Court's docket is not overburdened (d) where comity weighs only slightly in favor of abstention and (e) where there is no prejudice to Stevens.[3] See, *In re Book Mays Music Co.* (2007 BC ND Tex) 363 B.R. 801. All these factors herein balance toward withdrawing the reference.

---

[3] Debtor notes that as Stevens has not appeared herein nor authorized counsel herein, neither has she appeared in the state court proceeding. Her non-participation reflects the view that neither proceeding can benefit or prejudice her as all outcomes precludes her receiving any financial returns.

A. _This Court should no longer abstain and should withdraw the reference in the interest of justice and judicial economy._

Generally, this Court may and should withdraw the reference in the interest of justice. Under 28 U.S.C. 1334(c)(1), permitting a state court to hear a proceeding properly before this court must be a product of balancing multiple interests. _In re Tucson Estates Inc._ (9th.Cir.1990) 912 F 2d 1162, 1167.No single factor is determinative. _In re Lazar_ (BC CD CA 1996), 200 B.R. 358, 372. Specifically, in applying and balancing these factors, and in granting stay relief, this Court relied on four factors: (1) judicial economy (2) expertise of the state court (3) perceived absence of prejudice and (4) then absence of bankruptcy issues. "Order: (1) Denying Motion to Reject Settlement Contract and (2) Granting Motion for Relief From Stay," filed on September 9, 2013, at 12-13 [Order]. In retrospect, although the Court may have expected these four factors to produce a sought state court judgment timely, just the opposite has occurred. Nine months later, all these factors now balance toward withdrawing the reference and not abstaining.

1. Judicial Economy

In its Order, the Court resolved that given the involvement of the former presiding judge of the state court and an arbitrator, it saw little value to intervening in the state action, suggesting that judicial economy favored abstention. This has changed with nine months of delay and stalemate. Debtor submits that the value now is in resolving expeditiously this case, as the state court proceeding has gotten bogged down, if not completely frozen, as further detailed below.

2. State Court Expertise

In its Order, the Court resolved that state law issues dominated the disputes, suggesting that the state court was the better forum and that no bankruptcy issues were presented. However, as this Court also acknowledged, the state law issues were "...nothing more complicated than competing "...ownership claims to assets." Order, at 13. Also, the Court acknowledged that whatever would be the result from the state court proceeding, ultimately the disputes would return to this Court as a part of adjudicating the prevailing claims [if any] of Stevens. As the claims are simply contract claims and ultimately must be resolved by this Court, the Court should withdraw the reference and conclude this case.

3. Bankruptcy Issues

In its Order, the Court concluded that no bankruptcy issues were involved. However, that has proven not to be the case. Hamerslough has asked the state court not only to enter a judgment for Stevens – but also to execute upon that judgment by, _inter alia,_ directing the clerk of the state court

to involuntarily transfer title to the Palo Alto condominium to Stevens and allowing Stevens to sell the property while retaining 100% of all proceeds received.

In granting stay relief, this Court permitted the state court to enter a judgment. Stay relief was not given to *execute* upon any judgment. Execution upon the judgment is the exclusive prerogative of this Court, particularly as the property was claimed as exempt. As no objections were made, the exemption has been allowed. The allowed property exemption removed the property from the Estate and placed it beyond the reach of pre-petition creditors. *Matter of Gebhart* (9th Cir. 2010), 621 F 3rd 1206, 1209-1210. While the homestead exemption may have conditions, exclusions and qualifiers, those issues are bankruptcy law issues beyond the competency of the state court. Further, in its Order, this Court specifically concluded that this Court would review and adjudicate any judgment for Stevens as a part of the bankruptcy claim allowance process when a proof of claim is filed. All of this dictates that the reference should be withdrawn.

Finally, in addition to the foregoing, other federal law issues presented, as detailed in Section C, below.

    4. Prejudice

In its Order, the Court acknowledged Debtor's resolve that the state court proceeding has not been impartial. The Court concluded that no prejudice would arise to Debtor as the state courts had considered and rejected Debtor's claims of bias. Actually, there has been no state court ruling addressing the merits of Debtor's claims. State appellate courts declined to hear the claims of disqualification on an *interlocutory* basis, exercising discretion not to hear the claim out of turn. The Debtor's only hearing on the merits of the claim of disqualification and/or bias must wait until Debtor exercises his right to appeal from a final judgment - one that has not yet been rendered nor entered. Following the reference, and following the announcement of the grant of the motion to enforce the Settlement Agreement, the state court dismissed the claims of disqualification and/or bias as moot. With respects, the logic escapes the Debtor. Debtor's counterclaims arguably are moot, but the disqualification issues remains.

