Booker T. Wade Jr.
605 Forest Avenue
Palo Alto, CA 94301
415 378 6250

FILED
JUN 18 2014
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

IN RE

BOOKER THEODORE WADE JR.

                    DEBTOR

Case No. 13-50376 SLJ

Chapter 11

RESPONSE TO ORDER TO SHOW CAUSE
RE: DISMISSAL OR CONVERSION

Booker T. Wade, Jr., Debtor and Debtor in Possession herein, hereby files this response to the "Order to Show Cause Re: Dismissal or Conversion" entered on June 10, 2014 (OSC). For the reasons detailed below, Debtor submits cause does not exist and, if it exists, conversion or dismissal is not in the best of interests of creditors and the estate.

**Basis for OSC**

The OSC, at 4, details four factors in support thereof:

(1) Debtor has sought to 'rewrite' the property Settlement Agreement with Arlene Stevens (Stevens) reached in state court;

(2) Debtor has sought to 're-litigate' the state court judgment with Hoge Fenton Jones &Appel Inc.;

(3) The liquidation analysis in Debtor's Proposed First Amended Combined Reorganization Plan and Disclosure Statement omitted $478,000 in cash held in two escrow accounts; and

(4) The Court denied approval of the disclosure statement for Debtor's Proposed First Amended Combined Plan of Reorganization and Disclosure Statement.

**General Responses**

A finding of cause to convert or dismiss a case requires a two-step process in which the Court must first determine whether cause exist and, if so, choose between dismissal and conversion. *In re American Capital Equipment LLC* (3rd Cir. 688 F.3d 145, 161. The Court may find cause where there is not a reasonable possibility of a successful reorganization within a reasonable period of time. (3rd Cir. 1991) *In re Brown*, 951 F.2d 564,572. The Court may not convert or dismiss where there are reasonable justifications as to any cause or where unusual circumstances prevail.

**Specific Responses**

1. <u>Settlement Agreement</u>

    a. Void Agreement

    *The Settlement Agreement is void and subject to collateral attack in this Court.*

    The Settlement Agreement results from a binding order of a disqualified judge.[1] Historic California precedents hold that an order of a disqualified judge is void *ab initio. Christie v. City of El Centro* (2005) 135 Cal.App.4th 767 ( review denied); *Tatum v. Southern Pac. Co.* (1967) 250 C.A.2d 40, 43. A void order of a disqualified state judge is subject to collateral attacked in federal courts. *Long v. Shorebank Development Corp.,* 182 F.3d 548 (7th Cir. 1999). As a void order implicates federal due process requirements, it is subject to attack in a bankruptcy case. *In re: Center Wholesale, Inc.* (9th Cir.1985) 759 F.2d 1440, 1448; *Federal Rules of Civil Procedure*, Rule 60(b)(4), incorporating Rule 60(b)(4), which applies in bankruptcy. *Federal Rules of Bankruptcy Procedure*, Rule 9024. The bankruptcy court abuses its discretion when it refuses to set aside a void judgment. *GMAC Mortgage Corp., v Salisbury,* 241 B.R. 655 (9th Cir. BAP 1999). Thus, Debtor submits, that this Court may not predicate a dismissal or conversion upon Debtor's non-compliance with a void order.

    b. Rewriting

    *The requirement to sell the Palo Alto condo was subject to the arbitrator's ruling.*

    The OSC does not detail how Debtor has been rewriting the Settlement Agreement. But at paragraph 6, it references the reasons given in the Court's order denying approval of debtor's proposed amended reorganization plan and disclosure statement. Therein, the Court focused on Debtor's proposal to retain as his primary residence the Palo Alto condo. Debtor understands the

---

[1] See, Attached 1 hereto.

Court's position to be that this provision in Debtor's amended reorganization plan is at variance with the terms of the Settlement Agreement which requires the sale of the property.

The provision in the Settlement Agreement requiring the sale of the condo is conditional and contingent upon other factors in the Settlement Agreement, as the Court acknowledged at the hearing on the Motion to Compel Custodian to Turnover Property of the Estate on June 10, 2012.

One condition and contingency required Stevens to pay 60% of the carrying total costs of the condominium. See Reporter's Transcript, at 9:19-24, attached to Motion to Reject Executory Contract filed on June 6, 2013. Yet, starting February 1, 2009, just one week after the Settlement Agreement, Stevens breached her obligations to make her first payment. Indeed, she never made any payments – not one. As the Settlement Agreement provided that any disputes or breaches as to implementation of the Palo Alto condo would be resolved by the appointed JAMS Inc. arbitrator, the Hon. Richard Silver (Ret.)[2], Stevens' defaults was submitted to Judge Silver who on May 19, 2010, ruled that given *inter alia*, the Stevens default, the obligation to sell the property was forfeited.[3] On August 10, 2010, Stevens made a second effort to compel the sale of the property, requesting Judge Silver to schedule a hearing to again order a sale.[4] Debtor objected and Judge Silver did not even respond to the request, effectively re-affirming his prior ruling.