    *B. The state court is in a quagmire unable to extricate itself.*

1. Six months is more than enough time for the state court to have entered a judgment.

Nine months ago, the Court granted stay relief to permit the state court to enter a judgment as to disputes arising under the Settlement Agreement. Debtor submits that this Court anticipated that summary proceedings to produce and enter a judgment would have been completed months ago.

The delay has not been the fault of Debtor. Instead, unable to communicate with Stevens, the delay has been the fault of Hamerslough. Debtor notes that the motion to enforce the settlement agreement was not filed until months following the grant of stay relief. Also, the state court granted the motion to enforce on January 24, 2014. Within five days thereafter, Hamerslough was required by local court rules to submit a proposed judgment. See *California Rules of Court*, Rule 1312(a). But he did not do so. He was not late in the ordinary sense. Instead, he waited for three months. He was so belated that he forfeited the right even to submit a proposed judgment. *California Rules of Court*, Rule 1312(d). His submission came just two days after the hearing in this Court on Debtor's Proposed Plan of Reorganization and Disclosure Statement. Debtor submits that the extraordinary delay until after the hearing in this Court was a calculated ploy to determine what *this Court* would accept as part of the state court judgment. This was pure gamesmanship. The contents of the state court judgment should be a product of the state court's independent determinations on the merits of the state issues as presented in the state proceeding, not a result orientation predicated on bankruptcy issues or decisions of this Court.

> 2. While the state court has announced its decision and granted the motion to enforce the agreement, such an announcement by itself is void of any legal effect.

After trying questions of fact, the state court is required to announce its tentative decision by an oral statement entered in the minutes, or by a written statement entered in the record. *California Rules of Court*, Rule 3.1590(k). The purpose of the announcement is merely to start the time running on a request for a statement of decision. 9 *Witkin: California Procedure* (3rd Edition 1985), Appeal, Section 9; *Code of Civil Procedure* Section 662. Neither the announcement nor the entering of an order granting the motion has any legal effect or is binding upon the Court or any party. 7 *Witkin: Cal. Proc. (5th)*, Judgment, Section 8. No party may rely on it for any legal purpose. It is only an aid to interpreting an uncertain decision. *United Pacific Insurance Company v Hanover Insurance Company* (1990) 217 Cal App 3d 925, 934, citing *California Rules of Court*, Rule 3(1590(e). The granting of the motion to enforce the settlement agreement simply furthers the intent of the tentative decision. It is not a final determination and it lacks legal effect. *California Rules of Court*, Rule 3.1590(h). This Court should not conclude that the grant of the motion to enforce the Settlement Agreement has reached some substantive legal result justifying this Court to act on a non-existent judgment.

To date, the state court has not adopted the Hamerslough submitted proposed judgment nor the alternative proposed judgment submitted by Debtor. Nor has the state court issued findings or

conclusions or a statement of decision which normally precede entry of a judgment and upon which a proposed judgment is based. Whether the state court intends to issues findings, conclusions or a statement of decision or neither, the state court is required to enter a judgment within fifty (50) days of the announcement of its grant of the motion to enforcement the Settlement Agreement. *California Rules of Court*, Rule 1.1590(i). The court has not done so and the last date expired on March 14, 2014.

Debtor submits that the state court is stymied, faced with the knowledge that Hamerslough lacked authorization by Stevens to file the motion to enforce the settlement agreement, even though Hamerslough represented in the motion to enforce the Settlement Agreement that it was filed on behalf of Stevens. The consequence of all this is that this Court's objective, as reflected in the stay relief order, has been frustrated. This is the fault of Hamerslough.

Given the foregoing and as the state issues do not present any novel or special factual or legal issues, the Court should withdraw the reference and thereafter decide the state issues.

*C.  Federal issues now dominate the state court proceeding.*

In making the reference to the state court, this Court in applying one of the factors required under *Tucson Estates, supra,* concluded that comity required the Court to defer to the state court as the contract issues presented were state issues. Debtor submits that now federal questions dominate; and as a result, this Court should withdraw the reference and decide all issues, including the state court issues.

The federal issues include (1) collateral attack on the state court *order* making the Settlement Agreement binding and/or collateral attack on any state court *judgment* which ensues from a disqualified judge (2) state court's jurisdiction under the Federal Arbitration Act and (3) recently decided federal due process requirements applicable to state court judges where state safeguards against the risk of bias are inadequate.