Debtor does not seek a revision of the Settlement Agreement. Instead, Debtor's proposed amended plan seeks to implement the Settlement Agreement as its provisions have been determined by Judge Silver. To any extent there is a 'rewriting' of the agreement, Judge Silver has done so as he is empowered to do under the agreement.

In concluding that Debtor is rewriting the Settlement Agreement, the Court may also have focused on Debtor's efforts to compel David Hamerslough to turnover 50% of escrow funds. Is so, then just as the Settlement Agreement is void, the escrow provisions in the Settlement Agreement are also necessarily void. As Debtor owned 50% interests in the property, fifty percent of the proceeds of the property were also the property of the Debtor as of the case commencement date. Debtor notes that at the hearing on the motion to compel turnover, the Court excused turnover of the proceeds as not in the best interest of creditors. However, the Court did not conclude that Debtor lacked ownership interests in the escrow funds on commencement of the case.

---

[2] Reporter's Transcript, at 15:24-28; 16:1-2.
[3] The ruling was oral. Correspondence to Judge Silver from Stevens and Debtor reflect the ruling. See, Exhibit C, Motion to Withdraw Reference from State Court, filed on May 23, 2014.
[4] See note 3.

c. Jurisdiction

*The ruling of Judge Silver as arbitrator binds this Court under federal law.*

The Settlement Agreement was not intended to be self-executing. It contemplated specifically some thirty two (32) potential implementation disputes. It delegated to the arbitrator the *exclusive* authority to determine resolution of those disputes, including the disposition of the condo.[5] Under federal law, Judge Silver's ruling is binding on this Court.

The United States Arbitration Act (FAA) requires that where parties to a contract agree upon private arbitration, absent factors not present herein, the arbitration provisions are binding and both state and federal courts are divested of jurisdiction over disputes arising under the contract. The only authority state and federal courts have is to "confirm" or enforce decisions of the arbitrator. *Southland Corp. v. Keating*, 465 U.S. 1, 16. The Supreme Court has been strict and steadfast, concluding that in enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and withdrew the power of the courts to resolve claims that the contracting parties agreed to resolve by arbitration. The FAA created federal substantive law applicable to both state and federal courts. *Southland*, 10-16.

The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to all their terms." *Volt In-formation Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U. S. 468, 478. FAA Section 3 requires this Court to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the arbitration agreement and Section 4 of the FAA requires this Court to compel arbitration "in accordance with the terms of the agreement". *AT&T Mobility LLC v. Concepcion*, (2011) 131 S. Ct. 1740, 1748.

In *Laster v. AT&T Mobility LLC*, 584 F. 3d 849, 855 (2009), the Ninth Circuit held that there were circumstances [unconscionable contracts] where the FAA did not require state courts to accede to arbitration. On review, the Supreme Court reversed, concluding that arbitration provisions "... shall be "valid, irrevocable, and enforceable," save only upon such grounds for the revocation of any contract. *AT&T Mobility*, 1748. If state law somehow intrudes upon the arbitration, the analysis is straightforward: the conflicting state rule or order is displaced by the FAA. *Preston v. Ferrer*, (2008) 552 U. S. 346, 353.

---

[5] Reporter's Transcript at 15:24-28; 16:1-2.

**2. Hoge Fenton Re-litigation**

In his first proposed plan, Debtor sought to have this Court examine the fairness of the legal fees underlying the default judgment. Following the hearing and in his amended proposed plan, Debtor deleted the proposal to examine the legal fees for fairness. Instead, at Exhibit 5, Debtor proposed to prosecute an appeal of the default judgment, noting that California courts abhor a default. The Court characterizes this as 're-litigation" of the dispute. In actuality, there has been no first litigation on the merits of the case. Debtor believes he has an obligation as debtor in possession to minimize burdens upon the estate for the benefit of all creditors and that a favorable outcome of first litigation would benefit other creditors. Nonetheless, Debtor is prepared to abandon the proposal.

**3. Escrow Cash**

Debtor believes the Court may have overlooked the provisions in Debtor's amended plan which provide for liquidated of the escrow funds. At Exhibit 8 to the proposed amended plan, specifically responding to the objections of the United States Trustee and Campeau Goodsell and Smith, Debtor detailed the disposition and distribution of the escrow funds, together with a description of the state court proceeding to determine entitlement to the escrow funds. Additionally, at Exhibit 5, Debtor proposed that any recovery of any part of the escrow funds would be distributed under the plan "to all allowed claims in proportion to the award received."