1.  The Settlement Agreement is void and subject to collateral attack in this Court.

The oral Settlement Agreement between Debtor and Stevens made on the record is enforceable if made before a judge and the judge declares an agreement. *Code of Civil Procedure*, Section 664.6. That was the case herein. However, the Presiding Judge before whom the Settlement Agreement was negotiated and who declared it binding, subsequent to the order declaring it binding, *sus sponate*, disqualified herself from the proceeding, given that concurrently with her negotiating the Settlement Agreement, she also was negotiating gainful employment opportunities with the arbitrator she appointed to police settlement implementation disputes, in violation of applicable

judicial qualification statues, *Code of Civil Procedure* Section 170.1(a)(8). See <u>Order re Disqualification</u>, Superior Court of California, Case No. 1-07-CV-090284, entered April 2, 2010. Exhibit B, attached hereto.[4]

For over a century, the California Supreme Court has held that the orders of a disqualified judge are void. *Meyer v San Diego* (1898) 121 C. 113. That Court over the years consistently has upheld that strict view. See, e.g., *Cadenasso v Bank of Italy* (1932) 214 Cal. 362. Further, in conformity with the state high court's holding, the state Court of Appeal has reaffirmed that an order by a disqualified judge is void. *Noorthek v Superior Court* (1969) 269 Cal. App. 2d 600, 605. Different state courts of appeal recently have reaffirmed the void holding *and additionally have clarified* that the orders of a disqualified judges are void *ab initio*. *Auto Equity Sales Inc. v Superior Court* (1962) 57 Cal. 2d 450, 455; *Christie v City of El Centro* (2006) 135 Ca. App. 4th 767, 776. The orders are void when the facts creating disqualification arises. *Christie*, at 776. As such, as the facts creating the disqualification occurred concurrently upon binding the Settlement Agreement, the Settlement Agreement is void and lacks legal effect.

This Court has noted that Debtor previously has attempted to set aside the Settlement Agreement without success. Indeed, the <u>Order</u> recites the efforts as detrimental to Debtor. However, under California law, the Debtor is <u>obligated</u> to act diligently to set aside a void order of a disqualified judge, less the Debtor waive the right on appeal to challenge a later entered judgment. *Christie*, at 776-777, citing, *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 424-425 [holding that a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final]. The Court should not disfavor Debtor's efforts at compliance with state law in order to protect his appellate post-judgment rights.

Debtor recognizes that this Court generally elects to defer to the decisions of the state courts in interpreting and applying state law. However, under federal substantive law, the void order of a disqualified state court judge lacking subject and personal jurisdiction can be attacked in federal courts. *Long v Shorebank Development Corp.* 182 F.3d 548, 561 (7th Cir. 1999). Indeed, in *Long*, the Court cites with approval an Illinois statute providing that a void order may be attacked "...*at any time, in any court, either directly or collaterally...*" As in *Shorebank*, California also permits repeated attacks on a void order before and after it is final. *Christie, supra*.

---

[4] Pursuant to Federal Rules of Evidence 902(1)(A), Debtor moves the Court to take judicial notice of the "Order re Disqualification."

2.  Any judgment of the state court would violate the Federal Arbitration Act.

The Settlement Agreement provided that any disputes as to its implementation would be resolved exclusively by the appointed arbitrator. The United States Arbitration Act (FAA) requires that where parties to a contract agree upon private arbitration, absent factors not present herein, the arbitration provisions are binding and both state and federal courts are divested of jurisdiction over disputes arising under the contract. The only authority state and federal courts have is to confirm or enforce decisions of the arbitrator. *Southland Corp. v. Keating*, 465 U.S. 1, 16. The Supreme Court has been strict and steadfast, concluding that in enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and withdrew the power of the courts to resolve claims that the contracting parties agreed to resolve by arbitration. The FAA created federal substantive law and that is applicable to both state and federal courts. *Southland*, 10-16.

Debtor and Stevens agreed upon arbitration and both previously have sought resolution of disputes by the arbitrator who has issued decisions thereupon. Despite the agreed upon and non-contested arbitration provisions, and despite the FAA, the state court has announced its intention to resolve the disputes, rather than refer the disputes to arbitration. Debtor notes that no order of the arbitrator is before the state court for confirmation. Indeed, Debtor moved the state Court to accede to the arbitrator's 2010 decision that the Palo Alto condominium need not be sold because, *inter alia*, Stevens was in default on her obligations to pay her share of the carrying costs of property. That decision by the arbitrator binds the state court. However, the state court did not even address the arbitration provisions.