**4. Patently Unconfirmable Proposed Plan**

At the core of the Court's holding that the proposed amended plan is patently unconfirmable, Debtor believes, is the Court's resolve that inclusion of the Palo Alto condo in the amended plan is at variance with the Settlement Agreement. As indicated above, Judge Silver has ruled that the condo need not be sold, given breaches by Stevens, and under the FAA, the Court is bound thereby. Thus, the proposal to include it in the amended plan is consistent with the Settlement Agreement as interpreted and applied by Judge Silver.

In denying approval of the amended plan, the Court also noted two other factors. First, the Court concluded that in placing a value on the condo, Debtor averaged an average. Debtor's calculation contained errors. The average of the values of Zillow and Eappraisal should have been $728,462, not $725,976. However, Debtor submits this mathematical fractional error of one percent is easily corrected and not something that facially defeats confirmation. The value of the condo as determined by the first lender was $692,800. As this amount was not a current value, Debtor did not include it as it would have produced an under-valued distortion.

Second, the Court concluded that Debtor's income was inadequate to service the proposed plan payments. However, Debtor in his amended plan at proposed to resume full time employment as of the effective date of the plan which would provide additional income to support the payments. Debtor noted that he would return to his decades' long job. The U.S. Trustee is wrong – the return after a temporary leave to a job held for 20 years is not "hope" but reality. Indeed, Debtor intends to resume his employment as of August 4, 2014.

### Additional Considerations

In a Motion to Withdraw Reference from State Court filed on May 23, 2014, given the half year delay, federal preemption, void orders and risks of judicial bias issues, Debtor requested the Court to withdraw its reference to the state court; or, alternatively, to reject any state court judgment entered. That motion is set for hearing on July 9, 2014 and is incorporated herein by reference.

On June 13, 2014, the state court entered its judgment. On June 16, 2014, Debtor filed an *ex parte* motion to declare the judgment void. That motion is also incorporated herein by reference. Debtor believes that the reasons and documents detailed in the two motions establish that the state court judgment is in violation of, and/or preempted by, federal law and may not influence this case.

### Bests Interest of Creditors

A finding of cause to convert or dismiss a case requires a two-process in which the Court must first determine whether cause exist and next choose between dismissal and conversion. *In re American Capital Equipment LLC* (3rd Cir. 2012) 688 F.3d 145, 161.

The Court may find cause where there is not a reasonable possibility of a successful reorganization within a reasonable period of time. (3rd Cir. 1991) *In re Brown*, 951 F.2d 564, 572. Debtor has not had a reasonable time to effectuate a plan.

As the Court has acknowledged, this case is "complicated" given the state court issues. Those issues have presented a myriad of contingencies, resolution of which was dependent upon factors beyond Debtor's control, e.g., the timing of a judgment by the state court. Debtor has not been responsible for any delay. To the contrary, counsel for Stevens waited more months to file an enforcement motion. Debtor filed a response within days thereafter. All other delay has been a product of the state court. Indeed, recognizing the delay, Debtor filed his motion to withdraw the reference requesting this Court to resolve the state issues to avoid further delay. Debtor submits that although the Court set a confirmation deadline on January 9, 2014, Debtor has had less than 90 days to devise a potentially successful plan and has proposed only one plan with one revision. Debtor diligently has attempted confirmation.

While Debtor inadvertently failed to appear at the hearing on the amended plan, that failure was inadvertent. As the Court noted in its order denying approval of the proposed plan, prior to the hearing and upon filing of the amended plan, and believing a motion was the proper procedure, Debtor requested the Court to set a date for a hearing on the amended plan. This reflects a good faith effort at compliance. There was no intentional disregard of obligations. See, *In re NuGelt Inc.* 142 B.R. 661, 667 (Del. 1992) ["intentional" violations of order of the court constitutes cause].

As to a reasonable possibility of a successful plan, Debtor believes the only factor that suggests that it is not possible to propose a reasonable plan is the resolve that the Palo Alto condo is the core hindrance. However, as noted above, the Court is required to accept Judge Silver's ruling that the condo need not be sold; and thus, the retention of the condo is not unreasonable. With respects, Debtor submits that the Court may not preclude Debtor's inclusion of the condo as a basis for dismissal or conversion, less the Court violate the applicable FAA provisions as detailed above.