While the normal rule is for federal courts to defer to a state court to decide if the state court has jurisdiction, that rule does not apply to arbitration issues. As the Supreme Court has held, for a federal court to delay enforcement of the arbitration provisions pending review of, and thereafter enforcement of, a state court decision or judgment "...would defeat the core purpose of a contract to arbitrate." *Southland*, at 7-8. As legal issues arising under the FAA are dispositive, Debtor submits that the Court should withdraw the reference and accede to the decision of the arbitrator.[5]

3.  The *Rooker-Feldman* Doctrine does not apply.

In addition to the FAA provisions, other federal issues are presented. Under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court decisions. *Rooker v Fidelity Trust Co*, 2563 U.S. 413, 415-216; *District of*

---

[5] At Exhibit C are copies of letters from Debtor and counsel for Stevens presenting the issues. Debtor will move the Court to issue a subpoena to the arbitrator for the necessary records to document his decision.

*Columbia Court of Appeals v Feldman* 160 U.S. 462, 482-486. This suggests that the doctrine supports abstention. A closer examination of the doctrine reflects that the doctrine does not apply herein.

Four components are the *Rooker-Feldman* doctrines are not present herein. First, the doctrine requires that deference be given a state court "judgment." *Long*, *supra*, 554-555. Herein, there is no judgment. As noted above at Section B. 2., an announcement of intent to issue a judgment lacks legal effect. Second, the judgment must be "final" in order to assure that parties have had a reasonable opportunity to present their claims. *Long*, 560-561. Thus, even if the state court's announcement of a grant of the enforcement motion was considered as a judgment, it is not "final" as no appeals have been heard or resolved. Third, the claim of injury asserted in the federal forum must result from the judgment itself. Where the claim is independent of the judgment, it is beyond the doctrine. *Long*, 555.

Herein, Debtor's claim is two-fold: (1) the state court judge's order binding the Settlement Agreement was void *ab initio* and (2) the implicit assertion of jurisdiction by the state court in granting the motion to enforce the Settlement Agreement violates the FAA which requires the state court to honor the arbitration provisions in the Settlement Agreement. *Long, supra*, 561 [violation of federal civil rights statute as independent of judgment under state eviction proceedings]. Yet, the state court in its grant of the enforcement motion has not done so. While the issues may be related and intertwined, that does not mean the *Rooker-Feldman* doctrine applies. *Long*, 555. The point is that neither of Debtor claims is the result of injury caused by a judgment as no judgment exists. As the Supreme Court as held, the injury is requiring Debtor to bear the burden of litigating his interest in a forum that lacks jurisdiction. *Southland*, 7-8. The injury is also to the public's perception of the impartiality of the judicial process.

III. Withdrawing the Reference – Constitutional Due Process Basis

   *A. Due process requires a federal remedy where a state court fails to guard adequately against the risks of bias.*

The United States Supreme Court recently held that where state judicial ethics law are inadequate or fail to guard against the risks of actual bias, the due process clause of the 14th Amendment requires a judge to recuse him/herself not only when actual bias has been demonstrated or when the judge has an economic interest in the outcome of the case, but also when specific facts are so extreme they create a probability of the risk of bias. *Caperton vs. A.C. Massey Coal Co. Inc.* (2009) 556 U.S. 858, 129 S.C.2252, 223-2264, citing *Withrow v. Larkin*, 421 U.S. 35, 47; See also,

In *Caperton*, the Supreme Court shifted judicial disqualification decision making from the historic analysis as implemented by prior state and federal precedents, to one based on basic principles of fairness and justice. Following and interpreting *Caperton*, the California Supreme Court has held that *Caperton* does not require recusals that present only questions of the appearance of bias if state law remedies are adequate. *People v. Freeman*, (2010) 47 Cal.4th 993 (2010) [allegations of a defendant stalking judge does not require his qualifications under *Caperton*]. Instead, the state Supreme Court concluded that *Caperton* is implicated where, as herein, the claims of bias involve pecuniary interests of a judge, i. e., the gainful employment of the Presiding Judge by JAMS Inc. As the legislature has concluded that concurrent employment discussions with JAMS Inc. while enforcing JAMS Inc. orders creates a risk of *actual bias*, *Caperton* requires recusal as "the probability of actual bias "…is too high to be constitutionally tolerable." *Withrow,* 47. The state court in granting the motion to enforce the Settlement Agreement did not conclude that *Caperton* somehow does not apply. The court simply ignored the issue and the precedent. Debtor submits that the facts in the state proceeding are extreme and are within the ambit of *Caperton*. Given this, the Court should withdraw the reference.

> B. *A judge's pecuniary interests and/or extreme case facts violate due process and require federal remedies.*

Debtor maintains that the state court proceeding decision making is tainted by the pecuniary interests of the former Presiding Judge and case facts that are so extreme that *Caperton* requires this Court to apply an appropriate remedy, i.e., withdrawal of the reference.