The Court may convert or dismiss the case once cause has been established in the best interests of creditors and the estate. *In re American Capital, supra*, at 163. Debtor submits that where continuing the case in Chapter 11 could maximize economic benefits to creditors who would receive a future economic benefit, the best interests of creditors test is not satisfied. 7 *Collier on Bankruptcy* Section 1112.04[7], citing *In re Staff Investment Company*, 146 B.R. 256, 261 (E.D. Cal. 1992). Continuing this Chapter 11 case will not burden the estate with any costs or fees. Creditors have a greater opportunity to collect greater amounts under a reorganization plan. As the Court and the United State Trustee implicitly, if not explicitly, acknowledge, securing the escrow funds would benefit the estate and must be included in the analysis.

Additionally, the Court's discretion with respect to conversion or dismissal recently was circumscribed. As amended in 2005, Section 1112(b) provides direction in guiding the Court's discretion. Section 1112(b)(1) directs that the court must convert or dismiss the case if the movant establishes cause - unless the Court determines there are unusual circumstances. Although Section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most Chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of Section 1112(b) is that, if cause exists, the case should not be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of Chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.7 *Collier on Bankruptcy*, Section 1112.04[3] (15th Ed. rev.):

There are unusual circumstances presented in the case. With respects, Debtor notes that absent the grant of stay relief and the reference to the state court, this case could have been concluded by this Court by now. Indeed, Debtor submits, that the Court specifically contemplated that the state court would immediately return the reference providing a monetary judgment for this Court to adjudicate as a claim. The extraordinary delay by the state court is unusual and unexpected as state court rules required the state court to have entered its judgment within 50 days, i.e., by March 29, 2104. The failure of the state court to comply with the state mandated deadline is an unusual circumstance and such an unusual circumstance precluding a finding that conversion or dismissal is in the best interests of creditors.

Further, the Court should not convert or dismiss the case where there is a reasonable justification for the act or omission of the Debtor if that constitutes cause and the act or omission can be cured. 7 *Collier on Bankruptcy* Section 1112.05[2]. Debtor submits that his reliance on the decision of Judge Silver and the preemptive provisions of the FAA is a reasonable justification. Further, the inadvertent failure to attend the hearing, not being intentional, is justification given the good faith motion to set a hearing date.

Debtor can cure any deficiencies and secure confirmation of a revised plan within 60-75 days. Debtor notes that he has diligently prosecuted claims and actions on behalf of the estate. Indeed, in response to an objection of opposing counsel at the hearing on the motion to compel turnover, the Court noted that Debtor has been diligent. Further, Debtor responded to all objections that were *sustained by the Court* plus additional others at the first hearing on his proposed plan. Those responses are shown on Exhibit 8, pages 25-27.

### Revised Plan

Given all the foregoing, Debtor maintains that cause has not been shown, and if shown, conversion or dismissal does not serve the interest of the estate. Thus, Debtor urges the Court to dismiss the OSC and provide Debtor with a short period to secure confirmation of a revised plan the basis outline of which would utilize the approximate $478,000 in escrow funds owned by Debtor as of the case commencement date for the benefit of creditors. Debtor requests the Court to declare that the claimed escrow funds are property of the estate.

Respectfully submitted,

Booker T. Wade Jr., Debtor

June 18, 2014

**Attachment 1**

Order re Disqualification


**FILED**
APR 0 2 2010
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| ARLENE D. STEVENS | Case No. 1-07-CV-090284 |
| Plaintiff, | Order re: Disqualification |
| v. | |
| BOOKER T. WADE, JR., AND DOES 1 to 10, inclusive | |
| Defendant. | |

On March 29, 2010, for reasons fully set forth on the record on March 25, 2010, I recused myself from this case pursuant to Code of Civil Procedure section 170.1 (a)(8).

Dated: 4/2/10

_____
Jamie Jacobs-May, Presiding Judge

## Proof of Service

I, Fan Wen, certify that I am over the age of 18 and that my business address is at 1296 Kifer Road, Suite 606, Sunnyvale, CA 94086. On or before the date shown below, I deposited in the U.S. Mail, first class postage prepaid, copies of the foregoing pleading and addressed to the following:

David Hamerslough
Rossi Hamerslough Reisch & Chuck
1980 The Alameda Suite 200
San Jose, CA 95126

Stephanie Oaks
Hoge Fenton Jones &Appel Inc.
60 South Market Street #1400
San Jose, CA 95113

Mlnarik Law Group Inc.
2930 Bowers Avenue
Santa Clara, CA 95051

William Healy
Campeau Goodsell Smith
400 North First Street #100
San Jose, CA

Christopher McDermot
Casey O'Connell
Pite Duncan, LLP
4375 Jutland Drive, Suite200
PO Box 17933
San Diego, CA 92177-0933

June 18, 2014

Fan Wen