Gainful employment is of course receiving money for services. *Black's Law Dictionary* (9th ed. (2004). The former Presiding Judge in declaring her disqualification and citing the applicable statute acknowledges the violation. As such, there is no question that pecuniary interests of the judge are involved violating due process. *U.S. v Will* (1980) 449 U.S. 200, 213 Thus, *Will* is applicable herein under *Caperton.* The state court not acknowledging the applicability of both precedents justifies a withdrawal of the reference.

Extreme facts are also present and cumulatively, the extreme facts detailed above and below, implicate *Caperton*. These extreme facts include the following. All of these were presented to the state court, but the Court dismissed them all without explanations or discussions as moot.

(1)     Judge Jacobs-May Disqualification

The former Presiding Judge voluntarily entered her disqualification conceding she had violated Section 170.1 of the *California Code of Civil Procedure*. On the record, she advised that she was not aware of the prohibition. Debtor submits that the lack of knowledge of a presiding judge as to permitted conduct involving the procurement of an employment economic interest with a case participant-decision maker given carte blanche authority is extreme.

(2)     Referral to Judicial Council

Upon her disqualification, the Presiding Judge directed her law clerk in open court to consult with the clerk of the Court to designate a replacement judge. The law clerk complied and during open court telephoned the clerk of the Court and during the conversation Judge Kleinberg was designated.

The Presiding Judge lacked the authority to participate to any extent in the reassignment of the proceeding to another judge. See, e.g., *Grutter v Bollinger* 16 F. Supp. 2d 797, 801, citing *Flamm: Judicial disqualifications*, Section 11.1 (2d Ed. 2007). Under federal due process standards, the participation by a disqualified judge in the reassignment of a case violates due process. *Will, supra, at 213*. The referral should have been made to the California Judicial Council as the appropriate party. *Code of Civil Procedure*, Section 170.3. The state court in granting the motion to enforce the Settlement Agreement did not even address the issue.

(3)     Judge Jacobs-May JAMS Employment

Subsequent to her retirement from the Court in January 2011, the Presiding Judge accepted employment with JAMS as a neutral. Debtor submits that the acceptance of employment further compounded the legislative presumed conflict of interest emanating from the pre-retirement employment discussions. The acceptance of employment and its economic benefits confirmed as actual the presumed bias.

(4)     Judge Jacobs-May Personal Jurisdiction

The former Presiding Judge specifically retained *personal* jurisdiction to the exclusion of all other judges over the proceeding, even when absent and in the case of an emergency, the latter in total disregard of the interests of the parties. During one absence a dispute developed as to protecting a license to build a new and valuable cellular service in Oregon occurred requiring a ruling from the Court.[6] Judge Mark Pierce very specially declined to hear the emergency, holding

---

[6] Under policies of the Federal Communications Commission, the action required to protect the license required the ruling of a court of law, rather than the appointed arbitrator.

that only the then Presiding Judge had jurisdiction. Debtor maintains that retention of personal jurisdiction was an effort to protect the reputational interests of the presiding judge as an ADR expert and potential employment with JAMS, not as the guardian of impartially enforcing the Settlement Agreement.

(5)    Judge Kleinberg Ruling

Judge Kleinberg refused to vacate the order of the Presiding Judge declaring the Settlement Agreement as binding. Also, the judge specifically declined to state for the record the basis of that refusal. Debtor maintains that the refusal was an effort to protect the reputation for settlements of the former Presiding Judge.

(6)    Judge Silver

Upon the disqualification of the former Presiding Judge, Section 1281.91(d) of the *Code of Civil Procedure*, on its face, automatically disqualifies the appointed arbitrator. Yet, the arbitrator declined to even address the applicability of Section 1281.91(d).

(7)    Judge Silver's Non-Disqualification

Upon consideration of a motion to disqualify the arbitrator, the state Court refused, holding inexplicably holding that the provisions of Section 1281.91(d) were not applicable.

(8)    James Towery and the Hamerslough Law Firm

During the proceeding through the time of the Settlement Agreement until April 22, 2009, James Towery, then of Hoge Fenton Jones and Apple Inc., was counsel for Debtor. Thereafter, he joined the firm which represented Stevens. Under professional rules, Mr. Towery was prohibited from disclosing confidential information provided him by Debtor to any attorney in the firm representing Stevens. The duty of confidentiality is fundamental to the attorney client relationship and a principle that binds counsel. This obligation is a very high and stringent one. *Business & Professional Code Section* 6068(1); *Flat v Superior Court* (1994) 9 C.4th 275, 289. Debtor maintains that some confidential communications between Debtor and his former counsel governing the scope of authority of the JAMS arbitrator was communicated to the arbitrator and members of the firm representing Stevens. The state court did not address the issue.

(9)    Judge's Spouse Employment with Huge Fenton

On September 29, 2011, Huge Fenton Jones &Appel Inc. filed a complaint in state court against Debtor alleging breach of contract for legal fees. The case was assigned to Judge McKenney. Debtor filed a motion requesting Judge McKenney to recuse himself. This followed the judge disclosing to the parties that his spouse previously had been employed with Hoge Fenton and

that James Towery, Debtor's former counsel then with Hoge Fenton, and Judge McKenney were both colleagues and instructors at Golden Gate University Law School in San Jose. The request for recusal was summarily denied.

(10)    Judge James Towery

In December 2013, James Towery  was appointed to be a member on the Santa Clara County Superior Court. As a colleague with a vested economic interest in the outcome of the settlement agreement proceeding and the related Hoge Fenton v Wade proceeding, Debtor maintains that the probability of the risk of bias by members of the state court is greater than the mere appearance. Debtor submits that a Court adjudicating claims for financial benefits on behalf of a fellow sitting judge, would offend to the extreme reasonable perceptions of impartiality and produces a probability of the risk of bias.

## REQUESTED RELIEF

In view of all the foregoing, Debtor requests as follows:

* The withdrawal of the reference to the Santa Clara County Superior Court and thereafter hear and resolve any and all disputes if any of the Debtor and Arlene Stevens arising under the Settlement Agreement.

* Alternatively, in the event the state court acts on the reference and enters a judgment against Debtor, to treat  this motion as one to reject the judgment for all the reasons stated herein, but particularly the applicability of the United States Arbitration Act and *Caperton*.

## CONCLUSION

The reference to the Santa Clara County Superior Court was anticipated to have been concluded by now. Further delays can be expected. Even if a judgment is entered by the state court, federal issues now predominate while state issues do not involve unsettled state law and the reference now involves, not a claim by Arlene Stevens, but only the claims of creditors of Stevens. Under these circumstances, this Court should withdraw the reference and thereafter consider and decide all state court issues in order to expedite and conclude this case.

Respectfully submitted,

Booker T. Wade Jr.
Debtor

May 23, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

Declaration of Booker T. Wade Jr.

**Declaration**

I, Booker T. Wade Jr., declare as follows:

1. From my participation in a bankruptcy proceeding regarding TV 32 Digital Ventures Inc.,., an entity in which I then had 100% ownership, I learned that Arlene Stevens resisted communications or was not in communications with the lawyers appearing on her behalf, including David Hamerslough. After being unsuccessful in persuading the bankruptcy court that she had ownership interests in TV 32 Digital Ventures Inc., shortly thereafter she no longer participated in the proceeding.

2. Arlene Stevens has not participated in any of the proceedings before the Santa Clara Superior Court or the proceedings before the arbitrator assigned by the state court since at least 2011.

3. In May, 2010, the arbitrator appointed by the state court, held a hearing and concluded that the provisions in the settlement agreement between Arlene Stevens requiring the residential condominium known as 605 Forest Avenue need not be sold given that Arlene Stevens had breached obligations to pay sixty percent of the carrying costs of the property.

4. I have composed and read the pleading associated with this declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true.

May 23, 2014

Booker T. Wade Jr.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B**

Order of Disqualification



# F I L E D

APR 0 2 2010

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| ARLENE D. STEVENS | Case No.   1-07-CV-090284 |
|      Plaintiff, | Order re:   Disqualification |
| v. | |
| BOOKER T. WADE, JR., AND DOES 1 to 10, inclusive | |
|      Defendant. | |

On March 29, 2010, for reasons fully set forth on the record on March 25, 2010, I recused myself from this case pursuant to Code of Civil Procedure section 170.1 (a)(8).

Dated: 4/2/10

_____

Jamie Jacobs-May, Presiding Judge

Case: 13-50376   Doc# 139   Filed: 05/28/14   Entered: 05/29/14 15:04:25   Page 19 of 25

1

**Exhibit C**

2

Presentation Letters to Arbitrator Concerning Palo Alto Condo

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stevens v Wade REF# 1110011534

booker wade
8/10/10

To: Richard Silver

Cc: David Hammerslough, Robert Chiles, Cynthia Victory, linda@rhrc.net



From: **booker wade** (bookertwade@hotmail.com)
Sent: Tue 8/10/10 12:20 PM
To:    Richard Silver (rsilver@mbay.net)
Cc:    David Hammerslough (dave@rhrc.net); Robert Chiles (rchiles@chilesprolaw.com); Cynthia
       Victory (cvictory@jamsadr.com); linda@rhrc.net

Judge Silver:

I understand that Mr. Hamerslough has requested a hearing regarding the Palo Alto condominium and Wedding Television. As to the Palo Alto condo, you have previously heard and addressed issues/arguments from both sides. You concluded it was not appropriate to proceed further. As to the Wedding Television programming assets, the Settlement Agreement required these assets to be delivered to Ms. Stevens in exchange for her dismissing KMTP TV. The assets were provided to Ms. Stevens in December 2009. Ms. Stevens refused to file the dismissal maintaining that some unidentified items were missing. In February 2010, the Presiding Judge directed Ms. Stevens to provide an affidavit under oath as to any missing items. She has refused to do so. She apparently is judge shopping seeking your intervention to overrule the Presiding Judge. Given the circumstances, a hearing is unnecessary.  If anything, given Ms. Stevens' refusal to file the dismissal and to comply with the Presiding Judge's directive, I ask that you summarily conclude that KMTP TV and I are excused from any obligations.

Booker Wade

ROSSI   HAMERSLOUGH   REISCHL   CHUCK

A Professional Law Corporation

1960 The Alameda. Suite 200 San Jose. CA 95126 P (408) 261-4252 F

www.rhrc.net

May 18, 2010

**(Sent Via Email)**

Hon. Richard Silver
JAMS
160 W. Santa Clara Street, #1150
San Jose, CA 95113

Re:   **Stevens / Wade**
      **Your File:   79316**
      **Our File:    D08115**

Dear Judge Silver:

This letter is submitted with regard to the issues that will be addressed at tomorrow morning's hearing.

The Palo Alto condominium property has still not been listed for sale by Mr. Wade despite numerous efforts on the part of Ms. Stevens' counsel and orders by you that it be listed and sold.  (Order dated April 10, 2009, July 10, 2009 and August 14, 2009.)  The listing brokerage and agent (Alain Pinel/Shelley Roberson) have been selected.  The listing agreement and other documents were forwarded to Mr. Wade's counsel on April 10, 2009.  Mr. Wade has still failed to sign the listing agreement and other documentation.  Mr. Wade has had exclusive possession of the property since May 2009.

Stevens requests that this property be listed and sold.  Any issues regarding carrying costs were reserved by you pursuant to prior orders.  Stevens requests that Wade pay Stevens rent for the occupancy of the Palo Alto condominium since May of 2009.  This request is based on the fact that Mr. Wade has not complied with prior orders to list the property.  Mr. Wade has done nothing more than attempt to either undermine or undo this settlement.  These efforts have resulted in his getting the benefit of occupying the condominium and causing Ms. Stevens to incur unnecessary additional attorney's fees and costs.  From Stevens' perspective, had Wade complied with the settlement the Palo Alto condominium would have been sold and Ms. Stevens would not have incurred the additional attorney's fees and costs.  Stevens seeks reimbursement of all attorney's fees and costs incurred as a result of Wade's delay tactics.  Stevens also seeks to be relieved of any further financial responsibility for the carrying costs associated with the Palo Alto condominium and that Mr. Wade start paying rent to her to the extent that she has a 60% interest in this property.

With regard to 1010 Corporation Way, the bankruptcy court has requested a decision as to who has control of TV-32. The answer to that question will then allow the bankruptcy court to make a decision on two competing requests: (1) Wade's three year plan for a resale or refinance of the 1010 Corporation Way property or (2) Stevens' request that a trustee be appointed who will then take control of the management and sale of the property. Stevens' request is based, in part, on the fact that Wade continues to rent space at 1010 Corporation Way but not make any payments to Sonoma National Bank or the SBA and on the fact that the Bank of Sonoma has filed an action in Sonoma County Superior Court against Arlene Stevens seeking to enforce the guarantee that Ms. Stevens signed on behalf of TV-32. Sonoma National Bank has obtained a temporary protective order and has scheduled a hearing on June 1, 2010 for a Writ of Attachment. They are requesting an attachment against all of the proceeds from the sale of the Woodside property.

A fundamental component of the settlement between Stevens and Wade is that Arlene Stevens be relieved of any liability on the guarantee to Sonoma National Bank and the SBA. The sale of 1010 Corporation Way as well as other media assets was also to act as security for repayment of money that Mr. Wade owes Ms. Stevens under the settlement. Both of these are now in jeopardy. Ms. Stevens' money (Woodside proceeds) is now at risk because of Wade's prior conduct regarding the sale of the property and his request to continue to market the property for three years. The Corporation Way property is the security device for the obligations which Mr. Wade owes Ms. Stevens under the settlement and her only protection against a deficiency. The bank has supplied the bankruptcy court with an appraisal of the property showing a current value of approximately $4.3 Million.

The objectives of the settlement are not being met and Ms. Stevens' security interest is being adversely effected by the foregoing conduct and events. If this status quo continues then the objectives of the settlement will not be met and Ms. Stevens will be prejudiced because the proceeds from the sale of Woodside will be attached by Sonoma National Bank. For these reasons control of TV-32 rests with Ms. Stevens. Otherwise, the goal and objectives of the settlement will be frustrated. Mr. Wade has had his opportunity to market the property. He has provided this Court with inflated opinions of market value and has not provided this Court with any of the accounting and other information that it has requested regarding this property.

Stevens's contention that ownership and control of TV-32 should be vested in Stevens in order to achieve the objectives of the settlement is also supported by the historical evidence on this issue. In or around May of 2004, TV-32 Digital Ventures ("TV-32") was incorporated in the State of California. At all relevant times, Ms. Stevens has been, and is, the sole officer, director, and owner of TV-32. Mr. Wade was secretary to the corporation for a very brief period during its initial formation. Mr. Wade fraudulently executed documents relating to the corporation. Mr. Wade has produced stock certificates that he alleges are authentic. Ms. Stevens

disputes their authenticity and maintains that they are not only false but that if they had been issued, they were issued in violation of the Corporate By-Laws. The By-Laws specify that the same person can not hold both the offices of President and Secretary. The By-Laws were prepared by Mr. Wade and signed by him in his capacity as Secretary of the corporation. The stock certificates however are signed only by Mr. Wade in a purported capacity as both President and Secretary. Ms. Stevens' signature is not on the purported share certificates. In any event, the purported certificates would be deemed voidable in that, on their face, they are in violation of the Corporate By-Laws.

The conclusion that Ms. Stevens is the sole officer, director, and owner of TV-32 is also supported by the SBA financing plan for this entity prepared by Mr. Wade and submitted to Sonoma National Bank and the SBA in support of the request for the financing which currently encumbers the property. Copies of this financing plan as well as the documents referred in the preceding paragraph are available if requested by the Court.

Stevens is requesting an order as follows:

*"Arlene Stevens is hereby appointed to serve as the sole director and President of TV-32 Digital Ventures, Inc. ("TV-32 DV"), with all the rights and powers of a director and of a president, from and after the date of this order and until further order. Arlene Stevens cannot be removed from these positions by any shareholder vote, vote of any board of directors, or act of any officers of TV-32 or those claiming to be shareholders, directors, or officers of TV-32 until further order. Booker T. Wade, Jr., from and after the date of this order and until further order, shall not serve as a director or officer of TV-32 and cannot assert any rights relative to the appointment of Arlene Stevens as the sole director and President of TV-32, whether as an officer, director, or shareholder, until further order. This order is prospective in nature and does not suggest or make any findings regarding the status of Arlene Stevens and her claims relative to her status as a officer, director, or shareholder of TV-32 prior to the date of this order. Booker T. Wade, Jr. will fully cooperate with TV-32 and Arlene Stevens to secure prompt and complete compliance with this order."*

Very truly yours,

(Dictated but not read.)

David Hamerslough

DH:lld
cc:     Client
cc:     Stephen S. Fry, Esq.
cc:     Booker T. Wade
S:\CL\D\D08115\Correspondence\JAMS (Silver)-Wade 05-18-10.doc

# Certificate of Service

I, Fan Wen, certify that I am over the age of 18 and that my business address is at 1296 Kifer Road, Suite 606, Sunnyvale, CA 94086. On or before the date shown below, I deposited in the U.S. Mail, first class postage prepaid, a copies of the foregoing pleadings captioned Notice of and Motion to Withdraw Reference and addressed to the following:

Arlene Stevens
P O Box 51310
Palo Alto, CA 94303

The Mlnarik Group Inc.
2930 Bowers Avenue
Santa Clara, CA  95051

Campeau Goodsell Smith
Campeau Goodsell Smith
440 North First Street #400
San Jose, CA 95112

Rossi Hamerslough Reisch & Chuck
1960 The Alameda # 200
San Jose, CA 95126

Hoge Fenton Jones &Appel Inc.
Sixty South Market Street Suite 1400
San Jose, CA 95113

Casey O'Connell
Pite Duncan, LLP
4375 Jutland Drive, Suite200
PO Box 17933
San Diego, CA 92177-0933

\

Fan Wen

May 23, 2014